**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

REBECCA PIFER, )
                                            )
Plaintiff, )
                                            )
v. )      CASE NO. 1:22-CV-00186
                                            )
LIBERTY LIFE ASSURANCE COMPANY OF )
BOSTON, )
                                            )
Defendant. )

## ANSWER

Defendant Liberty Life Assurance Company of Boston n/k/a The Lincoln National Life Insurance Company ("Lincoln") hereby answers Plaintiff's Complaint ("Complaint") as follows:

<u>Nature of Controversy</u>

**1.     Ms. Pifer claims that she is entitled to long-term disability benefits provided under an employee welfare benefit plan adopted by her former employer, Blue Cross and Blue Shield of North Carolina, and insured by Lincoln. Ms. Pifer seeks to recover from Lincoln long-term disability benefits under 29 U.S.C. § 1132(a)(1)(B). The relief Ms. Pifer seeks is a determination that she is entitled to long-term benefits retroactive to May 18, 2021, prejudgment interest, monthly benefits for as long as she remains entitled to benefits under the terms of the Policy, and an award of attorney's fees and costs pursuant to 29 U.S.C. § 1132(g).**

1.     In response to paragraph 1, Lincoln admits that Plaintiff brings an action under ERISA seeking the claimed relief, but denies that Plaintiff is entitled to any relief with respect thereto. Lincoln denies the remaining material allegations in paragraph 1 unless expressly admitted.

<u>Parties, Jurisdiction, and Venue</u>

**2.     Ms. Pifer is a citizen and resident of Durham County, North Carolina.**

2.     Lincoln is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 2 of the Complaint.

**3.     Lincoln, which was known as Liberty Life Assurance Company of Boston until it was acquired by Lincoln Financial Group in 2018, is an insurance company and is authorized to conduct business in this state by the North Carolina Department of Insurance.**

3.     In response to paragraph 3, Lincoln admits that it is an insurance corporation licensed in North Carolina.  Lincoln denies the remaining material allegations in paragraph 3 unless expressly admitted.

**4.     The Court has jurisdiction over this controversy under 29 U.S.C. § 1132(e)(1). Venue is proper in this district under 29 U.S. C. § 1132(e)(2)**

2

**because acts and occurrences that gave rise to Ms. Pifer's claim took place in this district.**

4.     In response to paragraph 4, Lincoln admits that Plaintiff brings an action under ERISA and that this Court has jurisdiction under ERISA, but denies that Plaintiff is entitled to any relief with respect thereto.  Lincoln does not challenge venue in this forum.

Additional Facts

A.     <u>Ms. Pifer's Disabling Conditions</u>

**5.     Ms. Pifer is prevented from working due to Ehlers-Danlos syndrome, osteoarthritis of the right shoulder and bilateral knees, cervical degenerative disc disease, and cervical canal stenosis.**

5.     Lincoln denies the allegations contained in paragraph 5 of the Complaint.

B.     <u>Policy Provisions</u>

**6.     Blue Cross and Blue Shield of North Carolina provided disability coverage to Ms. Pifer and other eligible employees under an insurance policy issued by Lincoln and bearing group policy number GF3-850-286395-01 (the "Policy"). The Policy obligates Lincoln to make eligibility determinations for long-term disability benefits and to pay policy benefits from its funds.**

3

6.      In response to paragraph 6, Lincoln admits that at one time Plaintiff was an employee of Blue Cross and Blue Shield of North Carolina ("BCBS") and covered under a policy of long-term disability insurance ("Group Policy"), policy number GF3-850-286395-01, that Lincoln issued to BCBS to fund, in part, BCBS's employee welfare benefits plan. Lincoln states that that the Group Policy is set forth in the Administrative Record and speaks for itself. Lincoln denies the allegations contained in paragraph 6 of Plaintiff's Complaint to the extent incomplete or inconsistent with the Group Policy.

**7.      The Policy provides different long-term disability benefit levels for various classes of employees. Ms. Pifer was enrolled as a Class 4 employee under the Policy.**

7.      In response to paragraph 7, Lincoln states that that the Group Policy is set forth in the Administrative Record and speaks for itself. Lincoln denies the allegations contained in paragraph 7 of Plaintiff's Complaint to the extent incomplete or inconsistent with the Group Policy.

**8.      The Policy provides the following definition of "disability" and "disabled:"**

**"Disability" or "Disabled" means:**
    1. For persons other than pilots, co-pilots and crewmembers of an aircraft:

        a.      if the Covered Person is eligible for the Maximum Own Occupation benefit, "Disability" or "Disabled" means that during the Elimination Period and until the Covered Person

4

reaches the end of the Maximum Benefit Period, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and

b. thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.

"Material and Substantial Duties" means responsibilities that are normally required to perform the Covered Person's Own Occupation, or any other occupation, and cannot be reasonably eliminated or modified.

"Own Occupation" means the Covered Person's occupation that he was performing when his Disability or Partial Disability began. For the purposes of determining Disability under this policy, Lincoln will consider the Covered Person's occupation as it is normally performed in the national economy.

"Any Occupation" means any occupation that the Covered Person is or becomes reasonably fitted by training, education, experience, age, physical and mental capacity.

**The Maximum Own Occupation benefit for Class 4 employees is 24 months. Ms. Pifer became disabled on January 31, 2011 and received long-term disability benefits from Lincoln from July 30, 2011 through 2021. Therefore, the applicable definition of disability is "Any Occupation."**

8. In response to paragraph 8, Lincoln states that that the Group Policy is set forth in the Administrative Record and speaks for itself. Lincoln denies the allegations contained in paragraph 8 of Plaintiff's Complaint to the extent incomplete or inconsistent with the Group Policy.

