IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Case No. 1:22-cv-00186-WO-JLW

| | |
|---|---|
| REBECCA PIFER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| LINCOLN LIFE ASSURANCE | ) |
| COMPANY OF BOSTON, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |
| | ) |
| | ) |

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### Introduction

This case is a dispute over long-term disability (LTD) benefits under a Group Policy of Insurance (Group Policy) issued by Lincoln Life Assurance Company of Boston n/k/a The Lincoln National Life Insurance Company (Lincoln), governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq*.

Plaintiff stopped working as a claims analyst, with BCBSNC, on 1/28/11 at age 50. She ceased working due to reported Ehlers-Danlos syndrome, osteoarthritis, cervical disorder, neuropathy, fibromyalgia and depression. She underwent right rotator cuff repair on 5/27/2011 and left foot surgery on 8/24/2011.

Lincoln approved Plaintiff's LTD benefits claim under the Own Occupation (OOC) definition of disability on 8/5/11. Lincoln paid OOC benefits throughout the 24-month OOC period (7/30/11 to 7/30/13). Lincoln approved benefits under the Any Occupation definition of disability on 12/9/12.

In early 2021, Lincoln obtained information suggestive of improvement in Plaintiff's condition. Lincoln ordered surveillance and asked Plaintiff to present for a Functional Capacity Evaluation (FCE). The results of the same, and a Transferable Skills Analysis (TSA), led Lincoln to conclude that Plaintiff could perform sedentary work, and that benefits were no longer payable.

Plaintiff, through counsel, appealed. She presented two conclusory Attending Physician Statements (APS) and associated medical records. Plaintiff refused Lincoln's request to attend an Independent Medical Examination (IME). Lincoln then obtained an Independent Medical Review (IMR) by a board certified physician who concluded that Plaintiff demonstrated sedentary capacity.

Lincoln provided the medical review, and an updated TSA, to Plaintiff for review and reply. She declined to provide additional information.

Under the Group Policy and ERISA, Plaintiff bore the burden of providing proof of continuing disability, but she refused multiple opportunities to do so. Lincoln reviewed Plaintiff's claim fully and fairly and reached the only conclusion supported by the evidence in the record. Lincoln is entitled to judgment.

## I. Relevant Provisions of the Group Policy.

The Group Policy places the burden of proving a continuous disability on Plaintiff. It reads: "The Proof must be given upon Lincoln's request at the Covered Person's expense". (LIN000414).

> **"Proof"** means the evidence in support of a claim for benefits and includes, but is not limited to, the following:
>
> 1. a claim form completed and signed (or otherwise formally submitted) by the Covered Person claiming benefits;
> 2. an attending Physician's statement completed and signed (or otherwise formally submitted) by the Covered Person's attending Physician; and
> 3. the provision by the attending Physician of standard diagnosis, chart notes, lab findings, test results, x-rays and/or other forms of objective medical evidence in support of a claim for benefits.
>
> Proof must be submitted in a form or format satisfactory to Lincoln. (LIN000407).

\*\*\*

The Monthly Benefit will cease on the earliest of:

1. the date the Covered Person fails to provide Proof of continued Disability …;
…
3. the date the Covered Person refuses to be examined or evaluated at reasonable intervals;
…
9. the date the Covered Person is no longer Disabled according to this Policy …

(LIN000424).

\*\*\*

Under the Any Occupation definition within the Group Policy, "**'Disability' or 'Disabled'** means as a result of Injury or Sickness the Covered Person is unable to perform the Material and Substantial Duties of Any Occupation". (LIN000405).

\*\*\*

"**Material and Substantial Duties"** means responsibilities that are normally required to perform the Covered Person's Own Occupation, or any other occupation, and cannot be reasonably eliminated or modified." (LIN000406).

\*\*\*

**"Any Occupation"** means any occupation that the Covered Person is or becomes reasonably fitted by training, education, experience, age, physical and mental capacity. (LIN000404).

\*\*\*

**Examination**

Lincoln, at its own expense, may have the right and opportunity to have a Covered Person, whose Injury or Sickness is the basis of a claim, examined or evaluated at reasonable intervals deemed necessary by Lincoln. This right may be used as often as reasonably required. (LIN000430).

\*\*\*

The Group Policy contains a clear grant of discretion to Lincoln, stating:

**Interpretation of the Policy**

Lincoln shall possess the authority, in its sole discretion, to construe the terms of this policy and to determine benefit eligibility hereunder. Lincoln's decisions regarding construction of the terms of this policy and benefit eligibility shall be conclusive and binding.

(LIN000431).

## II.    Summary of the Plaintiff's Claim and Lincoln's Administrative Review.

### A.    Lincoln approves and pays Plaintiff's LTD benefits claim beginning July 30, 2011, subject to annual review.

As noted above, Plaintiff stopped working on 1/28/11, and Lincoln approved and paid her claim effective 7/30/11. Lincoln subsequently reviewed Plaintiff's claim annually for proof of ongoing disability.

In February, 2020, Lincoln renewed Plaintiff's benefits informed by a 2/5/20 APS by Dr. Linda Belhorn (rheumatology), restricting Plaintiff to "no prolonged sitting, standing, heavy lifting or repetitive activities". (LIN000011;579). This was consistent with Belhorn's annual APS's starting 2014. (LIN000590;610;629;637;661;668).    Notably,

Belhorn's 2013 APS contained more expansive restrictions, deeming Plaintiff "disabled for all duties". (LIN000669).

