IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:03-CV-658-FL(3)

FILED

11/29/04 QR

MICHAEL D. BROOKS, Acting Clerk DAVID W. DANIEL, CLERK
DISTRICT COURT. EDNC

|  |  |  |
|---|---|---|
| PAMELA M. BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| NORTEL NETWORKS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on cross-motions for summary judgment (DE #11, 13). Both parties have responded to the opposing motions, and in this posture the matter is ripe for ruling. For the following reasons, plaintiff's motion is GRANTED in part and DENIED in part, defendant's motion is DENIED and the matter is remanded to the benefits plan administrator for further proceedings.

STATEMENT OF THE CASE

Plaintiff filed this complaint pursuant to 29 U.S.C. § 1132(a)(1)(B) on August 29, 2003, seeking reinstatement of her long-term disability benefits. At issue is whether plaintiff's disability is caused by a psychological or mental illness, and thereby subject to a two-year limitation of benefits. Plaintiff also seeks attorney's fees and costs pursuant to 29 U.S.C. § 1132(g)(1). Plaintiff filed her motion for summary judgment and supporting memorandum of law on May 24, 2004. Defendant filed its motion for summary judgment and supporting memorandum of law on June 1, 2004.

STATEMENT OF FACTS

The undisputed facts as contained in the administrative record are as follows: Plaintiff was employed by defendant Nortel Networks, Inc. (hereinafter "Nortel") as a senior software engineer. Plaintiff was a participant in several of Nortel's employee benefit plans, including the Short Term and Long Term Disability Plan (hereinafter "the Plan"). On September 2, 1999, plaintiff applied for Short Term Disability benefits due to severe depression and other impairments, caused in part by stress over her physical health problems. Plaintiff had been diagnosed earlier in the year with cardiac disease, and a catheter and stents were emplaced in early 1999.

Per the terms of the Plan, Short Term Disability benefits were limited to a maximum of 26 weeks. Nortel granted the benefits and referred plaintiff to Dr. Pamela Reid, a psychiatrist, for further diagnosis and treatment. Dr. Reid confirmed that plaintiff was suffering from severe depression and cognitive impairments, including decreased memory, inability to concentrate and severe anxiety. Dr. Reid also noted that plaintiff was suffering from a number of medical problems, including migraine headaches (basilar artery migraines), coronary artery disease, hypercholestoremia, and multiple transient neurological symptoms. Dr. Reid concluded that plaintiff was unable to return to work and perform her duties as a software engineer.

Plaintiff's short term disability benefits were granted by Nortel through the 26-week limit until March 3, 2000. Plaintiff subsequently applied for long-term disability benefits. Under the terms of the Plain, LTD benefits require that the claimant be considered "totally disabled." The Plan defines total disability as follows: "You are considered Totally Disabled for LTD if a Physician certifies that you cannot work because of an illness or accidental injury, and the clinical evidence supports this opinion." For the first 18 months of disability, the Plan defines "unable to work" as

2

an inability to perform the claimant's prior duties. After that time period, the Plan defines inability to work as the inability to perform any reasonable occupation. The Plan further limits long-term benefits to 24 months for disability caused by mental or nervous disorder. Nortel approved plaintiff's claim for long-term benefits in a letter dated March 8, 2000, but advised her that her benefits were considered subject to the 24-month limitation for total disability caused by mental illness or nervous disorder.

Dr. Reid, the psychiatrist referred by Nortel, continued to treat plaintiff for symptoms of depression. Dr. Reid noted that plaintiff's neurologic symptoms, including memory problems and difficulties with concentration, did not appear to improve, although plaintiff did respond to medication for the depression. Dr. Reid referred plaintiff to Dr. Mark Franczak, a neurologist, for evaluation of plaintiff's neurologic symptoms. Dr. Franczak first saw plaintiff on April 6, 2001. Upon review of detailed notes of plaintiff's history, discussions with Dr. Reid, and evaluation of and discussions with plaintiff, Dr. Franczak concluded that plaintiff's cognitive impairments appeared to be out of proportion to that seen with depression. Dr. Franczak formed an initial impression of possible physical causes for the impairment, including small vessel ischemia, demyelinating disease/multiple sclerosis, or possibly Alzheimer's disease. Dr. Franczak referred plaintiff to Dr. Kristine Herfkens, a neuropsychologist, for evaluation of the extent and nature of plaintiff's cognitive impairments.

