IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Case No. 1:22-cv-00186-WO

| | |
|---|---|
| REBECCA PIFER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| LINCOLN LIFE ASSURANCE | ) |
| COMPANY OF BOSTON, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |
| | ) |
| | ) |

## DEFENDANT'S REPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### Introduction and Factual Background

This case is a dispute over long-term disability (LTD) benefits under a Group Policy of Insurance (Group Policy) issued by Lincoln Life Assurance Company of Boston n/k/a The Lincoln National Life Insurance Company (Lincoln), governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq*.

Plaintiff stopped working as a claims analyst, with BCBSNC, on 1/28/11 at age 50. She ceased working due to reported Ehlers-Danlos syndrome, osteoarthritis, cervical disorder, neuropathy, fibromyalgia and depression.

Lincoln approved Plaintiff's LTD benefits claim under the Own Occupation (OOC) definition of disability on 8/5/11. Lincoln paid OOC benefits throughout the 24-month OOC period (7/30/11 to 7/30/13). Lincoln approved benefits under the Any Occupation definition of disability on 12/9/12.

In early 2021, Lincoln obtained information indicating improvement in Plaintiff's condition. Lincoln ordered surveillance and asked Plaintiff to present for a Functional Capacity Evaluation (FCE). The results of the same, and a Transferable Skills Analysis (TSA), led Lincoln to conclude that Plaintiff could perform sedentary work, and that benefits were no longer payable.

Plaintiff, through counsel, appealed. She presented two conclusory Attending Physician Statements (APS) and associated medical records. Plaintiff refused Lincoln's request to attend an Independent Medical Examination (IME). Lincoln then obtained an Independent Medical Review (IMR) by a board certified physician who concluded that Plaintiff demonstrated sedentary capacity.

Lincoln provided the medical review, and an updated TSA, to Plaintiff for review and reply. She declined to provide additional information.

Under the Group Policy and ERISA, Plaintiff bore the burden of providing proof of continuing disability, but she refused multiple opportunities to do so. Lincoln reviewed Plaintiff's claim fully and fairly and reached the only conclusion supported by the evidence in the record. Lincoln, not Plaintiff, is entitled to judgment.

**Summary of Plaintiff's Argument**

2

Plaintiff avers four reasons the Court should deem Lincoln's claim determination an abuse of discretion: (1) she claims Lincoln incorrectly relied on the FCE administered by Anna Davidow, PT, on 4/21/21; (2) she claims LNL did not properly credit the content of Plaintiff's journal submitted on appeal; (3) she claims Lincoln's previous payment of benefits weighs against the reasonableness of the claim determination; and (4) she claims Lincoln's decision was not based on substantial evidence. Plaintiff invokes the factors articulated under <u>Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan</u>, 201 F.3d 335 (4th Cir. 2000) and applies the four assertions of error to the same. As explained below, none of these arguments have any merit.

<b>Lincoln's Responsive Argument</b>

Each of Plaintiff's four assertions is unavailing. Lincoln will address each argument, applying them to the <u>Booth</u> factors in the same order as they appear in Plaintiff's brief.

<b>A.      <u>Booth Factor 3: Adequacy of the Materials Considered and the Degree to Which They Support the Decision</u></b>

Plaintiff makes scant reference to the first <u>Booth</u> factor and ignores the second, beginning with the third factor: analysis of the adequacy of the materials considered and the degree to which those materials support the decision. While the administrative record consists of 1,301 pages, Plaintiff confines her argument to two items: the FCE (LIN000462-76) and a journal (LIN000243-303, 321-381) that she compiled during the

3

appeal period. Neither of Plaintiff's arguments persuade, particularly under the deferential standard at issue here.

      1.     <u>Plaintiff's attempt to undermine the decision on appeal through critique of the FCE is meritless.</u>

Plaintiff's argument is fundamentally flawed in that (1) it is in the first instance predicated on the conclusory and unsupported proposition that the FCE is unreliable; and (2) it misstates and exaggerates the extent to which Lincoln relied upon the FCE.

