IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Case No. 1:22-cv-00186-WO-JLW

| | |
|---|---|
| REBECCA PIFER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| LINCOLN LIFE ASSURANCE | ) |
| COMPANY OF BOSTON, | ) |
| | ) |
| Defendant. | ) |

## DEFENDANT'S REPLY IN SUPPORT OF MOTION
## FOR SUMMARY JUDGMENT

In response to Lincoln's Motion for Summary Judgment and supporting Memorandum ("Memorandum"), Plaintiff lodges critiques of five arguments she identifies as appearing therein. She then restates the <u>Booth</u> analysis asserted in her Memorandum in Support of Summary Judgment ("Plaintiff's Memorandum"). None of her critiques have merit.

**A.  Plaintiff's critiques of five arguments presented by Lincoln are meritless.**

### 1.  Plaintiff's first critique mischaracterizes Lincoln's position.

Plaintiff begins by asserting that "Lincoln's principal argument is that Ms. Pifer's proof was limited to 'her own subjective self-assessment'". (D.E. 28, p. 2). She then states that the argument is "easily refuted" and claims that medical records from 8 visits over the

1

course of 13 months, the FCE, and imaging studies, "contain 'objective evidence' that supports Ms. Pifer's claim." Plaintiff is wrong and once again misses the point.

The evidence Plaintiff points to shows that she complained of pain during those 8 visits and the FCE and that her doctors diagnosed certain conditions. But Lincoln never disputed that, and that is not the issue. Lincoln at all times recognized that Plaintiff is subject to restrictions and limitations that limit her to sedentary capacity, the lowest classification. Nothing in the records Plaintiff cites to provides any "objective evidence" to refute that conclusion, much less show that it was arbitrary and capricious. Nor does Plaintiff's summary even attempt to explain how the content of those records demonstrates that Plaintiff is subject to restrictions and limitations precluding sedentary work.

Moreover, Lincoln's determination was based upon the whole record, including each of the items cited in Plaintiff's Response (D.E. 28, pp. 3-7), as well as records notably omitted from Plaintiff's recitation. (*See*, D.E. 24, p. 5) (citing LIN000140-57).

As Dr. Hunter Vincent acknowledged in his independent medical review ("IMR"), the record provides evidence of medical conditions from which Plaintiff suffers, as well as evidence of resultant pain. But evidence of injury or illness, or of pain, is not *ipso facto* evidence of disability[1], and the medical record does not provide substantial evidence,

---

[1] See, e.g., Speciale v. Blue Cross and Blue Shield Ass'n, 538 F.3d 615, 622 (7th Cir. 2008) (recognizing the distinction between evidence of pain versus evidence of resultant impairment); Boardman v. Prudential Ins. Co. of America, 337 F.3d 9 (1st Cir. 2003) (affirming denial of disability benefits where, although plaintiff's medical evidence proved the existence of a medical condition, benefits were denied on the grounds that plaintiff failed to provide evidence to establish resultant restrictions and limitations); Van Valen v. Employee Welfare Benefits Committee Northrop-Grumman Corp., 741 F.Supp.2d 756, 763 (W.D.Va. 2010) (recognizing distinction between evidence of medical condition and evidence of impairment); Casey v. Hartford Life and Accident Insurance Company, No. 2:09-cv-00313-CWH (D.S.C., Sept. 7, 2010) (failure of the Plaintiff to introduce objective evidence that her illness impaired her ability to perform her occupational duties, coupled with the independent peer-reviewer's conclusion that the Plaintiff

generated by any of Plaintiff's physicians, supporting that the identified conditions and symptomology rendered her incapable of sedentary work. In other words, the objective evidence presented is not proof of impairment from sedentary work, and Plaintiff cannot meet her burden of proof only with subjective complaints.

### 2. Plaintiff's attempt to assign substantial weight to the opinions of her treating physicians is unavailing.

Plaintiff's next argument is essentially a rehashing of the first. Plaintiff concludes that "Lincoln's argument that the opinions of Ms. Pifer's treating physicians 'were not worthy of substantial weight' is unfounded." (D.E. 28, p. 7). In support, Plaintiff recites the conclusions from Drs. Belhorn and Silver's attending physician statements ("APS") and two notes from Dr. Kallianos. Id. at 8. But instead of demonstrating that those physicians' opinions actually were worthy of substantial weight, Plaintiff simply notes that Lincoln previously paid benefits after receipt of similar forms.

