Rebecca Pifer,                              )
                                           )
        Plaintiff,                         )
                                           )
                v.                         )
                                           )
Lincoln Life Assurance Company of          )
Boston,                                    )
                                           )
        Defendant.                         )
                                           )

Plaintiff's Reply to Lincoln's Response to Her Motion for Summary Judgment

This is Rebecca Pifer's reply to Lincoln's response to her motion for summary judgment.

1.    Lincoln's Arguments Concerning the FCE

Lincoln offered three arguments concerning the FCE. It characterized Ms. Pifer's criticism of the physical therapist's conclusion as "second guessing" based on "her counsel's unsupported, lay opinion." (D 32, p. 5). Second, Lincoln faulted Ms. Pifer for not submitting a physician's rebuttal to the FCE report. (D 32, p. 7). Finally, it argued that Dr. Vincent reached his conclusions without relying on the FCE; instead, he merely noted that his conclusions were "similar to the FCE results." (D 32, p. 9). Those arguments are easily rebutted.

Ms. Pifer's concern about Lincoln's reliance on the FCE is not based on her counsel's "lay opinion," but rather is grounded in the case law. *See* the cases cited on pages 18 and 19 of Ms. Pifer's opening brief. (D 21, pp. 18-19). Courts are skeptical of

FCE reports when there is ambiguity in the test results, a mismatch between the therapist's examination findings and their opinions, or concern about whether testing lasting only two to three hours can accurately predict the patient's ability to work a full-time job.

In most of those cases, the plaintiff's appeal did not include a physician's rebuttal of the FCE. In *Stup v. UNUM Life Ins. Co. of Am.*, 390 F.3d 301, 305-06 (4th Cir. 2004), the supportive letter submitted by Ms. Stup's treating physician did not mention the FCE. In *Krysztofiak v. Boston Mut. Life Ins. Co.*, 424 F. Supp. 3d 446, 450 (D. Md. 2019), there was no evidence that the treating physicians commented on the FCE. Likewise, *see Lamanna v. Special Agents Mut. Benefits Ass'n*, 546 F. Supp. 2d 261, 280–81 (W.D. Pa. 2008); *Robertson v. Standard Ins. Co.*, 139 F. Supp. 3d 1190, 1197–98 (D. Or. 2015), *order clarified,* No. 3:14-CV-01572-HZ, 2015 WL 13682034 (D. Or. Nov. 13, 2015); *Perryman v. Provident Life & Accident Ins. Co.*, 690 F. Supp. 2d 917 (D. Ariz. 2010); *Harvey v. Berryhill*, No. 1:16CV574, 2017 WL 943946, at *4 (M.D.N.C. Mar. 9, 2017). In two of the cases, the treating physician stated expressly that they disagreed with the results of the FCE. *See Michael v. Am. Int'l Grp., Inc.*, No. 4:05CV02400 ERW, 2008 WL 4279582, at *16 (E.D. Mo. Sept. 15, 2008) and *Campbell v. Aetna Life Ins. Co.*, No. 04-CV-698 TCK(FHM), 2006 WL 8457269, at *2 (N.D. Okla. Jan. 11, 2006), *report and recommendation adopted,* No. 04-CV-698-TCK-FHM, 2006 WL 8457274 (N.D. Okla. May 4, 2006). None of the cases support Lincoln's argument that the absence of a physician rebuttal to the FCE is a determining factor.

Lincoln's argument that Dr. Vincent did not rely *exclusively* on the FCE is equally unavailing. In *all* of the cited cases, the reviewing physicians stated that they considered medical records in addition to the FCE. In the Fourth Circuit case, *Stup,* the reviewing physician did not, contrary to Lincoln's argument, simply "rubber stamp" the FCE. The reviewing physician, Dr. Burton, stated that he "reviewed Stup's file" including the FCE. *Stup,* at 305. The second reviewing physician, Dr. Lee, reviewed a letter from Ms. Stup's treating physician and noted that because there was no new objective testing the letter did not change Unum's prior decision. *Id.,* at 306. Likewise, Dr. Vincent's opinion does not constitute substantial evidence because he considered the unreliable FCE report.

2.       Lincoln's Arguments Concerning the Symptoms Journal

It is undisputed that Lincoln failed to submit Ms. Pifer's 122-page symptoms journal to Dr. Vincent. (*See* Ms. Pifer's opening brief (D 21), p. 15). Instead, Lincoln relies on a statement in its final denial letter that it "carefully considered all of the information submitted in support of the claim." (LIN000062).