C.  Grounds for Termination of Benefits

**9. Lincoln informed Ms. Pifer by a letter dated May 19, 2021 that her long-term disability benefits had been terminated. Lincoln terminated**

5

**Ms. Pifer's benefits after receiving a report of a functional capacity evaluation performed on April 21, 2021. The FCE report states that Ms. Pifer was able to work at the "sedentary" physical demand level for an eight-hour work-day, lift 12.5 pounds and carry 10 pounds occasionally, sit and perform hand manipulation on a "frequent" basis, and stand and walk on an "occasional" basis. The termination letter advised Ms. Pifer that she had 180 days to appeal.**

9.      In response to paragraph 9, Lincoln admits only that via letter dated May 19, 2021, which is set forth in the Administrative Record and speaks for itself, it informed Plaintiff that she failed to meet her ongoing burden of proving disability under the Group Policy beyond May 18, 2021.  In further answering, Lincoln states the FCE report dated April 26, 2021, is set forth in the administrative record and speaks for itself.  Lincoln refers to the Administrative Record and denies the allegations of paragraph 9 to the extent they are incomplete or inconsistent with the Administrative Record. Unless expressly admitted, Lincoln denies the allegations contained in paragraph 9 of the Complaint.

D.      <u>Ms. Pifer Appealed</u>

**10.      On November 11, 2021, Ms. Pifer appealed Lincoln's termination of her benefits. Her appeal submission included medical records, supportive**

6

**statements from two of her physicians, Dr. Linda Belhorn and Dr. William Silver, MRI reports, and Ms. Pifer's journal entries.**

10. In response to paragraph 10, Lincoln admits that Plaintiff pursued an administrative appeal of the May 19, 2021 decision as by letter dated November 11, 2021. The appeal letter and documents submitted in conjunction therewith are set forth in the Administrative Record and speak for themselves. Lincoln denies the allegations contained in paragraph 10 to the extent they are incomplete or inconsistent with the appeal letter and associated materials.

E.    Lincoln's Prior Determinations Support Ms. Pifer's Claim

**11. Lincoln approved benefits after receiving a consulting physician report from Dr. Howard Blank dated November 21, 2012. Dr. Blank found that Ms. Pifer suffered from Ehlers Danlos Syndrome, with associated osteoarthritis of the cervical spine, right shoulder, hands, and feet; a right shoulder rotator cuff tear that had been surgically corrected; and surgical corrections to both feet. He recommended restrictions and limitations of standing and walking for approximately 10 minutes at a time for a total of 30 minutes per eight-hour workday; limited use of the right upper extremity due to right shoulder arthritis primarily as a result of pain; fine manipulation of the fingers limited to "occasional" use as a result of osteoarthritis; repetitive use of the hands should be avoided; neck rotation, flexion, and extension should**

7

be limited to "occasional;" and lifting up to 10 pounds with the left upper extremity limited to "occasional." He added, "All of the noted restrictions and limitations are of a permanent nature."

11.     In response to paragraph 11, Lincoln admits only that via letter dated December 19, 2018, which is set forth in the Administrative Record and speaks for itself, that it initially determined that Plaintiff met her burden of proving disability under the Group Policy. Lincoln refers to the Administrative Record and denies the allegations of paragraph 11 to the extent they are incomplete or inconsistent with the Administrative Record.  In further answering, Lincoln states that Dr. Blank's report dated November 21, 2012 is set forth in the Administrative Record and speaks for itself.  Lincoln refers to the Administrative Record and denies the allegations of paragraph 11 to the extent they are incomplete or inconsistent with the report as set forth in the Administrative Record. Unless expressly admitted, Lincoln denies the allegations contained in paragraph 11 of the Complaint.

12.     Lincoln's termination of Ms. Pifer's claim in May 2021 is inconsistent with its prior determinations from 2012 through 2020. During the eight and a half years following Lincoln's receipt of Dr. Blank's report, Ms. Pifer's treating physicians, Dr. John Kallianos and Dr. Linda Belhorn, continued to support her claim. Lincoln requested updated medical information and disability statements from Ms. Pifer's providers annually and

8

**decided after reviewing such information to continue paying benefits. See e.g.
Lincoln's Claim Note 141, dated February 25, 2016, "APS supports. F/U 1 yr."
Claim Note 144, dated March 8, 2017, "No change to EE condition, supports
contd disb. F/U 1 year;" Claim Note 150, dated March 5, 2018, "No change to
EE condition, supports contd disb. F/U 1 year;" and Clam Note 157 dated
February 7, 2020, "Based on info recvd, it is supportive for ongoing LTD. F/U
for annual review."**

12.     In response to paragraph 12, Lincoln denies that the claim
determination set forth in its letter dated May 19, 2021 is inconsistent with any prior
claim determination.   Responding to the remaining allegations, the correspondence
and medical records referenced therein are set forth in the Administrative Record
and speak for themselves.  Lincoln denies the allegations contained in paragraph 12
to the extent they are incomplete or inconsistent with the content of those documents
as set forth within the Administrative Record. Unless expressly admitted, Lincoln
denies the allegations contained in paragraph 12 of the Complaint.

F.     <u>Lincoln Conducted Surveillance of Ms. Pifer</u>

**13.     Lincoln's claim notes indicate that on February 4, 2021, Lincoln
decided to obtain surveillance and medical information "to determine ongoing
R/Ls."**

9

13. In response to paragraph 13, Lincoln states that its claim note of February 4, 2021 is set forth in the Administrative Record and speaks for itself. Lincoln refers to the Administrative Record and denies the allegations of paragraph 13 to the extent they are incomplete or inconsistent with the claim note as set forth in the Administrative Record. Unless expressly admitted, Lincoln denies the allegations contained in paragraph 13 of the Complaint.