### B. Recent medical records show improvement in Plaintiff's condition.

Records obtained during review show that on 1/21/19, Plaintiff presented to Belhorn with "gradual worsening" of symptoms since February 2018, and expressing a "gradual worsening of her symptoms from year to year". (LIN000162-66). On 2/11/19, Dr. John Kallianos (PCP) found "interval worsening" and stated "[s]he is still permanently disabled". (LIN000191-92). On 5/15/19, Kallianos again noted interval worsening. (LIN000193-95). On 8/5/19, Belhorn noted worsening pain and request for physical therapy referral, particularly for cervical pain. (LIN000158-62).

Plaintiff began physical therapy with Mackenzie Eldridge, DPT on 8/8/19. (LIN000193-95) She reported a pain level of 6, but also that her general health was "good" and that she "currently walks her dog about 2 miles". (LIN000154-57) On 8/21/19, Eldridge recorded a pain level of 1 with "just stiffness", and that Plaintiff was tolerating physical therapy well, with improvement. (LIN000150-53) On 9/11/19, Plaintiff's pain level was still 1, and her neck and shoulder had improved. (LIN000147-50).

On 2/5/20, Belhorn recorded that Plaintiff felt "stable on her current regiment [*sic*]" and had been going to the gym, gardening and landscaping "without any major flareups". [LIN000143-47] On 8/5/20, Belhorn wrote that "she does feel that she is improving", and Plaintiff took a trip to the beach in July. (LIN000140-43)

### C. Informed by new information indicating Plaintiff's improvement, Lincoln obtains surveillance, which reveals normal mobility.

5

Lincoln's Lisa Porriello conducted the 2021 annual review using updated records. Porriello called Plaintiff on 2/17/21. (LIN000010). Plaintiff reported worsening symptoms, pain (including in her right shoulder), needing to walk with a cane, and inability to garden or travel. (10) She had received a steroid injection to her right shoulder in September 2020, which "helped but doesn't fix it". (Id.)

On 2/23/21, Porriello reviewed a 2/8/21, note from Belhorn reporting Plaintiff had experienced "significant benefit" from the steroid injection, was performing "some exercises with strength training and Tai [c]hi that are conservative to help improve her shoulder symptoms" and her pain level was down to 3. (LIN000134)[1]

Porriello received a surveillance report from HUB Enterprises, (HUB) on 3/8/21. (LIN000010;482). Plaintiff was shown walking [unassisted and with a normal gait], carrying items, and entering/operating a vehicle. (LIN000484).[2]

> **D.    In light of new information, Lincoln orders a FCE that reveals Plaintiff retains a sedentary occupational capacity.**

Informed by new information, Porriello ordered an FCE. (LIN000009-10). Exam Coordinators Network (ECN), an independent medical provider, engaged Anna Davidow, PT, who performed the FCE on 4/21/21. (LIN000009;462).

---

[1] Lincoln received a 3/12/21 note from Kallianos on appeal. At that visit, Plaintiff's first with him since May 2019, and after her 2/17/21 conversation with Porriello, Plaintiff presented using a cane.

[2] The footage is accessible by hyperlink at page 3 of the HUB Report. (LIN000484-85).

Plaintiff drove to the appointment, and ambulated slowly and methodically using a standard cane.[3] (LIN000465-66). Davidow took a history from Plaintiff, who reported constant pain for the last two years in her arms and hands, knees, lower and upper back and cervical pain, general weakness, frequent instability and tingling/numbness of the hands. (Id.)

Plaintiff's reported pain level was 7 (her best being 5 and worst 9) and self-limitations of sitting, standing and driving for twenty minutes and walking thirty minutes. (Id.) She was capable of performing activities of daily living (dressing, personal hygiene and basic household activities) and her average day included household activities and caring for animals. (Id.)

Davidow conducted a musculoskeletal screening summary. (LIN000466). Plaintiff's posture appeared equal and level at all aspects, and neurologically intact to light-touch discrimination. (Id.) Plaintiff exhibited moderate tenderness to the right shoulder, trapezius, interscapular and lower back areas. (Id.)

Plaintiff's aerobic capacity was not evaluated because she did not reach the required walking speed of two miles per hour. (Id.) She walked one mile per hour for eight minutes, and again for five minutes after a break (far less than the 2 mile dog walks she previously reported to her physical therapist). She complained of pain (to the right foot and shoulders) and fatigue. (Id.)

---

[3] Notably, she ambulated unassisted and with a normal gait on surveillance.

7

During the material handling segment, Plaintiff carried ten pounds over twenty-five feet. (LIN000467). She declined to finish dynamic lift testing of 12.5 pounds because she complained of pain and fatigue. (Id.) Plaintiff pushed 27 pounds and pulled 20 pounds on an isometric strain gauge. (Id.)

Davidow conducted a range of motion (ROM) and strength analysis. (LIN000472-74). Plaintiff showed decreased ROM within the cervical range, but normal thoracic and lumbar range. (LIN000472). Plaintiff had normal ROM for all upper and lower extremities except for the shoulders (except with respect to adduction). (Id.)

Plaintiff's strength measures were uniformly 4- or 4 out of 5 for elbows, wrists, hips, knees and ankles.[4] (Id.) Her strength scores for shoulders ranged from 3- to 4-. (Id.)