Dr. Herfkens administered a series of psychological tests to plaintiff on May 1, 2001. As a neuropsychologist, rather than a medical doctor, Dr. Herfkens could not diagnose plaintiff as having a specific medical disorder. Specifically, Dr. Herfkens later noted that "[n]europsychologists don't diagnose transient ischemic vascular disease. We diagnose the effects of that." Dr. Herfkens did

3

conclude, nonetheless, that plaintiff's neurocognitive testing did show impairment consistent with small vessel ischemic disease. In small vessel ischemic disease, problems with blood circulation result in reduced blood supply to an area of the brain. The syndrome can cause effects called transient ischemic attacks, resulting in symptoms identical to those of strokes, but of limited duration. Based upon Dr. Herfken's neuropsychological evaluation and his own interpretation of plaintiff and her subsequent medical tests, Dr. Franczak concluded that plaintiff was suffering from cognitive impairments caused by a physical condition, rather than a purely psychological condition or mental illness.

Plaintiff was notified in November, 2001, by Prudential Insurance Company, the claims administrator of Nortel's LTD Plan, that her eligibility for benefits would end under the mental-illness limitation on March 2, 2002. Plaintiff, upon request by Prudential, submitted her medical records and evaluations by Dr. Reid, Dr. Franczak and Dr. Herfkens in support of her claim that her impairments were medical in origin, and not strictly attributable to mental illness. Prudential denied plaintiff's claim and terminated her benefits on May 1, 2002. Prudential upheld its decision and denied plaintiff's first-level appeal on October 1, 2002.

Plaintiff subsequently made her final administrative appeal to Nortel's Employee Benefits Committee (hereinafter "EBC"). In support of her claim, plaintiff again submitted her up-to-date medical records, including further evaluations and reports by Dr. Reid, Dr. Herfkens and Dr. Franczak, expanding on their earlier conclusion that plaintiff was suffering from impairment with a physical origin. Plaintiff also submitted a report by Dr. Laura Jozewicz, a Board-certified psychiatrist and neurologist. Dr. Jozewicz concurred with the prior evaluation of cognitive impairment caused by small vessel ischemia. Plaintiff also submitted a summary report from her

4

primary care physician, Dr. Denise Tollefson. Dr. Tollefson's report listed plaintiff's extensive medical problems, including high cholesterol, coronary artery disease, cerebrovascular small vessel ischemia, basilar artery migraines, cognitive impairments, depression and anxiety. Dr. Tollefson opined that "this patient's multiple and complex medical problems need to be understood in their cumulative effects," and explained how plaintiff's medical conditions interacted to both cause her disability and complicate its treatment. In short, all of plaintiff's treating and consulting medical doctors, as well as her neuropsychologist, agree that she suffers from a disability caused by physical impairments, and not purely psychological ones.

Although the EBC makes the final decision on administrative appeals for disability benefits, the EBC members are not themselves medical professionals. With the exception of the chair of the EBC, who has a Master's degree in nursing as well as a Master's in Business Administration, none of the EBC members possess any medical education or training. Given the volume and complexity of the medical issues involved, the EBC requested an independent review by a physician who had not previously worked on the case. Specifically, the EBC sought clarification on the issue of whether the "condition that caused the disability was a mental and/or nervous disorder or whether it was a condition with physical/biological origins." The EBC relied upon Prudential, as the initial claims administrator for the Plan, to select an appropriate physician and provide him with the appropriate records and documentation.

Prudential selected Dr. Stephen Rao, Ph.D and Board-certified in clinical neuropsychology. Dr. Rao is, under the definitions set out by the Plan, a physician, highly trained and qualified in the evaluation and treatment of mental illness. He is not, however, a medical doctor. Like Dr. Herfkens, also a neuropsychologist, he could not diagnose a specific medical condition, such as small vessel

5

ischemia, but could only evaluate its effects. Dr. Rao reviewed plaintiff's medical records and files dating up to her appeal to Prudential, but apparently not including the materials submitted in her appeal to the EBC. The omitted materials included a letter from Dr. Herfkens explaining her earlier findings and conclusions, a second neuropsychological evaluation by Dr. Herfkens, and the report of Dr. Jozewicz.