Plaintiff states:

> Although the therapist who conducted the evaluation opined that Ms. Pifer was able to work a "sedentary" occupation, the therapist's test results and clinical observations strongly support Ms. Pifer's claim that her illnesses prevent her from working. Lincoln's claim determination must be overturned because the FCE does not support Lincoln's claim decision.

(D.E. 21 at p. 2). Plaintiff presents a list characterizing various items of information from the FCE (which is substantially the same, with some additions, as the critique asserted in Plaintiff's appeal). (<u>Id.</u> at pp. 7-9; LIN000388-89). Plaintiff then concludes, "Thus, the test results and observations recorded by Ms. Davidow do not support her conclusion that Ms. Pifer was able to work a sedentary occupation." (D.E. 21 at p. 9).

But Plaintiff fails to point to any evidence that supports her assertion. Plaintiff did not come forward with an opinion from a medical professional or another physical therapist to critique the FCE or even to endorse in conclusory fashion Plaintiff's contention. Instead, all she offers now is that which she offered on appeal, her attorney's opinion of the FCE. An attorneys' argument simply is not evidence. <u>See</u>, <u>e.g.</u>, <u>Simmons v. Prudential Ins. Co.</u>

4

of Am., 564 F. Supp.2d 515, 525 (E.D.N.C. 2008) ("[a] lawyer's unsupported statements are not evidence"). Conversely, on 5/5/21, Lincoln reviewed the FCE with a consulting physician, Dr. Sharon Kanelos, who verified that the FCE was consistent and valid and that the conclusion that Pifer was capable of sedentary work was consistent with the available medical records. (LIN000009).

It is well settled under the deferential standard that it is the job of the administrator to weigh the evidence, and that a Court is not allowed to substitute its judgment for that of the administrator. Piepenhagen v. Old Dominion Freight Line, Inc., 395 Fed.Appx. 950, 954 (4th Cir. 2010) ("[u]nder [the] deferential standard of review, this court will not disturb the administrator or fiduciary's decision if it is reasonable, even if this Court—assuming, arguendo, that we had initially heard the case—would have come to a different conclusion"). In other words, the Court cannot second guess the administrator. Id. Here, Plaintiff asks the Court to impermissibly second guess Lincoln's determination, based solely on her counsel's unsupported, lay opinion regarding the FCE testing and what her counsel thinks it does or does not mean vis-à-vis Plaintiff's ability to do sedentary work. That would be second guessing layered upon second guessing and entirely inconsistent with the deferential standard. At most, Plaintiff's emphasis on the FCE and her critique of the same is the type of "pick[ing] endlessly at [the] other's evidence" described in Evans v Eaton Corp. Long Term Disability Plan, 514 F.3d 315, 325 (4th Cir. 2008). As the Fourth Circuit explained therein, in the case of such "picking", the abuse of discretion standard requires the Court to "stay its hand" and avoid "re-weighing the evidence for itself". Id.

5

Moreover, Plaintiff's critique of the FCE is simply off-base. The essence of Plaintiff's argument is that because she reported pain during the FCE, the examiner's conclusion that Plaintiff can perform sedentary work is irreconcilable with the data collected. But this critique ignores the fundamental fact that as a result of the data collected, which included the pain complaints recorded in the document, the examiner assigned Plaintiff significant restrictions and limitations resulting in the lowest recognized occupational capacity (sedentary) (20 C.F.R. § 404.1567(a)). It is nonsensical to suggest that when arriving at the conclusion that the Plaintiff is *limited* to sedentary capacity (in other words, incapable of performing above that capacity), the examiner failed to acknowledge or account for Plaintiff's reported pain.

A sedentary occupation is defined in the Fourth Circuit to require only "lifting, carrying, pushing, or pulling 10 pounds occasionally and that although it involve[s] mostly sitting, it could involve standing or walking for brief periods." See, e.g., Campbell v. Hartford Life & Acc. Ins. Co., 766 F. Supp. 2d 661, 674 n.8 (D.S.C. 2011) (quoting DuPerry v. Life Ins. Co. of N. Am., 632 F.3d 860, 863 (4th Cir. 2011)). The FCE data shows that Plaintiff was able to carry 10 pounds over 25 feet and to push 27 and pull 20 pounds. (LIN000467). Plaintiff reported that she could stand for 20 minutes at a time and walk for 30 minutes. (LIN000465).