But as Lincoln has already explained, Lincoln's review included the APS's *and* medical records. Id. at 8. While the older APS's may have been similar to 2021, the medical record was substantially different because it demonstrated evidence of improvement. (*See*, D.E. 24, p. 5) (citing LIN000140-57). Accordingly, unlike previous years, Lincoln conducted additional investigation as detailed in Lincoln's Memorandum. (D.E. 24, pp. 6-9). It is in the context of and with reference to the information gathered in

---

was not disabled, provided substantial evidence to support the Defendant's decision to deny disability benefits). Casey is attached hereto as Exhibit A.

the course of that investigation that Lincoln weighed the 2021 APS forms. (D.E. 24, p. 19).

Next, Plaintiff argues that Lincoln is precluded from asserting that the opinions of the treating physicians were "conclusory", that those physicians did not review the entire record, or that the opinions were of "little weight", because it did not specifically give notice of those arguments during the administrative appeal. (D.E. 28, p. 9-10). Plaintiff misapprehends the argument. Lincoln fully explained the reasoning for its claim determination in the 2/17/22 appeal uphold. (LIN000053-64). Part of that reasoning was its medical review, informed by the IMR, whereby Lincoln concluded that the medical evidence did not support that she was unable to perform sedentary work. That analysis and the information considered is explained in detail. (LIN000094-105).

The *arguments* presented on brief are not a recitation of the reasons for the decision. Instead they explain why the decision was reasonable and supported by substantial evidence. To accept Plaintiff's argument would require claim administrators to provide full blown legal analysis to claimants, including an explanation of the precise weight given to each piece of evidence. This would be directly contrary to the Supreme Court's admonition in <u>Nord</u> that there is "no discrete burden of explanation" when an administrator relies on substantial evidence that is contrary to a treating physician's opinion. <u>Black and Decker Disability Plan v. Nord</u>, 538 U.S. 822, 834 (2003). It would also run contrary to the DOL's mandate that the administrator set forth the decision "in a manner calculated to be understood by the claimant." 29 C.F.R. § 2560.503-1(j).

4

Fourth Circuit precedent supports Lincoln's position. In <u>Brogan v. Holland</u>, 105 F.3d 158 (4th Cir. 1997), the Court reviewed a denial of benefits under a plan that provided benefits in the event of disability caused by a mining accident. The plan trustees denied the claim via letter dated March 7, 1988, "finding that [plaintiff] did not establish that he had been 'involved in a mine accident'". <u>Id.</u> at 160. However, the plan presented, and the Court considered, a much more detailed explanation of the analysis performed and evidence considered in reaching the simple conclusion that the plaintiff did not prove that he was involved in a mine accident. The Court determined that the trustees' letter to the plaintiff satisfied the regulatory requirement that the participant receive "written notice setting forth in a manner calculated to be understood by the claimant … [t]he specific reason or reasons for the denial". <u>Id.</u> at 165 (citing 29 C.F.R. § 2560.503-1 (1996)). Clearly, Lincoln's appeal uphold letter to Plaintiff is vastly more informative than the succinct statement contained in the determination at issue in <u>Brogan,</u> and there is no room for doubt that it is compliant with ERISA's notice requirement.

The Court also noted that even where there is a regulatory violation, no substantive remedy is appropriate as long as the plaintiff "understood the facts and circumstances confronting" him. <u>Id.</u> at 166. Here, Plaintiff certainly understood the issues confronting her as Lincoln had specifically instructed her to submit any and all information that would support her claim, as well as any information she wanted to submit in response to Dr. Vincent's report. (LIN000456 and LIN000073).

5

Plaintiff's citation to <u>Thompson v. Life Insurance Co. of North America</u>, 30 Fed. Appx. 160 (4th Cir. 2002) underscores the difference between that which is prohibited and that which is applicable to this matter.  In <u>Thompson</u>, the insurer denied a claim under a pre-existing condition limitation, affirmed that denial on appeal, and then asserted the limitation in its Answer.  Only at summary judgment did the insurer assert that the denial was based on the "active service" rule.  The grounds for denial completely changed.  In this case, the grounds for denial remain consistent.  There is naturally some difference between the manner in which the reasoning is defended in a court proceeding versus how it is explained in a determination letter, but such does not constitute a change of position.