Lincoln's argument is incorrect. The ERISA regulations require that an administrator obtain a medical review if the claimant's appeal is based in whole or in part on a medical judgment. 29 C.F.R. § 2560.503-1(h)(3)(iii) (made applicable to disability appeals by 29 C.F.R. § 2560.503-1(h)(4)). A plan's failure to provide the reviewing medical professional all relevant records is an abuse of discretion. *See Spangler v. Lockheed Martin Energy Sys., Inc.*, 313 F.3d 356, 362 (6th Cir. 2002) (the plan should have provided "all medical records relevant to [the claimant's] capacity to work" to the consulting reviewer, and the limited documentation provided by the plan to the consulting

reviewer rendered the final decision "arbitrary and capricious") and *Brown v. Nortel Networks, Inc.,* No. 5:03-cv-658-FL(3) (E.D.N.C. November 29, 2004).[1] In *Brown,* the court held that it was unreasonable for the plan to rely on a medical review that was not based on all of the relevant materials, and the requirement that a plan review all information was not satisfied by the fact that the claims administrator considered it when the plan's physician-consultant did not. (*Id.* at pp. 9-10).

A principled reasoning process necessarily requires the claims administrator to address the claimant's subjective complaints of pain in a thorough, meaningful way if the administrator is to deny the claim. *DuPerry v. Life Insurance Co. of North America*, 632 F.3d 860, 874 (4th Cir. 2011). Lincoln's failure to submit Ms. Pifer's symptoms journal to Dr. Vincent was an abuse of discretion.

3.      Lincoln's Multiple Prior Determinations of Disability

Lincoln's decision to terminate Ms. Pifer's benefits cannot be reconciled with its findings over eight years that she was entitled to continued benefits under the "any occupation" definition. Although Dr. Belhorn's February 8, 2021, examination report could be interpreted as showing that Ms. Pifer was somewhat better at that time, the evidence submitted with her appeal shows that any improvement in Ms. Pifer's condition was short-lived. Consider the following:

On February 17, 2021, Ms. Pifer told a Lincoln representative that Dr. Silver's steroid injection had "helped but did not fix" her right shoulder pain. She had worsening

---

[1] Copy submitted with opening brief.

Ehlers-Danlos symptoms and "a lot" of joint pain, especially in the hands, neck, and right shoulder, and ambulated with a cane when she needed it. (LIN000010, Phone Note 82). Ms. Pifer further explained that she had a lot of trouble sleeping and felt very tired, she could no longer garden or travel, walking was painful, and her knees and ankles "rolled" which was very painful. (*Id.*).

Dr. Kallianos' March 12, 2021, examination report states that Ms. Pifer was using a cane and reported increased fatigue due to her Ehlers-Danlos. (LIN000196). Dr. Kallianos assessed that Ms. Pifer was experiencing worsening symptoms since her last physical exam and remained totally disabled. (LIN000198).

The FCE report dated April 21, 2021 records Ms. Pifer's use of a cane, pain symptoms, and limited functionality. (LIN000462-76).

Ms. Pifer was next seen by Dr. Kallianos on May 25, 2021, for treatment of neck stiffness, right shoulder pain, and increased right arm paresthesia following a recent motor vehicle accident. (LIN000197-201). Dr. Kallianos ordered imaging studies.

A cervical spine MRI performed on June 10, 2021, revealed chronic multi-level cervical degenerative disc disease with facet arthropathy, narrowing of the central canal at C5-C6 and C6-C7, and variable degrees of bony encroachment on the foramina, likely most prominent at C5-C6. (LIN000313-14).

At Ms. Pifer's August 16, 2021 appointment with Dr. Belhorn (LIN000222-27), Ms. Pifer reported that she was not doing well due to multiple stressors and was experiencing increased pain, fatigue, and joint laxity. (LIN000222). She had increased neck pain and tingling in her hands following her May 2021 motor vehicle accident. She

had fallen the previous week and further injured her right shoulder. Her ankles had been rolling more frequently and her knees had been dislocating. (*Id.*). She had undergone physical therapy for her neck pain due to her having bulging disks and bone spurs in her cervical spine. Ms. Pifer reported that her pain was an eight on a ten-point scale. Dr. Belhorn found that Ms. Pifer had mild loss of range of motion in the cervical spine and shoulders. (LIN000223). She assessed that Ms. Pifer was suffering from generalized osteoarthritis and increased joint laxity due to Ehlers-Danlos syndrome. (*Id.*). Dr. Belhorn prescribed Celebrex for Ms. Pifer's joint laxity and pain, ordered laboratory tests, and scheduled Ms. Pifer for a physical therapy evaluation on August 19, 2021. (*Id.*).

Ms. Pifer had a physical therapy evaluation by Minh Phuong Le on August 19, 2021. (LIN000229-31). Ms. Pifer reported that she was experiencing weakness in her right arm, numbness, and tingling in her entire arms and hands, and was unable to sit and stand for extended periods. (LIN000229). Ms. Le found moderate to severe loss of range of motion and strength in Ms. Pifer's cervical spine, pain with resisted neck motions, decreased sensation in her right upper extremity, hypermobility, pain from C1 to C7, tenderness bilaterally of the paracervicals and the trapezius, and increased tightness in the upper trapezius and paracervical muscles. (LIN000229-30). Ms. Le assessed that Ms. Pifer had decreased cervical range of motion and upper extremity strength; radicular symptoms; and bilateral shoulder pain, right greater than left. (LIN000230). She added that Ms. Pifer had difficulty performing her activities of daily living and recreational activities. (LIN000230).