**14. Lincoln's investigator conducted surveillance of Ms. Pifer on February 17, 2021, February 23, 2021, and March 4, 2021.**

14. In response to paragraph 14, Lincoln states that the surveillance report dated March 5, 2021 is set forth in the Administrative Record and speaks for itself. Lincoln refers to the Administrative Record and denies the allegations of paragraph 14 to the extent they are incomplete or inconsistent with the surveillance as set forth in the Administrative Record. Unless expressly admitted, Lincoln denies the allegations contained in paragraph 14 of the Complaint.

**15. The investigator did not observe Ms. Pifer engaged in any activity on either February 17, 2021 or March 4, 2021. On February 23, 2021, the investigator observed Ms. Pifer outside her home, walking toward a parked automobile carrying clothing items. Ms. Pifer walked in and out of view, walked to the driver's side of the vehicle, placed the items she was carrying in the vehicle, entered the vehicle, and departed. The investigator followed Ms.**

10

**Pifer. His report includes a link to a video recording that lasted two minutes and forty-seven seconds.**

15.     In response to paragraph 15, Lincoln states that the surveillance report dated March 5, 2021 is set forth in the Administrative Record and speaks for itself. Lincoln refers to the Administrative Record and denies the allegations of paragraph 15 to the extent they are incomplete or inconsistent with the surveillance as set forth in the Administrative Record.   Unless expressly admitted, Lincoln denies the allegations contained in paragraph 15 of the Complaint.

G.     <u>Lincoln Sent Ms. Pifer for a Functional Capacity Evaluation</u>

**16.     At Lincoln's request, Ms. Pifer underwent a Functional Capacity Evaluation ("FCE") on April 21, 2021. The evaluation was performed by a physical therapist, Anna Davidow. Ms. Davidow wrote in her report that Ms. Pifer had "physical demand level" of "sedentary." She wrote, "The results of the evaluation indicate that Rebecca Pifer demonstrated the ability to perform in the Sedentary physical demand level category of work for an eight hour day." However, many of the test results and clinical observations noted in the FCE report support Ms. Pifer's claim and are contrary to the physical therapist's conclusion that Ms. Pifer was able to work.**

16.     In response to paragraph 16, Lincoln states that the FCE report dated April 26, 2021 is set forth in the Administrative Record and speaks for itself.

11

Lincoln refers to the Administrative Record and denies the allegations of paragraph 16 to the extent they are incomplete or inconsistent with the FCE report as set forth in the Administrative Record. Unless expressly admitted, Lincoln denies the allegations contained in paragraph 16 of the Complaint.

**17. For starters, the report states on page 1, "Deficits identified during testing include elevated pain throughout testing, specifically in the right shoulder and upper back area" and notes that during testing Ms. Pifer reported pain at an intensity level of 7 on a 10-point scale.**

17. In response to paragraph 17, Lincoln states that the FCE report dated April 26, 2021 is set forth in the Administrative Record and speaks for itself. Lincoln refers to the Administrative Record and denies the allegations of paragraph 17 to the extent they are incomplete or inconsistent with the FCE report as set forth in the Administrative Record. Unless expressly admitted, Lincoln denies the allegations contained in paragraph 17 of the Complaint.

**18. Ms. Pifer stated that she was able to sit for 20 minutes, stand for 20 minutes, walk for 30 minutes, and drive for 20 minutes. She advised that she was independent in her activities of daily living and basic household chores, however, her adult son lived with her and performed the majority of the household tasks.**

12

18.     In response to paragraph 18, Lincoln states that the FCE report dated April 26, 2021 is set forth in the Administrative Record and speaks for itself. Lincoln refers to the Administrative Record and denies the allegations of paragraph 18 to the extent they are incomplete or inconsistent with the FCE report as set forth in the Administrative Record.   Unless expressly admitted, Lincoln denies the allegations contained in paragraph 18 of the Complaint.

**19.     Most of Ms. Davidow's observations and test results support Ms. Pifer's claim and are contrary to her determination that Mr. Pifer was able to work in a sedentary occupation:**

- **Ms. Pifer came to testing ambulating with a cane and exhibited a slow, methodical gait pattern.**

- **The therapist found that Ms. Pifer had moderate tenderness along the anterior aspect of the right shoulder, bilateral upper trapezius, interscapular area, and low back area.**

- **The treadmill test was not completed because Ms. Pifer was unable to achieve the minimal speed required of two miles per hour. She ambulated at one mile per hour for eight minutes at which time she requested a seated rest break due to pain and fatigue. She then resumed ambulation for an additional five minutes and requested to terminate because of right foot discomfort, bilateral shoulder pain, and fatigue.**

- **All three lifting tests were terminated by Ms. Pifer due to continued pain across the bilateral upper back and shoulders and noted fatigue. The therapist wrote that during testing Ms. Pifer's elevated heart rate was consistent with her reported maximum effort. Ms. Pifer was only able to lift the minimum weight required.**

13

- During the "carry testing," Ms. Pifer ambulated with the use of a cane and carried the weight in her left upper extremity.

- "Frequent carry" and "frequent push/pull" testing were not performed as the claimant was not able to demonstrate "frequent ambulation."

- Ms. Pifer demonstrated elevated pain with standing and walking, yet the therapist concluded that Ms. Pifer would stand and walk on an "occasional" basis.

- Ms. Pifer demonstrated elevated pain with "object handling," yet the therapist concluded that Ms. Pifer could perform object handing on a "frequent" basis.

- During "pinch strength testing," Ms. Pifer experienced increased discomfort in the MCP joint of the right thumb.

- Ms. Pifer had elevated discomfort in the bilateral upper back area during the isometric push/pull test.

- Ms. Pifer's cervical active range of motion of limited. The range of motion and strength in her shoulders were below normal. Her strength in her elbows and wrists was diminished.

- Ms. Pifer's strength in her hips, knees, and elbows was below normal.