Based on all testing and information reviewed, Davidow assessed frequent or occasional capacities for all positional tolerances, including frequent sitting and occasional standing and walking, based on her pain complaints.[5] (LIN000469;472). Plaintiff demonstrated frequent capacity for all manipulative abilities. (Id.) There were no deficits concerning fingering, simple/firm hand grasp or fine/gross manipulation, but Plaintiff exhibited pain associated with object handling. (Id.)

Davidow concluded that Plaintiff retained sedentary work capacity for an eight-hour day. (LIN000462).

---

[4] With one exception: 3+ for right plantar flexion. (LIN000472).
[5] Crawling and climbing ladders were untested. (LIN000469).

On 4/29/21, Porriello received the FCE and asked Clinical Consultant Specialist Angela Johnson to review it. (Id) Johnson found the FCE results valid and consistent with available medical records. (Id.)

### E. Lincoln conducts a TSA.

Lori Ashworth, Med., CRC, Vocational Rehabilitation Counsellor, conducted a TSA, considering Plaintiff's education, work history, sedentary restrictions per the FCE, and her adjusted skills and abilities, and identified four suitable occupations: Claim Examiner, Loan Interviewer (Mortgage), Customer Complaint Clerk and Claims Clerk II. (LIN000458-59). Ms. Ashworth accounted for the duration of time since Plaintiff had last worked, and concluded that the identified occupations would allow Plaintiff to use her transferable skills and work experience, permit on the job training, and accordingly constitute appropriate alternative occupations. (LIN000459).

### F. Lincoln determines that Plaintiff does not meet the Group Policy Definition of Disability

Based on all the information discussed above, Porriello concluded that Plaintiff no longer satisfied the definition of "Disabled" under the Group Policy, and so informed her by phone and letter dated 5/19/21. (LIN000008;453-57).

Ms. Porriello informed Plaintiff of her appeal rights and that if she wished to appeal, she should submit "any additional information" that Plaintiff believed might support her claim, specifically "office treatment notes, test results, procedure reports, hospitalization records, and any medical records from your treating physicians that confirm your

9

restrictions and limitations precluding you from performing any occupation at this time."
(LIN000455).

### G. Plaintiff appeals the claim decision, focusing largely on critique of the FCE, without offering a supporting medical opinion.

Plaintiff, through counsel, appealed by letter dated 11/11/21. (LIN000386). Plaintiff submitted medical records, APS's (post-dating the claim determination) and Plaintiff's handwritten journal entries (also after the determination). (LIN000008;243-381;386).

Counsel argued that the FCE was flawed because Ms. Davidow's conclusions were inconsistent with the data reported therein. (LIN000390). Notably, Plaintiff did not present any evidence, such as a statement from a medical professional, to support that assertion. Nor did Plaintiff, who bore the burden of proof, provide alternative testing or evaluation at odds with the FCE. Counsel summarized various office visit notes, most of which post-dated the claim determination. (LIN000390-93).

Plaintiff submitted APS forms by Drs. Belhorne and William Silver (orthopedic). Belhorne executed two APS's, dated 8/4/20 and 10/18/21, both of which contained the same limitations as her 2/5/20 APS. (LIN000307;309). Silver's APS, dated 10/25/21, restricted her only from "heavy lifting or repetitive activity". (LIN000311). Although the FCE and surveillance called these restrictions into question, neither physician reported review or analysis of either.

10

Lincoln assigned Plaintiff's appeal to Appeals Specialist Jerronda King. (LIN000007). King ordered an IME of Plaintiff by a physician specializing in Pain Management and Rehabilitation. (LIN000006).

**H.     In response to the medical information, and critique of the FCE, as presented on appeal, Lincoln schedules an IME, but Plaintiff refuses to appear.**

Lincoln informed counsel of its decision to conduct an IME by letter dated 12/15/21. (LIN000129). Independent, outside medical vendor ECN referred the file to Alvin K. Antony, MD. (LIN000120). An appointment was scheduled for 1/4/22, and King notified Plaintiff of the same by letter dated 12/21/21. (LIN000124).

On 12/22/21, counsel refused Lincoln's request claiming that Antony was "biased" in favor of "insurance companies." (LIN000115, emphasis added). King called counsel and agreed to schedule an IME with a physician "that Plaintiff prefers". (LIN000005). Counsel responded on 12/28/21, reiterating his refusal to any IME with any physician allegedly affiliated with the "insurance industry". (LIN000113). He wrote "Ms. Pifer does not know of *any* provider who can perform an independent medical evaluation for Lincoln" and that she "would like to have Lincoln proceed with its consideration of her appeal." (Id., emphasis added)

**I.     Unable to obtain an IME, Lincoln, in an effort to provide a full and fair review, referred Plaintiff's record for an IMR, followed by a supplemental TSA**

Without the ability to obtain an IME, King made the rational next choice of referring the file for independent review by a board certified physician. ECN selected Hunter

11

Vincent, DO (Board Certified, Pain Management and Rehabilitation). (LIN000105). Dr. Vincent's 1/24/22 report demonstrated that he carefully reviewed the entire medical record. (LIN000094). He made specific reference to numerous contemporaneous medical records, the various APS's, the surveillance report, and the FCE. (LIN000094-99).