Upon his review of the medical records provided to him, Dr. Rao concluded that it would not be possible to evaluate plaintiff's condition as progressive, as Dr. Franczak and Dr. Herfkens had done, absent a second neuropsychological evaluation. As previously noted, such an evaluation was performed but was not provided to Dr. Rao. Dr. Rao further concluded that plaintiff's test results "could just as easily be attributed to moderate to severe depression as to transient ischemic vascular disease." [RAO 15.] Dr. Rao disagreed with the evaluating neurologists, Dr. Franczak and Dr. Jozewicz, on their medical conclusion that the test results, both medical and neuropsychological, supported a diagnosis of small vessel ischemic disease. Finally, Dr. Rao concluded that "claimant has subtle, if any, cognitive deficits." In doing so, Dr. Rao disagreed with all of plaintiff's treating and consulting physicians.

Upon receiving Dr. Rao's report, the EBC met and decided to affirm the termination of plaintiff's disability benefits on July 1, 2003. Subsequently, plaintiff brought this cause of action seeking restoration of her benefits under 29 U.S.C. § 1132(a)(1)(B) on August 29, 2003. Plaintiff moved for summary judgment on May 24, 2004, and defendant made its own motion for summary judgment on June 1, 2004.

COURT'S DISCUSSION

I. Standard of Review

6

A. Summary judgment

Summary judgment is appropriate, under Rule 56(c), "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party can meet this burden "by showing that there is an absence of evidence to support the nonmoving party's case." Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 185 (4th Cir. 2004). "[A] complete failure of proof concerning an essential element of [a plaintiff's] case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323. Once the moving party has met its burden, the non-moving party must then "set forth specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (quoting FED. R. CIV. P. 56(e)).

B. ERISA

In cases involving the review of a denial of disability benefits, the Fourth Circuit has set forth a "well-settled framework" for the courts to follow. When the benefit plan grants the administrator discretionary authority to construe or adopt the terms of the plan or to determine eligibility for benefits, the decision to deny benefits is reviewed for abuse of discretion. Ellis v. Metropolitan Life Insurance Co., 126 F.3d 228, 232 (1997). Under this standard, the decision by the plan administrator to deny benefits will not be disturbed if it is reasonable, even if the reviewing court would have on its own come to a different conclusion. Id.

7

In determining whether a plan administrator acted reasonably, the court must consider if the administrator was operating under a conflict of interest. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); see also Doe v. Group Hospitalization & Med. Services, 3 F.3d 80, 85 (4th Cir. 1993). When considering a situation where a plan administrator interprets a disputed term of the plan in a manner which furthers the interests of the insurer over those of the beneficiary, the court "will not act as deferentially as would otherwise be appropriate." Bedrick v. Travelers Ins. Co., 93 F.3d 149, 152 (4th Cir. 1996). Rather, the deference accorded the plan administrator's decision will be lessened "to the extent necessary to counteract any untoward influence resulting from that conflict." Booth v. Wal-Mart Stores, Inc., 201 F.3d 335, 343 fn.2 (4th Cir. 2000). Under this sliding-scale abuse of discretion analysis, the ultimate question is whether the claimant received a full and fair review. See 29 U.S.C. § 1133(a)(2); see also Conrad v. Continental Casualty Co., 232 F.Supp.2d 600, 603 (E.D.N.C. 2002). In answering this question, the court

> may consider, but is not limited to, such factors as:(1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

Booth, 201 F.3d at 342-43.

Here, defendant does not dispute that the language of the plan grants to Nortel the final discretionary authority to construe and interpret the plan and to decide all questions of eligibility for benefits. Hence, the abuse of discretion standard applies. Defendant also acknowledges that

8

Nortel's disability benefits plan is self-funded, thereby creating a conflict of interest between its financial interest in funding the plan and that of the plaintiff in receiving benefits. See Doe, 3 F.3d at 86 (noting that a conflict of interest exists when the insurer both funds the benefit plan and exercises discretionary authority in awarding benefits). Defendant argues, however, that even when such a conflict of interests exists, plaintiff bears the burden of showing that the conflict in fact unduly influenced the administrator's decision before the sliding-scale standard of review applies. Defendant has not pointed to, and this court cannot find, any authority in this circuit to support this proposition. Therefore, this court applies the sliding-scale standard of review in accordance with the directives of the Fourth Circuit.