Plaintiff argues that Ms. Davidow wrongly concluded that Plaintiff can sit frequently because the FCE did not report the length of time Plaintiff sat during the examination. (D.E. 21 at p. 9). However, the FCE does report Ms. Davidow's observations

6

and measurements concerning posture, neurological integrity, range of motion at the cervical, thoracic and lumbar levels and all extremities, strength, and (yes) pain. (LIN000465-67, 472-74). Moreover, the FCE contains data in which the examiner noted that pain was observed during standing and walking, but that no pain was observed during sitting. (LIN000469). Plaintiff offers no actual medical evidence or expert opinion to the effect that Ms. Davidow's conclusion as to Plaintiff's ability to sit was not sufficiently informed or supported by this data and her observations of Plaintiff while sitting during the more than two-hour examination. Once again, the critique, as lodged on appeal and on brief, is based entirely on the opinion of Plaintiff and her counsel.[1]

In sum, Plaintiff presents no evidence-based criticism of the FCE, let alone support for the notion that Lincoln's decision to credit it was arbitrary and capricious. In, fact, the only evidence in the record on the subject is that the only two physicians who actually reviewed the FCE in light of the record as a whole, Dr. Kanelos and Dr. Vincent, agreed with its conclusions. (LIN000009).

Of course, the FCE was only part of Lincoln's analysis for the initial claim determination. On appeal, and in acknowledgement of Plaintiff's objection to the FCE, Lincoln sought an IME, but Plaintiff refused to attend. (LIN000113, 115). Deprived of

---

[1] The remainder of Plaintiff's laundry list of criticisms is wholly irrelevant. For example, Plaintiff critiques that portion of the FCE which concerns testing the use of the hands. (D.E. 21 at p. 9). While these tests were clearly relevant to Ms. Davidow, from clinical perspective, they are not pertinent to the Fourth Circuit's definition of "sedentary". Moreover, the Fourth Circuit definition certainly does not require that a plaintiff be able to satisfy its criteria without pain.

7

that option, Lincoln obtained an IMR by Hunter Vincent, DO (Board Certified, Pain Management and Rehabilitation). (LIN00094-106).

Plaintiff seeks to advance the fiction that the FCE controlled Lincoln's determination on appeal. She alleges that "Dr. Vincent's report likewise does not constitute "substantial evidence" due to his reliance on the flawed FCE report in concluding that Ms. Pifer was able to work" and that "Lincoln abused its discretion by relying on the FCE and Dr. Vincent's report." (D.E. 21 at p. 20.) While Plaintiff argues that a reviewing physician should not rely on an FCE, she offers no evidence, or even argument, that Dr. Vincent did anything other than consider the FCE, as he would any other part of the record.[2] In order to discern Plaintiff's basis for jumping to the conclusion that Dr. Vincent simply rubber-stamped the FCE, one must look backward in the brief to the "Statement of Facts" wherein Plaintiff briefly summarizes Dr. Vincent's report stating:

> Lincoln hired Dr. Hunter Vincent, a board-certified specialist in rehabilitation and pain medicine, to review Ms. Pifer's claim. In his report dated January 24, 2022, Dr. Vincent acknowledged that Ms. Pifer suffers from Ehlers-Danlos syndrome, generalized osteoarthritis of the right shoulder and bilateral knees, cervical degenerative disc disease, and cervical canal stenosis. (LIN000075-87). He opined that Ms. Pifer has "advanced degenerative joint disease that warrants restrictions" (LIN000081) and that her chronic diseases were "anticipated to aggravate degeneration going forward." (LIN000083). However, Dr. Vincent concluded that Ms. Pifer's restrictions "can be accommodated in a full-time sedentary work setting." (LIN00081).