   3.   <u>Plaintiff's comments regarding her medical improvement fail to demonstrate abuse of discretion by Lincoln.</u>

Plaintiff admits Lincoln correctly identified improvement in her medical condition based on Dr. Belhorn's 2/21/21 office note (D.E. 28, p. 10)  but overtly neglects the additional evidence of medical improvement identified by Lincoln (which is not limited to her right shoulder and demonstrates substantially diminished pain). (D.E. 24, p. 5).  While ignoring medical evidence generated by her own providers based on her own reports, Plaintiff attempts to dismiss as inconsequential her admitted improvement stating, without citation to evidence, that her improvement was temporary and insignificant.  (D.E. 28 at p. 10).  Plaintiff bears the burden of proof, yet she neglects to offer even one citation to the record to support that assertion.

Moreover, her argument simply misapprehends the issue.  Lincoln has cited medical records that demonstrate marked improvement (during at least August 2019 into February

2021) as the impetus for Lincoln's decision to more deeply investigate Plaintiff's condition during the 2021 renewal evaluation.[2] But Lincoln did not decide to discontinue benefits, initially or on appeal, simply upon internal review of Plaintiff's medical records. That review was the beginning of an investigative process that culminated in Dr. Vincent's IMR. Dr. Vincent reviewed the entire record and concluded that, while Plaintiff suffers from Ehlers-Danlos syndrome and co-morbidities resulting in significant restrictions and limitations, she nevertheless retains sedentary capacity. His review included numerous records generated after 2/21/21. (LIN000096-00).

If Plaintiff's position is that Lincoln abused its discretion because Dr. Vincent did not fully and fairly review and consider those more recent records, then she could state as much. She could identify the records to which she refers and the important content thereof, and explain how and why Dr. Vincent's opinions demonstrate a failure to give due consideration to the same. She fails to do so. She likewise could have and should have provided those arguments to Lincoln when she was given the opportunity to respond to Dr. Vincent's IMR, in order to place Lincoln on notice of her position, affording it an opportunity to consider her concerns before making a determination, and to preserve her position for purposes of this case, but she affirmatively declined to do so. (LIN000066, 73-74).

---

[2] Despite contrary arguments presented in Plaintiff's Memorandum (D.E. 21, pp. 22-23), she now acknowledges the validity of Lincoln's position.

7

Plaintiff's argument here does nothing to advance her case. It only serves to highlight Plaintiff's failure to persuasively question the reasonableness of Lincoln's decision to conduct a more fulsome investigation in 2021 before renewing benefits.

### 4. Plaintiff objectively refused the IME.

Plaintiff cherry picks the record, attempting to avoid the reality that she refused an IME, and violated the terms of the Group Policy.[3] As explained in Lincoln's Memorandum, an IME was scheduled with Alvin K. Antony, M.D., for 1/4/22, and Lincoln notified Plaintiff of the same by letter dated 12/21/21. (LIN000124). On 12/22/21, Plaintiff's counsel wrote "Ms. Pifer **will not** undergo an examination by Dr. Antony and instructed Lincoln to cancel the appointment. (LIN000115, emphasis added). Plaintiff unambiguously refused.

Plaintiff attempts to excuse her conduct by inaccurately stating that "Lincoln responded that it was unable to provide an independent physician to evaluate Ms. Pifer." (D.E. 28 at p. 11) (citing LIN000005, Phone Note 98). This assertion does not fairly represent the record. The phone note, entered by Jerronda King, reads in pertinent part as follows:

> ASKED ATTY HOW HE WANTED ARC TO PROCEED, WOULD HIS OFFICE BE SCHEDULING HER FOR AN IME WITH SOMEONE SHE PREFERS. ADVISED HIS LETTER NOTED THE IME WOULD NEED TO BE WITH SOMEONE NOT WORKING FOR AN INSURANCE COMPANY. ADVISED ARC IS NOT SURE HOW TO GET AROUND THAT AS THE VENDORS THAT WE USE WOULD BE ASSOCIATED WITH LFG AND NOT TOTALLY INDEPENDENT.

---

[3] LIN000424,430.

(LIN00005).   Ms. King's point was clear:   As explained in the Bennan Declaration, Lincoln obtains IME's through referrals by outside medical vendors.  (D.E. 24-1, pp. 3-4). Since those vendors provide services to insurance companies, Ms. King was at a loss as to how to comply with Plaintiff's unreasonable condition.  As the portion of the note cited by Plaintiff explains, Ms. King did so by suggesting that Plaintiff's counsel might select a provider that she prefers to conduct the IME.