6

Ms. Pifer saw Dr. Silver again on August 24, 2021. (LIN000237-39). She reported a pain level of seven on a ten-point scale. (LIN000237). She was experiencing pain in her right shoulder and upper spine and numbness in her left hand following her motor vehicle accident and recent fall. (*Id.*). Dr. Silver determined that Ms. Pifer likely had a right shoulder rotator cuff tear and ordered an MRI. (LIN000238).

A right shoulder joint MRI performed on September 2, 2021, showed that Ms. Pifer suffers from severe glenohumeral arthropathy, a chronically torn and worn labrum, cuff tendinosis, AC arthropathy, and a chronically torn biceps long head tendon, etc. (LIN000315).

On September 7, 2021, Dr. Silver reviewed the MRI results with Ms. Pifer and administered a cortisone injection. (LIN000240).

Ms. Pifer saw Dr. Kallianos again on October 15, 2021, for bilateral knee pain. (LIN000218-19). His physical examination findings include tenderness, swelling, crepitus, and instability. (LIN000219). Dr. Kallianos wrote that Ms. Pifer may have a cartilage issue in the left knee with some ACL instability in the right knee. (*Id.*). He recommended that Ms. Pifer undergo x-rays and MRIs of both knees and added, "She is still permanently disabled." (*Id.*).

MRIs of Ms. Pifer's knees on October 26, 2021, revealed degeneration of her knees due to osteoarthritis. (LIN000316-17 and LIN000318-19).

The evidence, fairly considered, does not support Lincoln's contention that Ms. Pifer's condition had improved significantly as of the time her benefits were terminated.

    4.    <u>Lincoln's Argument that Ms. Pifer's Pain is Irrelevant</u>

7

Lincoln argued that "the Fourth Circuit definition [of a 'sedentary' occupation] certainly does not require that a plaintiff be able to satisfy its criteria without pain." That argument is contrary to *DuPerry,* *supra.* A claim determination based on the view that pain is irrelevant must be found to be arbitrary and capricious.

Conclusion

Application of the eight factors set forth in *Booth v. Wal-Mart Stores, Inc. Associates Health & Welfare Plan,* 201 F.3d 335, 342-43 (4th Cir. 2000) leads to the conclusion that Lincoln abused its discretion. Ms. Pifer is entitled to summary judgment.

December 12, 2022          /s/ Andrew Whiteman
Date                       Andrew Whiteman
                           N.C. State Bar Number 9523
                           Whiteman Law Firm
                           5400 Glenwood Ave., Suite 225
                           Raleigh, North Carolina 27612
                           Tel: (919) 571-8300
                           Fax: (919) 571-1004
                           aow@whiteman-law.com

                           *Attorney for plaintiff*

8

<u>Certificate of Service</u>

The undersigned hereby certifies that a copy of the foregoing was filed

electronically with the United States District Court for the Middle District of North

Carolina, with notice of case activity to be generated and sent electronically to the

following attorneys of record registered to receive such service:

W. Kyle Dillard
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
300 North Main Street, Suite 500
Greenville, SC 29601
kyle.dillard@ogletree.com

Vanessa N. Garrido
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
8529 Six Forks Road
Forum IV, Suite 600
Raleigh, NC 27615
vanessa.garrido@ogletree.com

*Attorneys for Defendant*


<u>December 12, 2022</u>　　　　　　　　　　　<u>/s/ Andrew Whiteman</u>
Date　　　　　　　　　　　　　　　　　　　Andrew Whiteman
　　　　　　　　　　　　　　　　　　　　　N.C. State Bar number 9523
　　　　　　　　　　　　　　　　　　　　　Whiteman Law Firm
　　　　　　　　　　　　　　　　　　　　　5400 Glenwood Avenue, Suite 225
　　　　　　　　　　　　　　　　　　　　　Raleigh, North Carolina 27612
　　　　　　　　　　　　　　　　　　　　　(919) 571-8300 (Telephone)
　　　　　　　　　　　　　　　　　　　　　(919) 571-1004 (Facsimile)
　　　　　　　　　　　　　　　　　　　　　aow@whiteman-law.com

9

## Certificate of Word Count

Pursuant to LR 7.3 of the Rules of Practice and Procedure, the undersigned certifies that the body of the brief, headings, and footnotes in the foregoing brief, but excluding the caption, signature lines the certificate of service, and this certificate of word count, contains 1,862 words. In making this certification, the undersigned relies on the word count feature of Microsoft Word.

December 12, 2022
Date

/s/ Andrew Whiteman
Andrew Whiteman
N.C. State Bar number 9523
Whiteman Law Firm
5400 Glenwood Avenue, Suite 225
Raleigh, North Carolina 27612
(919) 571-8300 (Telephone)
(919) 571-1004 (Facsimile)
aow@whiteman-law.com

10