- The therapist did not perform testing of Ms. Pifer's range of motion and strength in her fingers, yet she concluded that Ms. Pifer was able to perform object handling, fingering, simple hand grasp, firm hand grasp, and fine and gross hand manipulation on a "frequent" basis.

- The entire testing time was only two hours and nine minutes.

- The FCE report does not indicate any observations of Ms. Pifer's ability to sit. The amount of time spent sitting is not noted in the report, yet the therapist somehow concluded that Ms. Pifer could sit on a "frequent" basis during an eight-hour workday.

14

In short, the conclusions reached by Ms. Davidow do not match up with the test results and should not be considered in determining Ms. Pifer's entitlement to benefits. Rather, the examination findings noted above support Ms. Pifer's claim.

19. In response to paragraph 19, Lincoln states that the FCE report dated April 26, 2021 is set forth in the Administrative Record and speaks for itself. Lincoln refers to the Administrative Record and denies the allegations of paragraph 19 to the extent they are incomplete or inconsistent with the FCE report as set forth in the Administrative Record. Lincoln further expressly denies so much of the allegations as assert Plaintiff's interpretation or opinion concerning the content, meaning, or probative value of the FCE. Unless expressly admitted, Lincoln denies the allegations contained in paragraph 19 of the Complaint.

H. The Medical Records Support Ms. Pifer's Claim

**20. Ms. Pifer's medical records support that she has been continuously disabled from before she was terminated through the date of her appeal.**

20. Lincoln denies the allegations contained in paragraph 20 of the Complaint.

**21. Ms. Pifer was seen by her rheumatologist, Dr. Linda Belhorn, on August 5, 2020 for a follow-up regarding her Ehlers-Danlos syndrome and degenerative joint disease. Ms. Pifer stated that since her last visit she had**

**experienced mild increased symptoms in her hands, worsening fatigue, increased pain in her right shoulder with difficulty performing certain motions, and persistent symptoms in her cervical spine. Dr. Belhorn found that Ms. Pifer had Heberden's nodes and Bouchard's nodes in her fingers bilaterally and tenderness in her right shoulder.**

21. In response to paragraph 21, Lincoln states that medical records and other documents concerning Plaintiff's purported symptoms, conditions, and treatment are set forth in the Administrative Record and speak for themselves. Lincoln refers to the Administrative Record and denies the allegations of paragraph 21 to the extent they are incomplete or inconsistent with Plaintiff's medical records as set forth in the Administrative Record. Unless expressly admitted, Lincoln denies the allegations contained in paragraph 21 of the Complaint.

**22. An x-ray study of Ms. Pifer's right shoulder performed on August 5, 2020 showed advanced glenohumeral arthropathy and prominent lucency in the superior aspect of the glenoid cavity.**

22. In response to paragraph 22, Lincoln states that medical records and other documents concerning Plaintiff's purported symptoms, conditions, and treatment are set forth in the Administrative Record and speak for themselves. Lincoln refers to the Administrative Record and denies the allegations of paragraph 22 to the extent they are incomplete or inconsistent with Plaintiff's medical records

16

as set forth in the Administrative Record.  Unless expressly admitted, Lincoln denies the allegations contained in paragraph 22 of the Complaint.

**23.    Ms. Pifer saw Dr. William Silver on September 10, 2020 for a follow-up regarding her right shoulder dysfunction. Ms. Pifer explained that she was experiencing pain in her upper right arm that radiated with movements such as driving. Ms. Pifer advised Dr. Silver that the pain had been present for approximately one year and was worsening. Dr. Silver's physical examination showed decreased range of motion with pain and positive impingement of the right shoulder rotator cuff. Ms. Pifer underwent a right shoulder subacromial cortisone injection and was provided a home physical therapy program.**

23.    In response to paragraph 23, Lincoln states that medical records and other documents concerning Plaintiff's purported symptoms, conditions, and treatment are set forth in the Administrative Record and speak for themselves. Lincoln refers to the Administrative Record and denies the allegations of paragraph 23 to the extent they are incomplete or inconsistent with Plaintiff's medical records as set forth in the Administrative Record.  Unless expressly admitted, Lincoln denies the allegations contained in paragraph 23 of the Complaint.

**24.    Ms. Pifer was next seen by Dr. Belhorn on February 8, 2021. Ms. Pifer reported that she had experienced significant improvement in the pain**

17

**caused by her right shoulder rotator cuff impingement following the steroid injection administered by Dr. Silver on September 10, 2020. Ms. Pifer was trying to do some conservative exercises and Tai Chi to help improve her shoulder symptoms. Ms. Pifer felt that she was stable on her current medications. Dr. Belhorn found that Ms. Pifer continued to have Heberden's nodes and Bouchard's nodes in her fingers bilaterally and decreased range of motion in her cervical spine and shoulders in all planes.**

24. In response to paragraph 24, Lincoln states that medical records and other documents concerning Plaintiff's purported symptoms, conditions, and treatment are set forth in the Administrative Record and speak for themselves. Lincoln refers to the Administrative Record and denies the allegations of paragraph 24 to the extent they are incomplete or inconsistent with Plaintiff's medical records as set forth in the Administrative Record. Unless expressly admitted, Lincoln denies the allegations contained in paragraph 24 of the Complaint.

**25. Ms. Pifer underwent x-ray imaging of her right shoulder on May 25, 2021. The report states that Ms. Pifer had moderate to severe degenerative changes to the glenohumeral joint, with osteophyte formation and articular surface sclerosis.**

25. In response to paragraph 25, Lincoln states that medical records and other documents concerning Plaintiff's purported symptoms, conditions, and

18

treatment are set forth in the Administrative Record and speak for themselves. Lincoln refers to the Administrative Record and denies the allegations of paragraph 25 to the extent they are incomplete or inconsistent with Plaintiff's medical records as set forth in the Administrative Record. Unless expressly admitted, Lincoln denies the allegations contained in paragraph 25 of the Complaint.