He agreed that Plaintiff has legitimate restrictions and limitations based on Ehlers-Danlos syndrome and osteoarthritis at the right shoulder, cervical spine, and knees and a prognosis of ongoing degeneration. (LIN000102). He noted that she had also been recently involved in a motor vehicle accident that aggravated underlying morbidities. (Id.) Vincent opined that based on these conditions and ongoing pain, Plaintiff should limit activities that might aggravate her symptoms. (Id.) Vincent concluded that Plaintiff is functionally impaired and requires the following restrictions and limitations:

> Unrestricted reaching at desk level B/L, fine manipulation LUE and simple and firm grasping LUE; Constantly sitting (up to 6 hours/day); Frequently standing (up to 3 hours per/day and with assistive devices if needed); Occasionally: walking (up to 2 hours/day and with assistive devices if needed), lifting, carrying, pushing, and pulling up to 20 lbs. B/L, climbing, stooping, kneeling, crouching, crawling, reaching overhead and below waist, operating foot controls, fine manipulation RUE and simple and firm grasping RUE; Never: balancing, climbing ladders, working at unprotected heights and operating heavy machinery.

(LIN000102-03.)

Vincent recommended restrictions and limitations beginning 5/19/21 (date of claim determination) through the date of his report, with reassessment beginning 4/4/22. (LIN000103). He disagreed with the assertion that Plaintiff is unable to work, even at a sedentary occupation. (LIN000100).

12

Vincent articulated that he based his opinion on the record as a whole, not on any one particular piece of data. He noted that based on that comprehensive review of all the evidence, his "assessment is similar to the FCE results". (LIN000100).

Finally, Vincent tried unsuccessfully to speak with Plaintiff's treating physicians. He made two calls each, leaving messages for Belhorn, Kallianos, Ransone and Silver. He received no response. (LIN000104).

In light of Vincent's new restrictions, VRC Nicole Hall performed a Supplemental TSA which identified two suitable occupations for Plaintiff; information clerk and surveillance-system monitor. (LIN000088-90). Hall omitted several occupations from the first TSA as outside Dr. Vincent's updated restrictions.[6] (Id.) Hall noted that although Plaintiff had been out of work since 2011, the identified occupations were still appropriate. (Id.)

### J. Lincolns offers Plaintiff the opportunity to review and respond to the IMR and Supplemental TSA, and she declines.

King provided counsel with Vincent's report and the Supplemental TSA on 2/1/22, inviting any comments or response. (LIN000073-74). Plaintiff declined to submit additional information on or about 2/9/22. (LIN000066).

### K. Lincoln makes the only decision supported by the medical evidence, and upholds the determination on appeal.

Informed by Vincent's assessment, and in the absence of any information in response, Lincoln made the only logical decision: to uphold the determination on appeal.

---

[6] This underscores that Vincent's restrictions were not only independent of Davidow's, they were stricter.

(3)  King informed Plaintiff of the decision by letter dated 2/17/22.  (LIN000053-64).  The twelve-page letter explains in exacting detail Lincoln's review, and demonstrates a thorough analysis of all information submitted by Plaintiff, as well as that obtained by or for Lincoln.  (Id.)

**Standard of Review**

ERISA represents "a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans."  Aetna Health Inc. v. Davila, 542 U.S. 200, 208 (2004) (quoting Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 54 (1987)).  In keeping with this purpose, ERISA gives employers "large leeway to design disability and other welfare plans as they see fit."  Heimeshoff v. Hartford Life & Accident Ins. Co., 571 U.S. 99, 108 (2013) (quoting Black & Decker Disability Plan v. Nord, 538 U.S. 822, 833 (2003)).  "And once a plan is established, the administrator's duty is to see that the plan is 'maintained pursuant to [that] written instrument.'"  Id. (quoting 29 U.S.C. § 1102(a)(1)).  Since the substantive content of the plan is up to the plan sponsor who need not provide any benefits at all, ERISA claims administrators are required to administer the plan as written.  *See*, Boyd v. Metropolitan Life Ins. Co., 636 F.3d 138, 140–41 (4th Cir. 2011) (citing Kennedy v. Plan Administrator for DuPont Savings & Inv. Plan, 555 U.S. 285 (2009)).

Indeed, Lincoln had a contractual and regulatory duty, in connection with its "full and fair review," to adhere to and strictly enforce all of the terms of the Group Policy, including its explicit proof of claim requirements.  *See* 29 C.F.R. §§ 2560.503-1(h)

14

(outlining procedures designed to ensure that administrator determinations are made in accordance with the written terms of the plan). This duty does not "favor payment over nonpayment," but rather compels an "impartial account of the interest of all beneficiaries" and "recognizes the need to preserve assets to satisfy future, as well as present, claims." Varity Corp. v. Howe, 516 U.S. 489, 514 (1996); *see also,* Conkright v. Frommert, 559 U.S. 506, 520 (2010) (holding that ERISA administrators "have a duty to all beneficiaries to preserve limited plan assets").[7]

To achieve ERISA's careful balance, Courts must also respect the discretionary authority of claim administrators where such authority is expressly granted in the plan documents. *See,* Conkright v. Frommert*,* 559 U.S. 506, 517 (2010) ("*Firestone* deference protects these interests and, by permitting an employer to grant primary interpretive authority over an ERISA plan to the plan administrator, preserves the 'careful balancing' on which ERISA is based"). Here, the Group Policy expressly confers discretionary authority, and this Court must give deference to Lincoln's determination and may overturn