II. Analysis

A. ERISA claim for reinstatement of disability benefits

Plaintiff argues that by failing to provide Dr. Rao with all of her medical records and other materials, defendant Nortel abused its discretion by failing to provide her with a full and fair review, as required under the ERISA statute. See 29 U.S.C. § 1133(a)(2). Plaintiff further contends that Dr. Rao was an inappropriate choice for an independent medical review. Because Dr. Rao is a clinical neuropsychologist, and not a medical doctor, plaintiff contends that it was an abuse of discretion for Nortel to rely upon Dr. Rao's report to contradict the diagnosis and opinions of her treating and consulting physicians.

Plaintiff is correct in her argument that the decision of the plan administrator must take into account "all comments, documents, records, and other information submitted by the claimant relating to the claim." 29 C.F.R. § 2560.503-1(h)(2)(iv)(2000). Further, this court in analyzing for abuse of discretion considers, among other factors, the "adequacy of the materials considered to make the

9

decision and the degree to which they support it." Booth, 201 F.3d at 342. Defendant's argument that this requirement is fulfilled because Nortel's Employee Benefits Committee considered all of claimant's medical records, even though Dr. Rao did not, is not well received. The EBC did in fact consider all of claimant's materials. They requested an independent medical review by a physician precisely because they could not determine, based upon those materials, whether plaintiff's disability was of a medical or purely psychological origin. It would be unreasonable for the EBC to request such a review, and then not supply the reviewing physician with the materials that they wished to have clarified. Because Dr. Rao's analysis was not based upon all of the relevant materials which defendant possessed, his subsequent report does not form an adequate and reliable basis to support Nortel's decision to deny the plaintiff long-term disability benefits. See Myers v. Hercules, Inc., 253 F.3d 761, 767(4th Cir. 2001) (holding that decision of plan administrator was not supported by sufficient evidence when it rested upon isolated statements of the attending physician taken out of context).

Contrary to defendant's argument, this conclusion that reliance upon Dr. Rao's report was an unreasonable abuse of discretion does not run afoul of the Supreme Court's decision in Black & Decker Disability Plan v. Nord, 538 U.S. 822 (2003). There, the Court rejected the Ninth Circuit Court of Appeals reliance upon the "treating physician" rule, a doctrine imported from the context of Social Security disability determinations. Black & Decker at 832-33. Under that rule, a plan administrator "who rejects the opinions of a claimant's treating physician [must] come forward with specific reasons for his decision, based upon substantial evidence in the record." Id. at 828. In rejecting the rule, the Court held that "courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan

10

administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." Id. at 834.

Here, however, the problem is not that the plan administrator failed to give special weight to the opinions and diagnoses of claimant's physician. The problem is that the plan administrator credited unreliable evidence which conflicted with the treating physicians' evaluation, by relying upon Dr. Rao's report, which itself relied upon incomplete information. Therefore, plaintiff's claim did not receive a "full and fair review" by the plan administrator as required under ERISA. See 29 U.S.C. §1133(a)(2).

Because the court concludes that the decision of the plan administrator to deny benefits was based upon insufficient and therefore unreliable information, the proper course of action is to remand this matter back to the defendant plan administrator for further proceedings. See Sheppard & Enoch Pratt Hosp., Inc., v. Travelers Ins. Co., 32 F.3d 120, 125 (4th Cir. 1994) ("If the court believe[s] the administrator lacked adequate evidence, the proper course [is] to remand to the trustees for a new determination ... not to bring additional evidence before the district court."). Because this court concludes that remand for further analysis and review is proper, it briefly considers the argument that regardless of the information provided, Dr. Rao was not an appropriate medical professional to conduct an independent review.