---

[2] It is likewise notable that Plaintiff fails to critique the IMR in any other respect, and for good reason. As explained in detail in Lincoln's Memorandum, the IMR reflects that Dr. Vincent provided an independent medical opinion based upon a full and fair review of the entire medical record. (D.E. 24 at pp. 11-13; see also, LIN000094-106). Any substantive challenge to the IMR would be unavailing, so Plaintiff has manufactured a red herring argument concerning the FCE.

> **He added that his "assessment is similar to the FCE results" and that he disagreed with Dr. Blank's assessment.** (<u>Id.</u> and LIN000086).

(D.E. 21 at p. 14-15). (emphasis added). The bolded sentence, above, is Plaintiff's *only* reference to the record offered in support of her assertion that the Court should second-guess Dr. Vincent's opinion due to his alleged "***reliance***" on the FCE. Plaintiff asks the Court to conclude that Lincoln abused its discretion by crediting the opinion of an acknowledged "specialist in the field of rehabilitation and pain medicine"[3] because he acknowledged a *similarity* between his assessment and the results of the FCE.

Plaintiff's argument, on its face, simply fails to provide any evidence that either (1) the FCE was not reliable; or (2) Dr. Vincent's opinions, and by extension Lincoln's determination on appeal, was predicated on the FCE. Moreover, Lincoln has discussed in detail the reasonableness of its consideration of Dr. Vincent's IMR opinion in its Memorandum in Support of Motion for Summary Judgment ("Lincoln's Memorandum"). (<u>See</u>, D.E. 24 at pp. 11-13).

Finally, Lincoln expressly offered Plaintiff the opportunity to respond to the IMR. (LIN000073-74). Had she sincerely believed that the IMR was fatally flawed due to some alleged over-reliance upon the FCE, she had the opportunity to so inform Lincoln and to either provide her own medical opinion, or suggest that Lincoln obtain a competing opinion. She elected to do nothing. (LIN000066). Plaintiff's attempt to taint Dr. Vincent,

---

[3] D.E. 21 at p. 14.

Case 1:22-cv-00186-WO-JLW   Document 32   Filed 11/30/22   Page 9 of 23

and Lincoln's decision on appeal by extension, with her unsubstantiated layperson's critique of the FCE is simply baseless and, moreover, illogical.[4]

2.    Plaintiff's argument concerning her journal is simply wrong.

Plaintiff next argues that Lincoln abused its discretion by allegedly ignoring her journal.  Plaintiff presents no evidence to support this contention.   She simply asserts that the journal is not mentioned in Lincoln's claim notes, and that it is not discussed in detail in the appeal uphold letter, and then leaps to the speculative inference that Lincoln neither considered the journal nor transmitted it to Dr. Vincent.

Plaintiff acknowledges, as she must, that Lincoln's appeal uphold letter of 2/17/22 makes specific reference to journal.  In fact, receipt of the journal is mentioned twice in that letter, and therein the author, Appeals Specialist Jerronda King, states that Lincoln "carefully considered **all** of the information submitted in support of the claim". (LIN000054, 57, 62) (emphasis added).  Accordingly, the uncontroverted evidence in the record is that Lincoln did, in fact, review and consider the journal.  Plaintiff's argument is simply unsupported by the facts.

Moreover, Plaintiff's argument necessarily fails because relevant law does not support her contention.  Plaintiff maintains that the absence of discussion of an item means

---

[4] Plaintiff relies heavily on <u>Stup v. Unum Life Insurance Company of America</u>, 390 F.3d 301 (4th Cir. 2004).  <u>Stup</u> is easily distinguished.  The upshot of *Stup* is that the independent medical reviewer essentially rubber stamped the findings of an FCE with no evidence of an independent medical analysis.  That is not the case here.  (D.E. 24 at pp. 11-13).  It is also notable that the Court in <u>Stup</u> was critical of the insurer for not seeking a medical analysis other than a paper review, whereas in this matter Lincoln sought an IME, but Plaintiff refused.