Plaintiff also ignores the correspondence that followed.  Ms. King wrote Plaintiff the same day, confirming cancellation of the appointment per Plaintiff's instructions and stating, "Per our conversation on today, you will be reaching out to Ms. Pifer and we will wait further correspondence from your office regarding next actions on the appeal." (LIN000118).  Lincoln next received counsel's 1/28/21 letter stating:

> Ms. Pifer does not know of any provider who can perform an independent medical evaluation for Lincoln. She would like to have Lincoln proceed with its consideration of her appeal.

(LIN000113).

Lincoln has a contractual right under the Group Policy to require Plaintiff to present for an IME, and there is no language in the Group Policy that affords Plaintiff any say in the selection of the provider.   Despite her obligations under the Group Policy, Plaintiff flatly refused to present for the scheduled IME.   That refusal, alone, was grounds to terminate benefits.  (LIN000424).  However, Lincoln attempted to accommodate Plaintiff and even invited Plaintiff to select a provider.  Under any objectively reasonable measure, it is clear that Plaintiff refused the IME.  Regardless, Plaintiff fails to explain how her own

unwillingness to undergo an IME somehow renders Lincoln's decision arbitrary and capricious.

### 5. The surveillance footage was afforded appropriate weight.

The purpose of Plaintiff's comments regarding the weight Lincoln afforded to the surveillance footage is unclear, but Lincoln takes Plaintiff's meaning to be that Lincoln did not afford it substantial weight, Plaintiff does not think it is meaningful, and it should not be persuasive to the Court.

In reply, Lincoln offers that it is necessary to put the surveillance, and its value to the record, into proper context. The surveillance was the first step in an investigation following Lincoln's receipt of documentary evidence of medical improvement. After Lincoln reviewed the surveillance, the investigation continued.

The surveillance is just one small piece of the puzzle, but it deserves some weight, particularly because of the inconsistency between Plaintiff's observed activity, and the limitations she reported. Plaintiff was admittedly recorded "walking in and out of view, walking to the driver's side of the vehicle, placing the items she was carrying in the vehicle, entering the vehicle, and departing" on 2/23/21. (D.E. 28 at p. 11). Less than a week earlier, on 2/17/21, Plaintiff told Lisa Porriello, of Lincoln, that she needed a cane to walk. (LIN000010). Likewise, on 4/21/21, Plaintiff presented for the FCE walking slowly and methodically with a cane. (LIN000465). That description is in striking contrast to the unassisted and, by all appearances, normal gait displayed in the footage.

10

Plaintiff contends the footage is not "determinative of whether she can work a full-time job." (D.E. 28 at p. 11). Lincoln has never taken the position that it is, and it did not render a decision after watching the video. No piece of evidence can be weighed in a vacuum, but when the video evidence is considered in conjunction with the record as a whole[4], it supports that Lincoln's decision-making process led to a sound conclusion.

### B.      Plaintiff's <u>Booth</u> Factor Analysis

Plaintiff offers a <u>Booth</u> factor discussion which she considers sufficient to support denial of Lincoln's Motion. With one exception, the arguments presented by Plaintiff simply repeat those in Plaintiff's Memorandum. (D.E. 21, pp. 18-24). Lincoln has fully addressed all of those arguments in its Response. (D.E. 32, pp. 3-19). For the sake of brevity and respect for the Court's time, Lincoln expressly incorporates those arguments herein.

The one exception is that Plaintiff argues that Lincoln should not have relied on the IMR because Dr. Vincent did not explain his basis for "discounting" Plaintiff's subjective complaints of pain and fatigue or the opinions of her physicians. (D.E. 28 at p. 17).

Plaintiff's argument once again runs counter to the Supreme Court's rejection in <u>Nord</u> of a "discrete burden of explanation". Moreover, her argument is predicated on a false premise. There is no evidence in the record that Dr. Vincent "discounted" either, and Plaintiff fails to identify a single passage from the IMR to suggest otherwise. A plain

---

[4] It bears repeating that Dr. Vincent is the only physician whose opinion in this case is based on a complete review of the record.

reading of the IMR demonstrates unequivocally that Dr. Vincent strongly credited the medical records generated by Plaintiff's treating physicians and her subjective reports of pain and fatigue.

Dr. Vincent carefully reviewed the entire medical record and made specific reference to numerous contemporaneous medical records, the various APS's, the surveillance report, and the FCE. (LIN000094-99). He agreed that Plaintiff has legitimate restrictions and limitations based on Ehlers-Danlos syndrome and co-morbidities, and that based on these conditions and ongoing pain, Plaintiff is functionally impaired and requires significant restrictions and limitations. (LIN000102-03). He did not discount anything. Dr. Vincent simply concluded that based on the medical evidence, while Plaintiff is impaired, she is not unable to perform a sedentary occupation. (LIN000100).