**26. Ms. Pifer underwent a cervical spine MRI on June 10, 2021. The imaging study revealed chronic multi-level cervical degenerative disc disease with facet arthropathy, narrowing of the central canal at C5-C6 and C6-C7, and variable degrees of bony encroachment on the foramina, likely most prominent at C5-C6.**

26. In response to paragraph 26, Lincoln states that medical records and other documents concerning Plaintiff's purported symptoms, conditions, and treatment are set forth in the Administrative Record and speak for themselves. Lincoln refers to the Administrative Record and denies the allegations of paragraph 26 to the extent they are incomplete or inconsistent with Plaintiff's medical records as set forth in the Administrative Record. Unless expressly admitted, Lincoln denies the allegations contained in paragraph 26 of the Complaint.

**27. Ms. Pifer saw Dr. Silver on August 24, 2021 for evaluation of her right shoulder pain. Dr. Silver determined that Ms. Pifer likely had a right**

19

**shoulder rotator cuff tear following her recent fall and motor vehicle accident. He recommended a right shoulder MRI.**

27. In response to paragraph 27, Lincoln states that medical records and other documents concerning Plaintiff's purported symptoms, conditions, and treatment are set forth in the Administrative Record and speak for themselves. Lincoln refers to the Administrative Record and denies the allegations of paragraph 27 to the extent they are incomplete or inconsistent with Plaintiff's medical records as set forth in the Administrative Record. Unless expressly admitted, Lincoln denies the allegations contained in paragraph 27 of the Complaint.

**28. Ms. Pifer underwent a right shoulder joint MRI on September 2, 2021. The report includes the following findings:**

> **CONCLUSION:**
> **1. Severe glenohumeral arthropathy. Chronically torn and worn labrum. Remodeled articular surfaces. Cartilage delamination. Marrow reaction and pseudocysts glenoid rim. Complex effusion.**
> **2. Cuff tendinosis. Frayed partial thickness 7mm interstitial and bursal surface tear supraspinatus insertion. Mild bursitis. No full thickness cuff macrotear.**
> **3. AC arthropathy. Subacromial decompression.**
> **4. Chronically torn biceps long head tendon or tenotomy.**
> **5. Please see above.**

28. In response to paragraph 28, Lincoln states that medical records and other documents concerning Plaintiff's purported symptoms, conditions, and treatment are set forth in the Administrative Record and speak for themselves. Lincoln refers to the Administrative Record and denies the allegations of paragraph

20

28 to the extent they are incomplete or inconsistent with Plaintiff's medical records as set forth in the Administrative Record. Unless expressly admitted, Lincoln denies the allegations contained in paragraph 28 of the Complaint.

**29. Dr. Silver next saw Ms. Pifer on September 7, 2021 to go over the MRI results and discuss treatment options. Dr. Silver administered a cortisone injection.**

29. In response to paragraph 29, Lincoln states that medical records and other documents concerning Plaintiff's purported symptoms, conditions, and treatment are set forth in the Administrative Record and speak for themselves. Lincoln refers to the Administrative Record and denies the allegations of paragraph 29 to the extent they are incomplete or inconsistent with Plaintiff's medical records as set forth in the Administrative Record. Unless expressly admitted, Lincoln denies the allegations contained in paragraph 29 of the Complaint.

**30. Ms. Pifer saw Dr. Belhorn on October 16, 2021 for a follow-up appointment. Ms. Pifer reported that she had not been doing well since the past spring due to multiple stressors and was experiencing increased pain, fatigue, and joint laxity. She had increased neck pain and numbness and tingling in her hands. She had been undergoing physical therapy for her neck pain due to her having bulging disks and bone spurs in her cervical spine. Ms. Pifer stated that she had fallen the previous week and had injured her right**

**shoulder. Her ankles had been rolling more frequently and her knees had been dislocating. Dr. Belhorn assessed that Ms. Pifer was suffering from generalized osteoarthritis and increased joint laxity due to Ehlers-Danlos syndrome.**

30. In response to paragraph 30, Lincoln states that medical records and other documents concerning Plaintiff's purported symptoms, conditions, and treatment are set forth in the Administrative Record and speak for themselves. Lincoln refers to the Administrative Record and denies the allegations of paragraph 30 to the extent they are incomplete or inconsistent with Plaintiff's medical records as set forth in the Administrative Record. Unless expressly admitted, Lincoln denies the allegations contained in paragraph 30 of the Complaint.

**31. Dr. Belhorn completed two disability forms on October 18, 2021. She wrote that Ms. Pifer's restrictions and limitations were no prolonged sitting, standing, heavy lifting, or repetitive activities and that her physical impairment rating was "Class 5," which means "Severe limitation of functional capability; incapable of minimum (sedentary\*) activity (75-100%)."**

31. In response to paragraph 31, Lincoln states that the Annual Physician's Statements competed by Dr. Belhorn on October 18, 2021, are set forth in the Administrative Record and speak for themselves. Lincoln refers to the

Administrative Record and denies the allegations of paragraph 31 to the extent they are incomplete or inconsistent with the forms as set forth in the Administrative Record. Unless expressly admitted, Lincoln denies the allegations contained in paragraph 31 of the Complaint.

**32. Dr. Kallianos saw Ms. Pifer on October 15, 2021 for evaluation of her bilateral knee pain. His physical examination findings include tenderness, swelling, crepitus, and instability. Dr. Kallianos wrote in his report that Ms. Pifer may have a cartilage issue in the left knee with some ACL instability in the right knee. He recommended that Ms. Pifer undergo x-rays and MRIs of both knees and added, "She is still permanently disabled."**

32. In response to paragraph 32, Lincoln states that medical records and other documents concerning Plaintiff's purported symptoms, conditions, and treatment are set forth in the Administrative Record and speak for themselves. Lincoln refers to the Administrative Record and denies the allegations of paragraph 32 to the extent they are incomplete or inconsistent with Plaintiff's medical records as set forth in the Administrative Record. Unless expressly admitted, Lincoln denies the allegations contained in paragraph 32 of the Complaint.