---

[7] In accordance with the express terms of the Group Policy, the proper allocation of proof to the Plaintiff is also well established in Fourth Circuit law. *See,* Harrison v. Wells Fargo Bank, N.A., 773 F.3d 15, 24 (4th Cir. 2014) ("It bears repeating that the primary responsibility for providing medical evidence to support a claimant's theory rests with the claimant."); Elliott v. Sara Lee Corp., 190 F.3d 601, 609 (4th Cir. 1999) (holding that the burden is at all times on claimant and "administrator is under no duty to secure specific forms of evidence"); Donnell v. Metro. Life Ins. Co., 165 Fed.App'x 288, 296 n.9 (4th Cir. 2006) ("[Claimant] has the burden to prove that she is entitled to receive disability benefits under the Plan."); Band v. Paul Revere Life Ins. Co., 14 Fed.App'x 210, 212 (4th Cir. 2001) ("The burden is on [claimant] to prove his or her total disability benefits under a Plan.").

it only upon Plaintiff's showing that Lincoln abused its discretion.  Feder v. Paul Revere

Life Ins. Co., 228 F.3d 518, 522 (4th Cir. 2000).

As such, Lincoln's decision should "not be disturbed if reasonable even if the court

itself would have reached a different conclusion independently."  Ellis v. Metro Life Ins.

Co., 126 F.3d 228, 232 (4th Cir. 1997); *see also,* Smith v. Continental Casualty Co., 369

F.3d 412, 417 (4th Cir. 2004); Evans, 514 F.3d at 322.  In the Fourth Circuit, the non-

exclusive factors the Court may consider include:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3)
> the adequacy of the materials considered to make the decision and the
> degree to which they support it; (4) whether the fiduciary's interpretation
> was consistent with other provisions in the plan and with earlier
> interpretations of the plan; (5) whether the decision-making process was
> reasoned and principled; (6) whether the decision was consistent with the
> procedural and substantive requirements of ERISA; (7) any external
> standard relevant to the exercise of discretion; and (8) the fiduciary's
> motives and any conflict of interest it may have.

Champion v. Black & Decker (U.S.) Inc., 550 F.3d 353, 359 (4th Cir. 2008) (quoting Booth

v. Wal-Mart Stores, Inc., 201 F.3d 335, 342–43 (4th Cir. 2000)).

Finally, the deferential standard of review is not altered by the presence of a so-

called structural conflict.  *See* Glenn, 554 U.S. at 108; Champion, 550 F.3d at 359 ("Courts

are to apply simply the abuse of discretion standard . . . even if the administrator operated

under a conflict of interest.  Under that familiar standard, a discretionary determination will

be upheld if reasonable.").

Plaintiff did not prove disability beyond 5/19/21 and she cannot satisfy her burden. The Administrative Record clearly supports Lincoln's determination, and Plaintiff's critiques of Lincoln's determination are meritless.

This record is straightforward. During annual claim review, Lincoln identified information that raised questions about Plaintiff's current activity level. Lincoln followed the evidence and obtained surveillance that, at minimum, warranted further investigation. Lincoln obtained independent, third party testing, the FCE, which supported discontinuation of benefits as of May, 2021.

On appeal, it was Plaintiff's burden under the Group Policy to provide ongoing proof of disability as of 5/19/21. In terms of medical opinion evidence, Plaintiff's efforts to meet her burden were limited to two APS's counsel obtained from Belhorn and Silver, and some conclusory statements in Kallianos' medical records. None of these unsupported opinions came anywhere close to meeting Plaintiff's burden.

As explained above, Silver's 10/25/21 APS restricted her only from "heavy lifting or repetitive activity". This reveals nothing about Plaintiff's ability to perform the duties of any occupation.

Belhorne's APS's simply parroted the same limitations as her 2/5/20 APS, which the surveillance and FCE since called into question. (LIN000307;309).

As for Kalianos, he noted on 2/11/21 that "she needs a form completed for her life insurance re: long term disability" and later simply repeated in subsequent notes that "[s]he

17

is still permanently disabled". (LIN000191-92;98;201;219). Though repeating this statement (often accompanied by reference to her disability claim) Kallianos offered no explanation as to the medical reasoning or objective evidence underlying that conclusion. Nor did he explain what he meant by "permanently disabled" and how that statement applied to the broad "any occupation" definition under the Group Policy.

As a general legal matter, it is well settled that, for many good reasons, an ERISA administrator need not defer to treating physicians' opinions. *See,* Black & Decker Disability Plan v. Noord, 538 U.S. 822, 834 (2003) (administrator has no duty to defer to treating physicians and no discrete burden of explaining disagreements because, in part, "a treating physician 'may favor a finding of disability'"); Frankton v. Metro. Life Ins. Co., 432 Fed.App'x 210, 215 (4th Cir. 2011) ("ERISA does not require that administrators accord special deference to the opinions of treating physicians."); Hensley v. Int'l Bus. Machines Corp., 123 Fed.App'x 534, 539 (4th Cir. 2004) ("ERISA plan administrators are not required to accord any special deference to the opinions of treating physicians over those of non-treating consultants."); Joyner v. Cont'l Cas. Co., 2013 WL 865846, at *12 (W.D.Va. Mar. 7, 2013) ("it was well within Defendant's province to weigh these conflicting opinions and side with [the consulting physicians]).