Nortel's own plan language is instructive on this issue. The Plan requires that claimants be under the regular care of a physician, and notes that "The Claims Administrator will be responsible for determining if your disability meets the definition of disability, and has the right to require that you be examined by a Physician of his or her choosing." The Plan defines "physician" as:

11

> a licensed practitioner of the healing arts acting within the scope of his or her practice. When a Total Disability is caused by any condition other than a medically determinable physical impairment, a Physician means a legally qualified Physician who specializes in the practice of psychiatric medicine or has, by reason of training or experience, a specialized competency in the field of psychiatric medicine sufficient to give the necessary evaluation and treatment of mental illness.

Id. If it was a settled matter that plaintiff's disability was not caused by a medically determinable physical impairment, certainly Dr. Rao, a Board-certified clinical neuropsychologist, would qualify as having specialized competency. That, however, is entirely the disputed issue. The Fourth Circuit has held that a plan administrator relied upon insufficient information when it relied solely upon the opinion of its medical director, a pediatrician with no specialized training in AIDS, in a denial of medical care benefits for AIDS. See Bernstein v. Capital Care, Inc., 70 F.3d 783, 790 (4th Cir. 1995). Even in Black & Decker, which struck down the treating physician rule, defendant relied upon the independent review of a neurologist to contradict the opinions of claimant's treating physicians. See Black & Decker at 827.

A medical doctor's review and opinion is not the only reliable evidence in a determination of employment disability. See, e.g., DiCamillo v. Liberty Life Assurance Co., 287 F.Supp.2d 616, 623 (D.Md. 2003) (noting that defendant relied upon non-medical video surveillance, as well as independent medical review, to support its decision denying benefits.) But when, as here, the plan administrator seeks to clarify whether a particular disability was caused by a physical disorder, consulting a medical professional with sufficient training and experience to give the necessary evaluation and treatment of physical illness would seem to be in order.

B. Attorney's fees

12

The court now turns to plaintiff's claim for attorney's fees, costs, and pre-judgment interest under 29 U.S.C. § 1132(g). The Fourth Circuit has adopted a five-factor test to determine when an award of attorney's fees is appropriate under ERISA. The five factors to be considered are:

> (1) degree of opposing parties' culpability or bad faith;
> (2) ability of opposing parties to satisfy an award of attorneys' fees;
> (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances;
> (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and
> (5) the relative merits of the parties' positions.

Quesinberry v. Life Ins. Co. of North America, 987 F.2d 1017, 1029 (4th Cir. 1993)(en banc). Of these factors, only the second is clearly met. Most significantly, there is insufficient evidence in the record before the court to support a conclusion that Nortel acted in bad faith. Nortel's EBC, from all accounts, acted in good faith when it requested an independent medical review of plaintiff's file, to help resolve the committee members' questions about plaintiff's disability and its origin. The actual selection of the reviewing physician was handled by Prudential, as the claims administrator for Nortel's plan. There is no indication that either Prudential or Nortel intentionally acted in bad faith in failing to provide all of plaintiff's medical files to Dr. Rao, nor is there any indication that Dr. Rao had any knowledge that the file was incomplete. Absent any evidence of bad faith, there is insufficient evidence to conclude that an award of attorney's fees are appropriate to deter defendants in similar circumstances, and plaintiff admits that the fourth factor, that of benefitting all beneficiaries of an ERISA plan, does not apply here. The final factor, concerning the relative merits of parties' positions, is also not supported by sufficient evidence one way or the other. Therefore, there is insufficient support to meet the Fourth Circuit's test for the award of attorney's fees under ERISA.

13

## CONCLUSION

For the reasons stated, plaintiff's motion for summary judgment is GRANTED IN PART insofar as this court determines that the decision of the defendant benefit plan administrator was improper as a matter of law, being not the product of a full and fair review. This matter is remanded back to the defendant plan administrator for independent medical review of claimant's file, as requested by the defendant's Employee Benefits Committee. Plaintiff's motion is DENIED in part as to plaintiff's claims for attorney's fees, costs and pre-judgment interest. Defendant's motion for summary judgment is DENIED. The clerk is directed to close this case.

SO ORDERED this the 29th day of November, 2004.

LOUISE W. FLANAGAN
Chief United States District Court Judge

14