that it was not reviewed, and constitutes an *ipso facto* violation of 29 C.F.R § 2560.503-1(h)(2)(iv) and an abuse of discretion. In <u>Frankton v. Metropolitan Life Ins. Co.</u>, No. 1:08-cv-2209 (D.Md., Sept. 30, 2009),[5] the plaintiff made a similar argument, asserting that the insurer withheld an office visit note (authored by a treating physician) from an independent medical reviewer. The Court noted that the plaintiff did "not indicate what new information the 'office note' provide[d] or how its substance undermine[d] the reasonableness of MetLife's conclusion. Instead, Plaintiff points only to the failure to include it as evidence of an unreasonable process." <u>Id</u>. The Court stated that because the plaintiff did not "indicate what the note would have added to the record substantively", the failure to provide it to the independent medical reviewer "amount[ed] to a procedural irregularity." <u>Id</u>. The Court further held that "[s]uch a minor procedural violation is not sufficient to undermine the reasonableness of MetLife's conclusions." <u>Id.</u> (citing <u>Larson v. Old Dominion Freight Line, Inc.</u>, 277 Fed. Appx. 318, 321 (4th Cir. 2008). <u>See also</u>, <u>Lohr v. UnitedHealth Group, Inc.</u>, No. 1:11-cv-134 (M.D.N.C., Jan. 31, 2013) (consulting physician's opinion was "not invalid for failing to review the entire record" including "Plaintiff's submissions as well as those of her medical providers" where the plaintiff failed to identify "any specific aspect of the record which [consulting physician] failed to review" and the consulting physician's report

---

[5] All unpublished decisions are attached hereto as Exhibit 1.

"reveal[ed] a detailed analysis of [plaintiff's] medical files, as well as an independent inquiry" to plaintiff's treating physician).[6]

Additionally, implicit in Plaintiff's argument is the erroneous notion that Lincoln's reviewers should have specifically discussed each piece of evidence. But just as there is no "discrete burden of explanation" when an administrator chooses to credit reliable evidence that is contrary to a treating physician's opinion, Black and Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003), there can be no similar discrete burden to specifically discuss every piece of evidence in the record. See, e.g., Niebauer v. Crane & Co., Inc., 783 F.3d 914, 928 (1st Cir. 2015) (rejecting similar argument and holding that "the denial letter need not detail every bit of information in the record"); Spenrath v. Guardian Life Ins. Co., 564 Fed. App'x 93, 98 (5th Cir. 2014) ("[I]t would be impractical to require the plan administrator to mention each piece of evidence it considered in reaching its conclusion."); Teague v. Hartford Life and Accident Ins. Co., No. 1:05-cv-223 n.3 (W.D.N.C., Mar. 17, 2006) ("The court can find no requirement that a physician who reviews medical record[s] list each record reviewed in his opinion letter. In cases like this, where the administrative record exceeds 1000 pages, such a task would be daunting. The undersigned agrees with defendant's logic, which is that [the consulting physician's] listing

---

[6] As noted in Lincoln's Memorandum, Dr. Vincent attempted to conduct peer-to-peer discussions with four treating physicians, none of whom returned his calls. (LIN000104).

12

of the most pertinent documents to his review does not give rise to an inference that he ignored the rest.").

If there was some requirement to discuss every item submitted by a claimant, it would not only impair the discretion afforded to administrators under ERISA, but would also encourage claimants to pile irrelevant and unnecessary materials into the claim file with the hope that an administrator's failure to specifically discuss every piece of it might lead to reversal of an otherwise correct determination. That would run directly counter to ERISA's underlying interests. Bernstein v. CapitalCare, Inc., 70 F.3d 783, 788 (4th Cir. 1995) (administration of plans should be "left to plan fiduciaries, not federal courts," in furtherance of "ERISA's goals of expeditiously, efficiently, and inexpensively resolving coverage disputes").

B. **Booth Factor Four – Whether the Fiduciary's Interpretation was Consistent with other Provisions of the Plan and with Earlier Interpretations of the Plan**

With respect to the fourth Booth factor, Plaintiff argues that Lincoln's previous approval and payment of Plaintiff's claim demonstrates that the decision to terminate benefits was an abuse of discretion. None of the cases she cites support this assertion which, if accepted, would require the Court to disregard important plan terms. The one decision Plaintiff cites from within the Fourth Circuit illustrates just how far off base Plaintiff's argument is.