Additionally, Dr. Vincent attempted to speak Drs. Belhorn, Kallianos, Silver and Ransone, thereby offering Plaintiff's physicians input into his conclusion, but none of them responded. (LIN000104). Most importantly, Lincoln sent the IMR to Plaintiff and requested her response. Had Plaintiff believed that Dr. Vincent's reasoning was inadequately expressed, she should have said so, while Lincoln was in position to act on her concerns. She declined. Plaintiff's assertion is disingenuous at this stage, and the suggestion that she was not sufficiently informed of the basis for Lincoln's decision is simply not credible. (LIN00066, 73-74).[5]

---

[5] <u>Gorksi v ITT Long Term Disability Plan for Salaried Employees</u>, 314 Fed. Appx. 540 (4th Cir. 2008), cited by Plaintiff, is easily distinguishable and not instructive. The consulting physician therein concluded, without reasoning, that plaintiff did not have any impairments, and the decision was reviewed under the obsolete, pre-<u>Glenn</u> modified abuse of discretion standard.

## Conclusion

Based on the foregoing, Plaintiff's arguments in response to Lincoln's Motion are meritless, and Lincoln is entitled to summary judgment.

Respectfully submitted this the 2nd day of December, 2022.

OGLETREE, DEAKINS, NASH,
 SMOAK & STEWART, P.C.

/s/ *Vanessa N. Garrido*
Vanessa N. Garrido (N.C. Bar No. 53470)
8529 Six Forks Road
Forum IV, Suite 600
Raleigh, North Carolina 27615
Telephone: 919-789-3194
Facsimile: 919-783-9412
Email: vanessa.garrido@ogletree.com

and

OGLETREE, DEAKINS, NASH,
 SMOAK & STEWART, P.C.
/s/ *W. Kyle Dillard*
W. Kyle Dillard (S.C. State Bar # 69408) *by Special Appearance*
300 North Main Street, Suite 500
Greenville, SC 29601
Telephone: 864-240-8317
Facsimile: 864-235-8806
kyle.dillard@ogletree.com
*Attorneys for Defendant*

13

| | |
|---|---|
| REBECCA PIFER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| LINCOLN LIFE ASSURANCE | ) |
| COMPANY OF BOSTON, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |
| | ) |
| | ) |

**CERTIFICATE OF WORD COUNT**

The undersigned certifies that Defendant's Reply in Support of Motion for Summary Judgment complies with LR 7.3(d)(1) concerning Limitations on Length of Briefs. As calculated by the word count feature on the word processing software used to prepare Defendant's Memorandum, the document (exclusive of the case caption and counsel's signature block) consists of 3,060 words.

Respectfully submitted this the 2nd day of December, 2022.

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.

/s/ *Vanessa N. Garrido*
Vanessa N. Garrido (N.C. Bar No. 53470)
8529 Six Forks Road
Forum IV, Suite 600
Raleigh, North Carolina 27615
Telephone: 919-789-3194

14

Facsimile: 919-783-9412
Email: vanessa.garrido@ogletree.com

and

OGLETREE, DEAKINS, NASH,
 SMOAK & STEWART, P.C.
/s/  *W. Kyle Dillard*
W. Kyle Dillard (S.C. State Bar # 69408) *by*
*Special Appearance*
300 North Main Street, Suite 500
Greenville, SC 29601
Telephone: 864-240-8317
Facsimile: 864-235-8806
kyle.dillard@ogletree.com
*Attorneys for Defendant*

15

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this date a copy of the foregoing DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Andrew Whiteman
Whiteman Law Firm
5400 Glenwood Avenue, Suite 225
Raleigh, NC 27612
aow@whiteman-law.com

Respectfully submitted this the 2nd day of December, 2022.

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.

/s/ *Vanessa N. Garrido*
Vanessa N. Garrido (N.C. Bar No. 53470)
8529 Six Forks Road
Forum IV, Suite 600
Raleigh, North Carolina 27615
Telephone: 919-789-3194
Facsimile: 919-783-9412
Email: vanessa.garrido@ogletree.com

and

/s/ *W. Kyle Dillard*
W. Kyle Dillard (S.C. State Bar # 69408) *by Special Appearance*
300 North Main Street, Suite 500
Greenville, SC 29601
Telephone: 864-240-8317
Facsimile: 864-235-8806
kyle.dillard@ogletree.com
*Attorneys for Defendant*

16