**33. Ms. Pifer began physical therapy with Minh Phuong Le, PT on August 19, 2021. Ms. Pifer reported that she was experiencing weakness in her right arm, numbness and tingling in her entire arms and hands, and was**

23

**unable to sit and stand for extended periods. Ms. Le found moderate to severe loss of range of motion in Ms. Pifer's cervical spine, decreased strength in her cervical spine, pain with resisted neck motions, decreased sensation in her right upper extremity, hypermobility and pain from Cl to C7, tenderness bilaterally of the paracervicals and the trapezius, and increased tightness in the UT and paracervical muscles. Ms. Lee's assessment was decreased cervical range of motion and upper extremity strength, indicative of cervical dysfunction; radicular symptoms; and bilateral shoulder pain, right greater than left.**

33. In response to paragraph 33, Lincoln states that medical records and other documents concerning Plaintiff's purported symptoms, conditions, and treatment are set forth in the Administrative Record and speak for themselves. Lincoln refers to the Administrative Record and denies the allegations of paragraph 33 to the extent they are incomplete or inconsistent with Plaintiff's medical records as set forth in the Administrative Record. Unless expressly admitted, Lincoln denies the allegations contained in paragraph 33 of the Complaint.

**34. Dr. Silver completed an Annual Physician's Statement form on October 25, 2021 and wrote that due Ms. Pifer's right shoulder condition she should engage in no heaving lifting or repetitive activity.**

24

34.    In response to paragraph 34, Lincoln states that the Annual Physician's Statement competed by Dr. Silver on October 25, 2021, are set forth in the Administrative Record and speaks for itself. Lincoln refers to the Administrative Record and denies the allegations of paragraph 34 to the extent they are incomplete or inconsistent with the form as set forth in the Administrative Record. Unless expressly admitted, Lincoln denies the allegations contained in paragraph 34 of the Complaint.

**35.    Ms. Pifer underwent MRIs of her knees on October 26, 2021.**

**The report of the left knee study includes the following findings:**

> IMPRESSION:
> 1. Osteoarthritis of the lateral compartment of the left knee with associated marked cartilage thinning and probable focal cartilage defect of the lateral-most posterior aspect of the lateral tibial plateau. There is associated chronic lateral meniscus tear.
> 2. Extensive intrasubstance degenerative signal of the medial meniscus with a limited tear of the medial body.
> 3. Cartilage heterogeneity of all 3 compartments of the left knee.
> 4. The fibular collateral ligament is markedly attenuated and a chronic tear or partial tear is suggested. This may be related to the adjacent lateral tibial plateau osteophyte.

The findings of the right knee MRI study include:

> IMPRESSION:
> 1. Complex tears involving the body and posterior horn of the lateral meniscus and anterior horn of the medial meniscus.
> 2. Chronic, complete ACL tear.
> 3. Advanced joint space narrowing with multifocal cartilage loss of the medial and lateral compartments. Mild reactive marrow edema in the medial compartment.

25

35.     In response to paragraph 35, Lincoln states that medical records and other documents concerning Plaintiff's purported symptoms, conditions, and treatment are set forth in the Administrative Record and speak for themselves. Lincoln refers to the Administrative Record and denies the allegations of paragraph 35 to the extent they are incomplete or inconsistent with Plaintiff's medical records as set forth in the Administrative Record.  Unless expressly admitted, Lincoln denies the allegations contained in paragraph 35 of the Complaint.

**36.     Ms. Pifer was seen by Dr. Michael Ransone on October 28 2021 for her bilateral knee pain. She reported that she had suffered knee pain since 2010 when she was diagnosed with a partial ACL tear of the right knee but that both knees had become symptomatic. She stated that she had throbbing pain, especially when going up and down stairs and walking. She used a cane sometimes and took stairs one at a time. Dr. Ransone advised that Ms. Pifer was not a candidate for arthroscopy for meniscal surgery or ACL reconstruction because she had multiple issues causing pain and Ehlers-Danlos syndrome the surgeries would not address all of her pain generators. Dr. Ransone recommended physical therapy and injections every three months.**

36.     In response to paragraph 36, Lincoln states that medical records and other documents concerning Plaintiff's purported symptoms, conditions, and

treatment are set forth in the Administrative Record and speak for themselves. Lincoln refers to the Administrative Record and denies the allegations of paragraph 36 to the extent they are incomplete or inconsistent with Plaintiff's medical records as set forth in the Administrative Record. Unless expressly admitted, Lincoln denies the allegations contained in paragraph 36 of the Complaint.

I.      Lincoln Denied Ms. Pifer's Appeal

**37.     Lincoln informed Ms. Pifer by a letter dated February 17, 2022 that her appeal had been denied. Lincoln's letter states that Ms. Pifer was denied after Lincoln received a report from a consulting physician, Dr. Hunter Vincent, who is board-certified in physical medicine and rehabilitation and pain medicine.**

37.     In response to paragraph 37, Lincoln admits that it upheld its initial determination that Plaintiff failed to meet her burden of proof under the Group Policy and advised Plaintiff of the same by letter dated February 17, 2022. The letter is set forth in the Administrative Record and speaks for itself. Lincoln denies the allegations contained in paragraph 37 to the extent they are incomplete or inconsistent with the letter.