It is not unusual for a treating physician, out of a desire to maintain good relations with a patient or out of simple personal concern for the patient's economic well-being, to offer support for a patient's claim. Such support, however, obviously does not form the basis for accurate disability determinations and advocacy is not the same thing as "proof."

18

Maniatty v. UnumProvident Corp., 218 F.Supp.2d 500, 504 (S.D.N.Y. 2002), *aff'd,* 62 Fed.App'x 413 (2d Cir. 2003) ("it was not unreasonable for the administrator to conclude that the only material reason the treating physicians were reaching their diagnosis was based on their acceptance of plaintiff's subjective complaints: an acceptance more or less required of treating physicians, but by no means required of the administrator"). Indeed, "the possibility of a conflict of interest is just as real with respect to a treating physician who, 'in a close case, may favor a finding' for the patient." Dolfi v. DRMS, Inc., 584 F.Supp.2d 709, 735 (M.D.Pa. 2008) quoting Stratton v. E.I. DuPont De Nemours & Co., 363 F.3d 250, 255 (3d Cir. 2004).

Here though, there are additional reasons why these opinions were worthy of little weight. Most significantly, none of these physicians even purported to have reviewed the entire record which, at the time in question, included the surveillance, the FCE, the medical records of all the treating practitioners, and later, Dr. Vincent's opinions. None of these physicians purported to conducted any objective analysis or evaluation of Plaintiff's actual restrictions and limitations, whether by functional testing, review of the comprehensive medical record or otherwise. As such, none of them made any effort to reconcile their opinions with all of the evidence in the record, despite having every opportunity to do so.

In sum, these opinions were not worthy of substantial weight because they were conclusory, unsupported and contrary to all the objective evidence in the record demonstrating that Plaintiff had sedentary functional capacity as of May, 2021. *See,* Silva v. Voya Servs. Co. Employee Welfare Benefit Plan, 2020 WL 2537454 at *10 (D.S.C. May

19, 2020) (administrator properly credited contemporaneous medical records over "prepared letters and statements" that conflicted with such records); Teague v. Hartford Life & Accident Ins. Co., 2006 WL 8455977 at *14 (W.D.N.C. March 17, 2006) (administrator properly discounted treating physician's opinion in support of claimant where that opinion conflicted with observations contained in the doctor's own contemporaneous office notes); *see also, e.g.,* Wilson v. Reliance Standard Life Ins. Co., 2018 WL 994327 at *6 (E.D.Mich. Feb. 21, 2018) ("It appears that rather than providing objective findings and evidence of [claimant's] pain, the doctors simply rubber-stamped her claim."). Moreover, these physicians uniformly declined to respond to Dr. Vincent's efforts to discuss the claim.

Otherwise, Plaintiff's proof came down to, quite literally, her own subjective self-assessment that she can do no work. Such subjective evidence, while it should be and was considered (indeed, Dr. Vincent recommended significant restrictions and limitations based on such subjective complaints), simply cannot, standing alone, constitute the "proof" required under the Group Policy. Where a plan, as here, requires "proof" of continued disability, Courts in the Fourth Circuit, as elsewhere, regularly hold that the concept of proof connotes an "objective" component to such evidence. *See* Coffman v. Metropolitan Life Ins. Co., 217 F.Supp.2d 715, 732 (S.D.W.Va. 2002), *aff'd*, 77 Fed.App'x 174 (4th Cir. 2003); *see also, e.g.,* Maniatty v. Unum Provident Corp., 218 F.Supp.2d 500, 504 (S.D.N.Y. 2002), *aff'd,* 62 Fed.App'x 413 (2d Cir. 2003), *cert. denied*, 540 U.S. 966 (2003). "Where an opposite rule to apply, LTD benefits would be payable to any

20

participant with subjective and effervescent symptomology simply because the symptoms were first passed through the intermediate step of self-reporting to a medical professional." Coffman, 217 F.Supp.2d at 732. "Without an objective component to this proof requirement, administrative review of a participant's claim for benefits would be meaningless because a plan administrator would have to accept all subjective claims of the participant without question." Williams, 250 F.Supp.2d at 648. *See also*, Maniatty, 218 F.Supp.2d at 504 ("Although . . . subjective information should be considered, . . . reliance on such complaints, without more, would result in insurance companies paying virtually all claims"). And as Courts have noted, the administrator's "fiduciary role" in "scrutinizing self-reporting," "preventing malingering," "guard[ing] the assets of the [plan]," and paying only "legitimate claims" would be "greatly hampered." Coffman, 217 F.Supp.2d at 732 (quoting Brogan v. Holland, 105 F.3d 158, 164 (4th Cir. 1997)).[8]

There were additional reasons why Plaintiff's subjective self-assessments of her work capacity were worth little weight. In addition to being contrary to the other objective evidence in the file, even Plaintiff's self-serving journal entries, crafted for the specific purpose of supporting her claim, clearly failed to do so. Recall here that the question is whether Plaintiff is capable of sedentary work; the least demanding occupational classification. Plaintiff's journal entries certainly support that she experienced pain, which

---

[8] DuPerry v. Life Ins. Co. of N. Am., 632 F.3d 860 (4th Cir. 2011) states that an administrator may not ignore or dismiss reports of pain on the basis of subjectivity. Lincoln did not do that here. The question is not whether Plaintiff feels pain or to what degree. The question is the extent to which pain precludes her ability to work. *See*. Griffin v. Hartford Life & Acc. Ins. Co., 898 F.3d 371, 382 (4th Cir. 2018) (subjective complaints alone insufficient to prove disability where inconsistent with other evidence).

is not disputed. They also demonstrate that she is self-sufficient, able to cook, clean, take care of herself, visit with neighbors, run errands, perform her morning exercises, and walk the dog for 30-40 minutes most days. To be sure, the journal reflects that her son helped out and that she experienced some difficulties. But many people work with pain and difficulties. The journal entries simply do not support an inability to work in any occupation.