In Mills v. Union Sec. Ins. Co., 832 F.Supp.2d 587 (E.D.N.C. 2011), the plaintiff sought, and received, short-term disability benefits. The administrator determined that

13

plaintiff was "disabled" but denied his claim for long-term disability benefits citing a pre-existing condition exclusion.  On appeal, an independent medical reviewer determined that there was no pre-existing condition.  Immediately thereafter, the administrator amended its basis for denial, now claiming that plaintiff was not disabled.  All of this transpired over the course of ten months.  Id. at 592-94.  The record was indisputably clear that the administrator did not receive any new medical information supportive of its new position during this time.  The administrator did not argue a change in condition.  Instead, it simply reversed itself on the issue of impairment immediately upon realizing that its pre-existing condition defense was untenable.  On this basis, the Court found that the denial was an abuse of discretion.  Importantly, the Court's emphasis was not that the administrator reached different conclusions at different times.  Rather, it was that the administrator did not receive any new medical information in the interim.  This makes sense.  After all, the Group Policy at all times places the burden of proving continuing disability squarely on the claimant.  (LIN000407, 414, 424).

The cases cited do not support that a plan administrator is prohibited from terminating previously awarded benefits upon identification of evidence of change of condition; nor do they support that an administrator should be held up to special scrutiny any time it does so.  See Gable v. Hensley v. Int'l Business Machines Corp., No., 04-1162,04-1728, 123 Fed.Appx. 534, 538 (4th Cir. 2004) ("the fact that [Administrator] initially awarded benefits to [Plaintiff] does not mean that its subsequent termination of those benefits was the result of unprincipled reasoning … 'the decision to grant benefits

14

initially cannot create an obligation by which a plan fiduciary is estopped from later terminating benefits.'"); Harley v. Int'l Paper Co. Long Term Disability Plan, 586 F.Supp.2d 428, 442 (D.S.C. 2007) ("the fact that benefits were initially awarded does not mean that a termination of these benefits was an abuse of discretion" (citing, *inter alia*, Ellis v. Liberty Life Assurance Co. of Boston, 394 F.3d. 262, 273-75 (5th Cir. 2004) ("The District Court committed legal error when it concluded that, once the fiduciary approves entitlement to LTD benefits, subsequent termination of those benefits would have to be supported by substantial evidence of a *change in the employee's condition*") (emphasis in the original)); Nickola v. CNA Group Life Assurance Co., No. 03 C 8559 (N.D.Ill., Aug. 5, 2005)[7] ("[t]o be sure, and as commonsense would suggest, a decision that someone is entitled to long-term disability payments at one point in time does not forever estop the insurer from changing its mind. Fortunately, sick and disabled people often get better, and their ability to return to work is only one positive consequence of such a development") (internal citation omitted)).

With respect to the Group Policy in this case, the result of such an approach would run afoul of ERISA's fundamental requirement that the terms and conditions of a plan must be given effect, as the Group Policy expressly imposes upon the participant a burden of providing proof of disability and requires cessation of benefits when a participant fails to provide proof of continued disability. (LIN000407, 424).

---

[7] As cited by Plaintiff. (D.E. 21 at p. 22).

15

Moreover, the factual fallacy in Plaintiff's argument is that the record demonstrates that during the 2021 claim review, Lincoln received records from Plaintiff's treating physicians that strongly supported a change in condition. Those records showed that in Fall 2019 and in 2020 Plaintiff (1) had received physical therapy and reported a decrease in pain level from 6 to 1 over one month; (2) reported taking her dog on two-mile walks; (3) was going to the gym, gardening and landscaping; and (4) had recently travelled. (LIN000140-43,147-57). All of these indicated substantially decreased pain and increased activity.