**38.     Dr. Vincent stated in his report that he disagreed with the opinion of Dr. Belhorn, expressed in her October 18, 2021 disability forms, that Ms. Pifer was unable to work. Dr. Vincent acknowledged that Ms. Pifer**

27

**suffers from Ehlers-Danlos syndrome, generalized osteoarthritis of the right shoulder and bilateral knees, cervical degenerative disc disease, and cervical canal stenosis. He opined that Ms. Pifer has "advanced degenerative joint disease that warrants restrictions," but added that "these [restrictions] can be accommodated in a full-time sedentary work setting." Dr. Vincent stated that his "assessment is similar to the FCE results."**

38.     In response to paragraph 38, Lincoln states that the Dr. Vincent's report dated January 24, 2022, is set forth in the Administrative Record and speaks for itself. Lincoln refers to the Administrative Record and denies the allegations of paragraph 38 to the extent they are incomplete or inconsistent with the report as set forth in the Administrative Record.  Unless expressly admitted, Lincoln denies the allegations contained in paragraph 38 of the Complaint.

**39.     Dr. Vincent opined that Ms. Pifer was functionally impaired and requires restrictions and limitations. He wrote:**

> Based on the information, I opine that the claimant requires restrictions. She has a history of Ehlers-Danlos syndrome associated with generalized osteoarthritis that involved her right shoulder, cervical spine, and bilateral knees. While, she has been stable status post surgeries, and she made steady progress with treatment regimen; she ru1s a chronic disease history anticipated to aggravate degeneration going forward. In addition, she was recently involved in a motor vehicular accident which caused significant sprain injury aggravating underlying symptoms. Her diagnostic findings and physical examination findings had been remarkable throughout the visits, and at times, she requires assistive devices for ambulation. Due to continued cervical spine, right shoulder, and bilateral knees issues, I opine that she should limit activities that may cause aggravated symptoms. Therefore, the claimant is functionally impaired and requires restrictions and limitations as outlined below.

28

**Dr. Vincent recommended the following restrictions and limitations:**

Sitting: Constantly, for up to 6 hours per day
Standing: Frequently, for up to 3 hours per day (with the use of assistive devices if/when required)
Walking: Occasionally, for up to 2 hours per day (witl1 the use of assistive devices if/when required)
Lifting: Occasionally, up to 20 lbs. BUE
Carrying: Occasionally up to 20 lbs. BUE
Pushing: Occasionally, up to 20 lbs. BUE
Pulling: Occasionally, up to 20 lbs. BUE
Climbing stairs: Occas10nally
Balancing: Never
Stooping: Occasionally
Kneeling: Occasionally
Crouching: Occasionally
Crawling: Occasionally
Reaching: Occasionally overhead and below waist level, unrestricted desk level BUE
Using lower extremities for foot controls: Occasionally BLE
Fine manipulation: Occasionally RUE, Unrestricted LUE
Simple and firm grasping: Occasionally RUE, Unrestricted LUE

No climbing ladders
No working at unprotected heights
No operating heavy machinery

The above recommended restrictions and limitations are indicated from May 19, 2021 to the present and ongoing with reassessment on or around 04/24/2022.

39.     In response to paragraph 39, Lincoln states that the Dr. Vincent's report dated January 24, 2022, is set forth in the Administrative Record and speaks for itself. Lincoln refers to the Administrative Record and denies the allegations of paragraph 38 to the extent they are incomplete or inconsistent with the report as set

29

forth in the Administrative Record.  Unless expressly admitted, Lincoln denies the allegations contained in paragraph 39 of the Complaint.

**40.     Dr. Vincent was asked by Lincoln to explain the medical rationale and evidence for any disagreement with the reviews and assessments made by Ms. Davidow and Dr. Blank. In his response, Dr. Vincent made clear in his report that he was relying on Ms. Davidow's FCE report. He wrote:**

> My assessment agrees with the FCE study recommending the claimant to work in a sedentary setting on a full-time basis. I respectfully disagree with Dr. Blank's recommendation as the claimant is deemed as unable to perfoml even sedentary activity. The claimant clearly retains the capacity of work in a sedentary setting with appropriate restrictions listed above.

40.     In response to paragraph 40, Lincoln states that the Dr. Vincent's report dated January 24, 2022, is set forth in the Administrative Record and speaks for itself. Lincoln refers to the Administrative Record and denies the allegations of paragraph 38 to the extent they are incomplete or inconsistent with the report as set forth in the Administrative Record.  Unless expressly admitted, Lincoln denies the allegations contained in paragraph 40 of the Complaint.

**41.     Following receipt of Dr. Vincent's report, a Lincoln vocational specialist determined that there were occupations Ms. Pifer could perform within the restrictions and limitations recommended by Dr. Vincent.**

30

41.     In response to paragraph 41, Lincoln states that the Transferable Skills Analysis report dated February 1, 2022, is set forth in the Administrative Record and speaks for itself. Lincoln refers to the Administrative Record and denies the allegations of paragraph 41 to the extent they are incomplete or inconsistent with the report as set forth in the Administrative Record.  Unless expressly admitted, Lincoln denies the allegations contained in paragraph 41 of the Complaint.

J.     Ms. Pifer's Exhausted Her Remedies under ERISA

**42.     Lincoln's February 17, 2022 denial letter advised that Ms. Pifer had exhausted her administrative right to review and that she had the right to bring a civil action under ERISA.**

42.     In response to paragraph 42, Lincoln admits that it upheld its initial determination that Plaintiff failed to meet her burden of proof under the Group Policy and advised Plaintiff of the same by letter dated February 17, 2022.  The letter is set forth in the Administrative Record and speaks for itself.  Lincoln denies the allegations contained in paragraph 42 to the extent they are incomplete or inconsistent with the letter.