Despite the significant problems with her "proof", Plaintiff focused almost all her efforts on appeal, on attacking the FCE. First, this was impermissible burden shifting. Lincoln had no burden to disprove Plaintiff's claim. Griffin, 898 F.3d at 382 (where policy required proof of continuing disability, administrator did not have burden of proving that plaintiff was no longer disabled). But more importantly, Plaintiff's attacks were misplaced. Her counsel set forth a laundry list of test findings that he claimed, as a lay person, were contrary to Davidow's conclusion that Plaintiff was capable of sedentary work. (LIN000388-89). But none of those findings demonstrated any such thing. They demonstrated that Plaintiff has legitimate restrictions and limitations. But no one disputes that and the narrow question of whether those restrictions and limitations resulted in complete inability to perform sedentary work, was the purpose of the FCE. Davidow opined that they did not and nothing in counsel's letter provided any "proof" to the contrary.

Nonetheless, despite Plaintiff's failure to prove her claim on appeal, Lincoln continued to give her every opportunity to do so moving forward. Plaintiffs in ERISA

cases frequently complain when administrators decline to perform an IME, reasoning that an in-person examination is inherently weightier than a records review. *See, e.g.,* Piepenhagen v. Old Dominion Freight Line, Inc., 395 Fed.App'x 950, 957 (4th Cir. 2010). While that argument is, generally speaking, misplaced, here Lincoln did seek an IME (as is its right under the Group Policy) through an outside, independent vendor, and Plaintiff refused. Lincoln even offered Plaintiff the opportunity to choose the physician and still she declined. Unable to obtain an IME, Lincoln obtained an IMR through an outside, independent vendor, from Vincent, who concluded that Plaintiff has full-time sedentary work capacity. Lincoln gave Plaintiff the chance to respond and explain why it should reject his recommendation. She again declined.

Plaintiff now asks the Court to decide Lincoln's decision was not only wrong, but unreasonable. Ironically, the gravamen of Plaintiff's claim is that Lincoln's decision was not based on enough information. But, it was Plaintiff who failed to provide Lincoln with any information that could have rationally warranted another result. Plaintiff could have submitted a physician's statement supporting her critique of the FCE, or even a competing FCE. Plaintiff could have appeared for the IME, or commissioned her own IME. Plaintiff could have urged any of the four treating physicians who ignored Vincent's inquiries to return his call. Plaintiff could have presented a medical opinion in response to Vincent's. She did none of these things. Instead, her position is that Lincoln should have accepted the conclusions of her treating physicians at face value, ignoring all other available data, including Vincent's opinion.

23

Lincoln does not take the extreme position that the medical record is void of objective evidence supporting any limitations. To the contrary, Vincent's opinion embraces that fact, and acknowledges restrictions and limitations consistent with sedentary work. Thus, Lincoln correctly relied on the advice of an independent physician who, to the credit of his objectivity, recognized Plaintiff's legitimate restrictions and limitations. However, he concluded that those restrictions *did not* preclude her from sedentary work. See, e.g., Cusson v. Liberty Life Assur. Co. of Boston, 592 F.3d 215, at 226 (1st Cir. 2010) (insurer properly relied on reviewing physician consultants who disagreed with treating physicians). See also, Joyner, 2013 WL 865846, at *12, *supra*. And Dr. Vincent is the only practitioner who actually reviewed the entire medical record and rendered an objective opinion. *See, e.g.,* Beltman v. Sun Life Assurance Company of Canada, 2019 WL 1614584, *8 (W.D.Mich. March 29, 2019) ("The Court also gives greater weight to Sun Life's experts as they are the only practitioners in the case to have reviewed the whole of Beltman's medical records before offering their assessments") *citing,* Etkin v. Merk & Co., Inc., 2001 WL 1246368, at *6 (E.D.Pa. Oct. 30, 2001) ("[I]t is [proper] to rely on the opinions of non-examining physicians who had before them the entire record of medical evidence, more evidence than was available to any one doctor who saw plaintiff previously."))

In sum, Plaintiff simply did not meet her continuing burden of proving that she remained disabled as of May 18, 2019. Lincoln gave her ample opportunity to prove her claim, but she refused to do so at every turn.