Of course, Lincoln did not discontinue benefits simply on the basis of those records. Rather, the information in those records prompted Lincoln to conduct further investigation. Lincoln thereafter obtained surveillance footage that (albeit briefly) clearly showed Plaintiff, on 2/23/21, walking with a normal gait and pace, while carrying and placing items in a car and then entering the car, all without any visible indication of associated pain or difficulty. (LIN000484-85).[8] This was notably at odds with Plaintiff's telephone conversation of 2/17/21 with Lincoln's Lisa Porriello, in which Plaintiff stated that she required a cane in order to walk.[9] (LIN000010). Upon receiving the same, Lincoln ordered the 4/21/21 FCE by which a licensed physical therapist advised Lincoln that Plaintiff was capable of sedentary work. Only after reviewing all of this information collectively did Lincoln make the decision to discontinue benefits.

---

[8] The footage may be viewed via hyperlink found at LIN000484.
[9] Plaintiff also told Ms. Porriello that she could not garden or travel. (LI000010).

16

The foregoing was, of course, only the initial determination. Lincoln obtained even more medical evidence during the administrative appeal (and would have obtained an IME, had Plaintiff not refused). The foregoing demonstrates that Lincoln's conduct is simply inapposite to circumstances presented in <u>Mills</u>.

## C. <u>Booth Factor Five – Whether the Decision Making Process was Reasoned and Principled</u>

Plaintiff does not offer an additional argument to advance her cause on this factor. She simply states that her preceding arguments demonstrate that Lincoln's decision making process was flawed. Lincoln has articulated its decision making process in detail in its Memorandum, and will not belabor here. It is not Lincoln's burden to prove that its decision was reasonable; rather it is Plaintiff's burden to prove that it was not. The sum total of Plaintiff's argument is that Lincoln's decision making process was not reasonable because (1) Plaintiff does not believe that the April 2021 FCE was reliable, and she would proffer the fiction that Dr. Vincent's IMR opinion was wholly reliant upon it (which it was not); (2) Lincoln did not review Plaintiff's journal, which it did; and (3) Lincoln made its decision without any information supportive of a changed medical condition, which the record objectively demonstrates to be untrue. It is a well-worn admonition in ERISA cases that an administrator may not properly make a decision by cherry-picking the record. <u>Myers v. Hercules, Inc.</u>, 253 F.3d 761 (4th Cir. 2001). Plaintiff's motion is clearly nothing more than an exercise in cherry picking, coupled with a healthy dose of assumption. While

17

a corollary rule may not exist concerning the Plaintiff, logic certainly dictates that she cannot meet her burden of proof by doing so.

### D. Booth Factor Eight – Conflict of Interest

Plaintiff offers nothing in support of the Court finding that the decision-making process was tainted by a conflict of interest, and her conclusory assertion on the point obviously fails. Conversely, Lincoln has demonstrated in its Memorandum that this is not a case where its so-called structural conflict is an important factor. (D.E. 24 at pp. 25-26). As noted therein, the Supreme Court holds that the existence of such a conflict does not alter ERISA's deferential standard. Rather, the conflict factor "should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy." See, Metropolitan Life Insurance Company v. Glenn, 554 U.S. 105, 117 (2008); Champion v. Black and Decker, Inc., 550 F.3d 353, 362 (4th Cir. 2008).

The record demonstrates Lincoln's "active steps" to reduce bias and promote accuracy—including its use of independent third party medical professionals at the claim and appeal levels and imposing a separation between Lincoln and the consulting medical professionals by enabling a third party to independently retain consultants. In addition, Lincoln has further documented its procedural safeguards in the Declaration of Jordan Bennan, filed as Exhibit A to the Memorandum. [D.E. 24-1] See, e.g., Fine v. Sun Life Assurance Co., 97 F.Supp.3d 799, 812-13 (E.D.Va. 2015); Patel v. United Omaha Life Ins.

18

Co., No. DKC 12-0880 (D.Md., June 21, 2012) (citing Denmark v Liberty Life Assurance Co., 566 F.3d 1, 10 (1st Cir. 2009)).