Claim for Relief
(29 U.S.C. § 1132(a)(1)(B) and (g))

**43.     The other allegations of this complaint are incorporated by reference.**

31

29. Lincoln incorporates its responses to paragraphs 1–42 of the Complaint, as set forth above.

**44. The Policy is an employee welfare benefit plan within the meaning of ERISA. Ms. Pifer is covered by the Policy.**

44. The allegations contained in paragraph 44 constitute conclusions of law to which no response is required. To the extent a response is required Lincoln admits only that Ms. Pifer was at one time employed by BCBS and covered under the Group Policy, which is an employee welfare benefit plan within the meaning of ERISA. Unless expressly admitted, Lincoln denies the allegations contained in paragraph 44 of the Complaint.

**45. Lincoln failed to provide Ms. Pifer a full and fair review of her claim for benefits under the Policy.**

45. Lincoln denies the allegations contained in paragraph 45 of the Complaint.

**46. Ms. Pifer is entitled to recover from Lincoln long-term disability benefits from May 18, 2021 to the date of judgment, with prejudgment interest, and continuing monthly benefits after the date of judgment for as long as she remains eligible under the terms of the Policy.**

46. Lincoln denies the allegations contained in paragraph 46 of the Complaint.

32

**47. Ms. Pifer requests an award of attorney's fees and costs against Lincoln pursuant to 29 U.S.C. § 1132(g).**

47. In response to paragraph 47, Lincoln admits that Plaintiff brings an action under ERISA seeking the claimed relief, but denies that Plaintiff is entitled to any relief with respect thereto. Lincoln denies the remaining material allegations in paragraph 47 unless expressly admitted.

## FIRST DEFENSE

The Complaint and each and every purported claim for relief therein fails to state a claim for which relief can be granted.

## SECOND DEFENSE

Plaintiff's claims against Lincoln, if any, arise under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, et seq. To the extent the Complaint makes claims and seeks remedies not provided for under ERISA, those claims and those remedies are pre-empted by ERISA. *Pilot Life v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987).

## THIRD DEFENSE

Plaintiff's recovery herein, if any, is limited by the terms, conditions, limitations, exclusions and other provisions of the Group Policy.

## FOURTH DEFENSE

33

Lincoln has complied with and performed all of its promises, obligations and duties to Plaintiff and the handling of Plaintiff's claim for benefits complied fully with the terms and conditions of ERISA.

## FIFTH DEFENSE

Plaintiff's demand for attorney's fees should not be granted under ERISA because Lincoln's handling of Plaintiff's claim was reasonable and all actions in the handling of said claim were taken in good faith.

## SIXTH DEFENSE

Each and every act or statement done or made by Lincoln and its officers, employees and agents with reference to Plaintiff was a good faith assertion of Lincoln's rights and, therefore, was privileged and/or justified.

## SEVENTH DEFENSE

Lincoln's decisions were neither arbitrary nor capricious nor incorrect.

## EIGHTH DEFENSE

Lincoln has reasonably and substantially complied with all applicable regulations.

## NINTH DEFENSE

The Group Policy, in whole or in part, contains monthly benefits reductions, including but not limited to reductions for retirement benefits, other income and

34

Social Security benefits.  Even if Plaintiff is eligible for benefits, which Lincoln denies, Lincoln is entitled to offset payment of benefits by other income.

TENTH DEFENSE

Even if Plaintiff is currently disabled and eligible for benefits, which Lincoln denies, such determinations do not mean that Plaintiff is entitled to unlimited future benefits given, inter alia, the possibility of recovery, as well as the effect of different requirements, exclusions and/or limitations thereunder.

ELEVENTH DEFENSE

Plaintiff's request for jury trial, if any, must be stricken as no right to a jury trial is available under ERISA.

TWELFTH DEFENSE

Plaintiff is limited to the evidence and arguments presented during the administrative process.

THIRTEENTH DEFENSE

There is no vesting of benefits under the Group Policy, and thus Plaintiff may not recover the benefits for any future period of disability, but rather must provide periodic proof of any alleged continuing disability.

**<u>REQUESTED RELIEF</u>**

Lincoln respectfully requests that the Court:  (i) dismiss Plaintiff's claims against Lincoln with prejudice and enter judgment in Lincoln's favor on such

35

claims; (ii) award Lincoln its costs of suit, including reasonable attorneys' fees; and (iii) grant such other relief as is appropriate under the circumstances of this case.

Dated this the 22 day of April, 2022.

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.

/s/ W. Kyle Dillard
W. Kyle Dillard (S.C. State Bar # 69408)
300 North Main Street, Suite 500
Greenville, SC 29601
Telephone: 864-240-8317
Facsimile: 864-235-8806
kyle.dillard@ogletree.com

-and-

/s/ Vanessa N. Garrido
Vanessa N. Garrido (N.C. Bar No. 53470)
8529 Six Forks Road
Forum IV, Suite 600
Raleigh, North Carolina 27615
Telephone: 919-789-3194
Facsimile: 919-783-9412
Email: vanessa.garrido@ogletree.com

*Attorneys for Defendant*

36

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that on this date a copy of the foregoing **Answer** was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Andrew Whiteman
Whiteman Law Firm
5400 Glenwood Avenue, Suite 225
Raleigh, NC 27612
aow@whiteman-law.com

This the 22nd day of April, 2022.

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.

/s/  W. Kyle Dillard
W. Kyle Dillard (S.C. State Bar # 69408)
*by Special Appearance*
300 North Main Street, Suite 500
Greenville, SC 29601
Telephone: 864-240-8317
Facsimile: 864-235-8806
Email: kyle.dillard@ogletree.com

-and-

/s/  Vanessa N. Garrido
Vanessa N. Garrido (N.C. Bar No. 53470)
8529 Six Forks Road
Forum IV, Suite 600
Raleigh, North Carolina 27615
Telephone: 919-789-3194
Facsimile: 919-783-9412
Email: vanessa.garrido@ogletree.com

*Attorneys for Defendant*

37

51237641.v1-OGLETREE