53572951.v1-OGLETREE

At best, the evidence might show conflicting medical opinions, but mere conflict between the medical evidence proffered by a claimant and relied upon by an administrator, cannot possibly render the administrator's decision arbitrary and capricious. Plaintiff's efforts to pick at the evidence relied on by Lincoln, demonstrates, at a minimum, that reasonable medical professionals might differ on this record. Indeed, in *Evans v. Eaton Corp. Long Term Disability Plan,* 514 F.3d 315, 324 (4th Cir. 2008), the Fourth Circuit, faced with a much closer case on the medical evidence than Pifer's, noted that:

> [s]uch point/counterpoint shows what a close case this was, and thus how very important the abuse of discretion standard-which, like other standards, bites mainly in close cases-should have been. The district court [having reversed the administrator's decision] should have acknowledged the essential equipoise and stayed its hand.

Finally, this is not a case where Lincoln's so-called structural conflict is an important factor. The Supreme Court holds that the existence of such a conflict does not alter ERISA's deferential standard. Rather, the conflict factor "should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy." *See*, Glenn, 554 U.S. at 117; Champion, 550 F.3d at 362. Here, the record demonstrates Lincoln's "active steps" to reduce bias and promote accuracy—including its use of independent third party medical professionals at the claim and appeal levels and imposing a separation between Lincoln and the consulting medical professionals by enabling a third party to independently retain consultants. In addition, Lincoln has further documented its procedural safeguards in the Declaration of Jordan

25

Bennan, <u>Exhibit A</u>, hereto. *See*, *e.g*., <u>Fine v. Sun Life Assurance Co.</u>, 97 F.Supp.3d 799, 812–13 (E.D.Va. 2015); <u>Patel v. United Omaha Life Ins. Co.</u>, 2012 WL 2370129 at \*2–3 (D.Md. June 21, 2012) (citing <u>Denmark v Liberty Life Assurance Co.</u>, 566 F.3d 1, 10 (1st Cir. 2009)).  There is nothing in the record indicating that bias improperly influenced Lincoln's determination.

## Conclusion

Based on this record, Lincoln made the only determination it could have made.  For the foregoing reasons, Plaintiff is not entitled to further LTD benefits, and this Court should grant judgment in favor of Lincoln.

Respectfully submitted this the 31st day of October, 2022.

OGLETREE, DEAKINS, NASH,
 SMOAK & STEWART, P.C.

/s/  *Vanessa N. Garrido*
Vanessa N. Garrido (N.C.  Bar No. 53470)
8529 Six Forks Road
Forum IV, Suite 600
Raleigh, North Carolina 27615
Telephone: 919-789-3194
Facsimile: 919-783-9412
Email: vanessa.garrido@ogletree.com

and

OGLETREE, DEAKINS, NASH,
 SMOAK & STEWART, P.C.
/s/  *W. Kyle Dillard*
W. Kyle Dillard (S.C. State Bar # 69408) *by Special Appearance*
300 North Main Street, Suite 500
Greenville, SC 29601
Telephone: 864-240-8317

26

Facsimile: 864-235-8806
kyle.dillard@ogletree.com
*Attorneys for Defendant*

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Case No. 1:22-cv-00186-WO-JLW

| | |
|---|---|
| REBECCA PIFER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| LINCOLN LIFE ASSURANCE | ) |
| COMPANY OF BOSTON, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |
| | ) |
| | ) |

**CERTIFICATE OF WORD COUNT**

The undersigned certifies that Defendant's Memorandum in Support of Motion for Summary Judgment complies with LR 7.3(d)(1) concerning Limitations on Length of Briefs. As calculated by the word count feature on the word processing software used to prepare Defendant's Memorandum, the document (exclusive of the case caption and counsel's signature block) consists of 6243 words.

Respectfully submitted this the 31st day of October, 2022.

<div style="margin-left:50%">

OGLETREE, DEAKINS, NASH,
 SMOAK & STEWART, P.C.

/s/ *Vanessa N. Garrido*
Vanessa N. Garrido (N.C.  Bar No. 53470)
8529 Six Forks Road
Forum IV, Suite 600
Raleigh, North Carolina 27615
Telephone: 919-789-3194

</div>

28

Facsimile: 919-783-9412  
Email: vanessa.garrido@ogletree.com

and

OGLETREE, DEAKINS, NASH,  
 SMOAK & STEWART, P.C.  
/s/ *W. Kyle Dillard*  
W. Kyle Dillard (S.C. State Bar # 69408) *by*  
*Special Appearance*  
300 North Main Street, Suite 500  
Greenville, SC 29601  
Telephone: 864-240-8317  
Facsimile: 864-235-8806  
kyle.dillard@ogletree.com  
*Attorneys for Defendant*

29

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that on this date a copy of the foregoing **MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Andrew Whiteman
Whiteman Law Firm
5400 Glenwood Avenue, Suite 225
Raleigh, NC 27612
aow@whiteman-law.com

This the 31st day of October, 2022.

OGLETREE, DEAKINS, NASH,
 SMOAK & STEWART, P.C.

/s/  *Vanessa N. Garrido*
Vanessa N. Garrido (N.C.  Bar No. 53470)
8529 Six Forks Road
Forum IV, Suite 600
Raleigh, North Carolina 27615
Telephone: 919-789-3194
Facsimile: 919-783-9412
Email: vanessa.garrido@ogletree.com

and

/s/  *W. Kyle Dillard*
W. Kyle Dillard (S.C. State Bar # 69408) *by Special Appearance*
300 North Main Street, Suite 500
Greenville, SC 29601
Telephone: 864-240-8317
Facsimile: 864-235-8806
kyle.dillard@ogletree.com
*Attorneys for Defendant*

30