Moreover, Lincoln would have been within its rights under the Group Policy to close Plaintiff's administrative appeal and affirm the discontinuation of benefits when Plaintiff refused Lincoln's reasonable request for an IME. (LIN000424, 430). Instead, Lincoln attempted to accommodate Plaintiff by agreeing to assign a physician who was acceptable to her. (LIN000005). When Plaintiff refused to participate in the selection of a physician (LIN000113), Lincoln elected to continue reviewing her claim by obtaining Dr. Vincent's IMR. (LIN000115).

There is nothing in the record indicating that bias improperly influenced Lincoln's determination. To the contrary, the record reflects that the importance of any structural conflict of interest reduced "to the vanishing point".

### Conclusion

Based on the foregoing, Plaintiff has failed to prove that Lincoln's decision was an abuse of discretion, and her Motion for Summary Judgment should be denied.

Respectfully submitted this the 30th day of November, 2022.

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.

/s/ *Vanessa N. Garrido*

Vanessa N. Garrido (N.C. Bar No. 53470)
8529 Six Forks Road
Forum IV, Suite 600
Raleigh, North Carolina 27615
Telephone: 919-789-3194
Facsimile: 919-783-9412

19

Email: vanessa.garrido@ogletree.com

and

OGLETREE, DEAKINS, NASH,
 SMOAK & STEWART, P.C.
/s/ *W. Kyle Dillard*
W. Kyle Dillard (S.C. State Bar # 69408) *by Special Appearance*
300 North Main Street, Suite 500
Greenville, SC 29601
Telephone: 864-240-8317
Facsimile: 864-235-8806
kyle.dillard@ogletree.com
*Attorneys for Defendant*

20

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Case No. 1:22-cv-00186-WO-JLW

| | |
|---|---|
| REBECCA PIFER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| LINCOLN LIFE ASSURANCE | ) |
| COMPANY OF BOSTON, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |
| | ) |
| | ) |

## CERTIFICATE OF WORD COUNT

The undersigned certifies that Defendant's Memorandum in Support of Motion for Summary Judgment complies with LR 7.3(d)(1) concerning Limitations on Length of Briefs. As calculated by the word count feature on the word processing software used to prepare Defendant's Memorandum, the document (exclusive of the case caption and counsel's signature block) consists of 4,743 words.

Respectfully submitted this the 30th day of November, 2022.

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.

/s/ *Vanessa N. Garrido*
Vanessa N. Garrido (N.C. Bar No. 53470)
8529 Six Forks Road
Forum IV, Suite 600
Raleigh, North Carolina 27615
Telephone: 919-789-3194

21

Facsimile: 919-783-9412
Email: vanessa.garrido@ogletree.com

and

OGLETREE, DEAKINS, NASH,
 SMOAK & STEWART, P.C.
/s/  *W. Kyle Dillard*
W. Kyle Dillard  (S.C. State Bar # 69408) *by*
*Special Appearance*
300 North Main Street, Suite 500
Greenville, SC 29601
Telephone: 864-240-8317
Facsimile: 864-235-8806
kyle.dillard@ogletree.com
*Attorneys for Defendant*

22

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this date a copy of the foregoing DEFENDANT'S REPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Andrew Whiteman
Whiteman Law Firm
5400 Glenwood Avenue, Suite 225
Raleigh, NC 27612
aow@whiteman-law.com

Respectfully submitted this the 30th day of November, 2022.

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.

/s/ *Vanessa N. Garrido*
Vanessa N. Garrido (N.C. Bar No. 53470)
8529 Six Forks Road
Forum IV, Suite 600
Raleigh, North Carolina 27615
Telephone: 919-789-3194
Facsimile: 919-783-9412
Email: vanessa.garrido@ogletree.com

and

/s/ *W. Kyle Dillard*
W. Kyle Dillard (S.C. State Bar # 69408) *by Special Appearance*
300 North Main Street, Suite 500
Greenville, SC 29601
Telephone: 864-240-8317
Facsimile: 864-235-8806
kyle.dillard@ogletree.com
*Attorneys for Defendant*

23