United States District Court
Middle District of North Carolina
Case No. 1:22-cv-00186

| | |
|---|---|
| Rebecca Pifer, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| Lincoln Life Assurance Company of | ) |
| Boston, | ) |
| | ) |
| Defendant. | ) |
| | ) |

Plaintiff's Proposed Findings of Fact and Conclusions of Law

Rebecca Pifer, pursuant to Local Rule 40.1(c), submits the following proposed findings of fact and conclusions of law for the Court's consideration.

## I. Proposed Findings of Facts

The following proposed findings of facts are drawn from Lincoln's claim file and insurance policy. Lincoln's claim file and policy, numbered LIN000001-1301, were submitted with Ms. Pifer's summary judgment brief in two parts. (*See* DE 21-1 and 22).

## A. Ms. Pifer's Employment at BCBSNC

1. Ms. Pifer was employed at Blue Cross Blue Shield of North Carolina ("BCBSNC") as a Dental Analyst. Her job duties included reviewing dental insurance benefits claims. (LIN001285-86).

2. Ms. Pifer discontinued working in January 2011 due to the progression of her Ehlers-Danlos syndrome, osteoarthritis of the right shoulder and knees, cervical degenerative disc disease, and cervical canal stenosis. It is not disputed that Ms. Pifer

suffers from those conditions. (*See* LIN000081, report of Lincoln's consultant, Dr. Hunter Vincent).

B.     Policy Provisions

3.     BCBSNC provided disability coverage to Ms. Pifer and other eligible employees under an insurance policy issued by Lincoln and bearing group policy number GF3-850-286395-01 (the "Policy"). (LIN000399-437).

4.     The Policy obligates Lincoln to make eligibility determinations and to pay policy benefits from its funds. (LIN000399 and LIN00431).

5.     Ms. Pifer was enrolled as a Class 4 employee under the Policy. (LIN000001).

6.     The Policy provides that a Class 4 employee is entitled to 24 months of benefits if the employee is unable to perform their "Own Occupation." (LIN000405). After 24 months of benefit payments, a Class 4 employee is entitled to benefits if they are "unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation." (*Id.*). "Any Occupation" means "any occupation that the Covered Person is or becomes reasonably fitted by training, education, experience, age, physical and mental capacity." (LIN000404).

7.     Ms. Pifer received long-term disability benefits from Lincoln from July 30, 2011, through May 18, 2021. Therefore, the applicable definition of disability is "Any Occupation."

C.    Lincoln Approved Ms. Pifer for "Any Occupation" Benefits in December 2012

8.    Lincoln approved Ms. Pifer for "Any Occupation" benefits after receiving a report from a consulting physician, Dr. Howard Blank, dated November 21, 2012. (*See* LIN000709, approval letter dated December 19, 2012, and LIN000760-63, Dr. Blank's review report).

9.    Dr. Blank found that Ms. Pifer suffered from Ehlers-Danlos Syndrome, with associated osteoarthritis of the cervical spine, right shoulder, hands, and feet; a right shoulder rotator cuff tear that had been surgically corrected; and surgical corrections to both feet. (LIN000762). He recommended restrictions and limitations of standing and walking for approximately 10 minutes at a time for a total of 30 minutes per eight-hour workday; limited use of the right upper extremity due to right shoulder arthritis primarily as a result of pain; fine manipulation of the fingers limited to "occasional" use as a result of osteoarthritis; repetitive use of the hands should be avoided; neck rotation, flexion, and extension should be limited to "occasional;" and lifting up to 10 pounds with the left upper extremity limited to "occasional." (*Id.*). Dr. Blank added, "All of the noted restrictions and limitations are of a permanent nature." (*Id.*).

D.    Lincoln Approved Ms. Pifer for Continued "Any Occupation" Benefits Annually through from 2012 through 2020

10.    After 2012, Lincoln requested updated medical information and disability statements from Ms. Pifer's providers annually.

3

11.     During the next seven years, Ms. Pifer's treating physicians, Dr. John Kallianos and Dr. Linda Belhorn, continued to support her claim.[1] Lincoln reviewed Ms. Pifer's claim annually and decided to continue paying benefits.[2]

E.     Lincoln Decided to Conduct Surveillance

12.     A Lincoln claim note dated February 4, 2021, states that a claim reviewer sent a request to her manager "for approval of two days of surveillance for activities check." (Lincoln 000011, Claim Note 159). No reason was given for the request. The next day, the request for surveillance was approved without explanation. (Lincoln 000010, Claim Note 161).

F.     The Surveillance Report

13.     Lincoln's investigator conducted surveillance of Ms. Pifer on February 17, 2021, February 23, 2021, and March 4, 2021. (LIN000482-90). The investigator observed Ms. Pifer only on February 23, 2021. A video recording taken that day shows Ms. Pifer walking in and out of view, walking to the driver's side of a vehicle, placing the items she was carrying in the vehicle, entering the vehicle, and departing. The recording lasted two minutes and forty-seven seconds.

---

[1] *See* LIN000669 – Kallianos Attending Physician's Statement ("APS") August 10, 2013, LIN000668 – Belhorn APS January 1, 2014, LIN000676 – Kallianos APS February 11, 2014, LIN000658 – Kallianos APS February 20, 2015, LIN000637 – Belhorn APS February 17, 2016, LIN000629 – Belhorn APS January 25, 2017, LIN000610 – Belhorn APS February 14, 2018, LIN000590 – Belhorn APS January 21, 2019, and LIN000579 – Belhorn APS February 5, 2020.

[2] *See, e.g.*, LIN000014 – Lincoln's Claim Note 141, dated February 25, 2016, "APS supports. F/U 1 yr;" LIN00013 – Claim Note 144, dated March 8, 2017, "No change to EE condition, supports contd disb. F/U 1 year;" LIN000012 - Claim Note 150, dated March 5, 2018, "No change to EE condition, supports contd disb. F/U 1 year;" and LIN000011 – Claim Note 157 dated February 7, 2020, "Based on info recvd, it is supportive for ongoing LTD. F/U for annual review."

4

G.    Lincoln Decided to send Ms. Pifer for a Functional Capacity Evaluation

14.    A Lincoln claim note dated March 9, 2021, states that a claim reviewer recommended that Lincoln send Ms. Pifer for an FCE "for further clarification of sustained sedentary activity." (LIN000009-10, Claim Note 168).

15.    Ms. Pifer underwent the FCE on April 21, 2021. (LIN000462-76). The physical therapist who performed the evaluation, Anna Davidow, opined that Ms. Pifer was able to work at the "sedentary" physical demand level for an eight-hour work-day, lift 12.5 pounds and carry 10 pounds "occasionally," sit and perform hand manipulation on a "frequent" basis, and stand and walk on an "occasional" basis. (LIN000462). However, most of the test results and clinical observations noted in the FCE report are contrary to Ms. Davidow's conclusion that Ms. Pifer was able to work in a sedentary occupation.

16.    The FCE report contains the following findings:

- Ms. Pifer came to the test location ambulating with a cane and exhibited a slow, methodical gait pattern. (LIN000466).

- Ms. Pifer advised Ms. Davidow that her symptoms were "somewhat manageable" but had "progressively worsened." She complained of constant pain along her bilateral upper extremities that extended to her hands, bilateral knee pain, lower back pain, cervical and upper back pain, general weakness, frequent instability, and frequent tingling and numbness in her hands. (LIN000465).

- Ms. Pifer advised Ms. Davidow that she was able to sit for 20 minutes, stand for 20 minutes, walk for 30 minutes, and drive for 20 minutes. (LIN000465). She stated that she was independent in her activities of daily living and basic household chores, however, her adult son lived with her and performed the majority of the household tasks. (*Id.*)

5

- Ms. Pifer was in pain throughout the testing. Ms. Pifer reported pain at an intensity level of 7 on a 10-point scale. (LIN000465). Ms. Davidow wrote, "Deficits identified during testing include elevated pain throughout testing, specifically in the right shoulder and upper back area." (LIN000462).

- Ms. Davidow found that Ms. Pifer had moderate tenderness along the anterior aspect of her right shoulder, bilateral upper trapezius, interscapular area, and lower back. (LIN000466).

- The treadmill test was stopped because Ms. Pifer was unable to achieve the minimum required speed of two miles per hour. She ambulated at one mile per hour for eight minutes at which time she requested a seated rest break due to pain and fatigue. She then resumed ambulation for an additional five minutes but requested to terminate again because of right foot discomfort, bilateral shoulder pain, and fatigue. (LIN000466).

- All three lifting tests were terminated by Ms. Pifer due to continued pain across the bilateral upper back and shoulders and noted fatigue. Ms. Pifer was only able to lift the minimum required weight. (LIN000467).

- During the "carry testing," Ms. Pifer ambulated with the use of a cane and carried the weight in her left arm. *(Id.).*

- "Frequent carry" and "frequent push/pull" testing were not performed as Ms. Pifer was not able to demonstrate "frequent ambulation." (*Id.*).

- Ms. Pifer demonstrated "elevated pain" with standing and walking, yet Ms. Davidow concluded that Ms. Pifer would stand and walk on an "occasional" basis. (LIN000469).

- Ms. Pifer demonstrated elevated pain with "object handling," yet Ms. Davidow concluded that Ms. Pifer could perform object handling on a "frequent" basis. *(Id.).*

- Ms. Pifer experienced increased difficulty and increased discomfort on testing of grip and pinch strength (LIN000471) and elevated pain on testing of object handling. (LIN000469).

- Ms. Davidow reported "no deficit observed" regarding fingering, simple hand grasp, firm hand grasp, and fine and gross manipulation (LIN000469) and concluded that Ms. Pifer could perform those activities on a "frequent" basis." (LIN000464). However, the only tests Ms. Davidow administered to

6

assess Ms. Pifer's ability to use her hands were tests of grip and pinch strength and object handling, and during both tests Ms. Pifer reported increased difficulty and discomfort. (LIN000471).

- Even though Ms. Pifer complained of pain, numbness, and tingling in her hands (LIN000465), Ms. Davidow did not test Ms. Pifer's hand range of motion or strength. (LIN000473). All of the entries under the heading "Hand" are "N/A," which indicates that testing was not performed. (*Id.*).

- Ms. Pifer had elevated discomfort in her bilateral upper back area during the isometric push/pull test. (LIN000471).

- Ms. Pifer's cervical active range of motion was limited. (LIN000472). Her range of motion and strength in her shoulders were below normal. *(Id.).* Her strength in her elbows and wrists was diminished. *(Id.).*

- Ms. Pifer's strength in her hips, knees, and ankles was below normal. *(Id.).*

- The FCE report does not indicate any observations of Ms. Pifer's ability to sit. The amount of time spent sitting is not noted in the report, yet Ms. Davidow somehow concluded that Ms. Pifer could sit on a "frequent" basis during an eight-hour workday. (LIN000469).

- The entire testing time was only two hours and nine minutes. (LIN000462).

The FCE test results and clinical observations recorded by Ms. Davidow do not support her conclusion that Ms. Pifer was able to work a sedentary occupation.

H. <u>Termination of Benefits</u>

17. Lincoln informed Ms. Pifer by a letter dated May 19, 2021, that her long-term disability benefits had been terminated. (LIN000446-50). Lincoln's letter states that it terminated benefits after receiving the FCE report and quoted the FCE report. (LIN000447-48). The termination letter advised Ms. Pifer that she had 180 days to appeal. (LIN000449).

7

I.      Ms. Pifer Appealed

18.     On November 11, 2021, Ms. Pifer appealed Lincoln's termination of her

benefits. (LIN000386-394, appeal letter). Her appeal submission included medical

records, supportive statements from three of her physicians, x-ray and MRI reports, and a

symptoms journal kept by Ms. Pifer.[3]

J.      The Medical Records Show that Ms. Pifer's Condition had not Improved

19.     Ms. Pifer's medical records, disability statements, imaging studies, and a

physical therapy evaluation show that her condition had not improved as of the time she

was terminated and thereafter.

        1.      Physician Reports

                a.      Dr. Belhorn

20.     Ms. Pifer was seen by her rheumatologist, Dr. Linda Belhorn, on August 5,

2020, February 8, 2021, and August 16, 2021.[4] At the August 5, 2020, appointment

(LIN000537-40), Ms. Pifer stated that since her last visit she had experienced mild

increased symptoms in her hands, worsening fatigue, increased pain in her right shoulder

with difficulty performing certain motions, and persistent symptoms in her cervical spine.

(LIN000537). Dr. Belhorn found that Ms. Pifer had Heberden's nodes and Bouchard's

nodes in her fingers bilaterally and tenderness in her right shoulder. (*Id.*)

---

[3] *See* LIN000386 and Attachment 1 – LIN000190-242, Attachment 2 – LIN000131-189, Attachment 3 –
LIN000382, Attachment 4 – LIN000306-09, Attachment 5 – LIN000310-311, Attachment 6 – LIN000312-
319, Attachment 7 – LIN00320-381 and LIN000243-303, and Attachment 8, LIN000304-305.

[4] *See* LIN000537-40, LIN000132-35, and LIN000222-27.

21.     At the February 8, 2021 visit (Lincoln 132-35), Ms. Pifer reported that she was relatively stable on Celebrex and tramadol, she had seen Dr. Silver who had diagnosed a rotator cuff impingement, she had a significant benefit from a steroid injection Dr. Silver administered on September 10, 2020, and she was trying to do some strength training and Tai Chi to help improve her shoulder symptoms. (LIN000134). Dr. Belhorn again found that Ms. Pifer had Heberden's and Bouchard's nodes bilaterally and mild loss of range of motion in the cervical spine and shoulders. (*Id.*).

22.     At the August 16, 2021 appointment (LIN000222-27), Ms. Pifer reported that she was not doing well due to multiple stressors and was experiencing increased pain, fatigue, and joint laxity. (LIN000222). She had increased neck pain and tingling in her hands following a motor vehicle accident in May 2021. She had fallen the previous week and injured her right shoulder. Her ankles had been rolling more frequently and her knees had been dislocating. (*Id.*). She had undergone physical therapy for her neck pain due to her having bulging disks and bone spurs in her cervical spine. Ms. Pifer reported that her pain was an eight on a ten-point scale. Dr. Belhorn found that Ms. Pifer had mild loss of range of motion in the cervical spine and shoulders. (LIN000223). She assessed that Ms. Pifer was suffering from generalized osteoarthritis and increased joint laxity due to Ehlers-Danlos syndrome. (*Id.*). Dr. Belhorn prescribed Celebrex for Ms. Pifer's joint laxity and pain, ordered laboratory tests, and scheduled Ms. Pifer for a physical therapy evaluation on August 19, 2021. (*Id.*).

23.     Dr. Belhorn completed two disability forms on October 18, 2021. (LIN000308-09). She wrote that Ms. Pifer's restrictions and limitations were "no

9

prolonged sitting, standing, heavy lifting, or repetitive activities" (LIN000309) and that her physical impairment rating was "Class 5," which means "Severe limitation of functional capability; incapable of minimum (sedentary*) activity (75-100%)." (LIN000308).

> b.   Dr. Silver

24.   On September 10, 2020, Ms. Pifer saw her shoulder surgeon, Dr. William Silver, for a follow-up regarding her worsening right shoulder pain dysfunction. (LIN000135-38). She saw Dr. Silver again on August 24, 2021, and September 7, 2021. (LIN000237-39 and LIN000239-41). At the August 24, 2021, appointment, Ms. Pifer reported a pain level of seven on a ten-point scale. (LIN000237). She was experiencing pain in her right shoulder and upper spine and numbness in her left hand following her motor vehicle accident in May 2021 and a recent fall. (*Id.*). Dr. Silver determined that Ms. Pifer likely had a right shoulder rotator cuff tear and ordered an MRI. (LIN000238). On September 7, 2021, Dr. Silver reviewed the MRI results and administered a cortisone injection. (LIN000240).

25.   Dr. Silver completed an Annual Physician's Statement form on October 25, 2021. (LIN000311). He wrote that due to Ms. Pifer's right shoulder condition she should engage in no heaving lifting or repetitive activity. (*Id.*).

> c.   Dr. Kallianos

26.   Ms. Pifer was seen by Dr. John Kallianos, her primary care provider, on May 25, 2021, for treatment following a motor vehicle accident that occurred on May 19, 2021. (LIN000197-201). She saw Dr. Kallianos again on October 15, 2021, for bilateral

10

knee pain. (LIN000218-19). His physical examination findings include tenderness, swelling, crepitus, and instability. (LIN000219). Dr. Kallianos wrote that Ms. Pifer may have a cartilage issue in the left knee with some ACL instability in the right knee. (*Id.*). He recommended that Ms. Pifer undergo x-rays and MRIs of both knees and added, "She is still permanently disabled." (*Id.*).

2.      Imaging Studies

27.      An x-ray study of Ms. Pifer's right shoulder performed on August 6, 2020, showed advanced glenohumeral arthropathy and prominent lucency in the superior aspect of the glenoid cavity consistent with a geode. (LIN000134-35).

28.      A cervical spine MRI performed on June 10, 2021, revealed chronic multi-level cervical degenerative disc disease with facet arthropathy, narrowing of the central canal at C5-C6 and C6-C7, and variable degrees of bony encroachment on the foramina, likely most prominent at C5-C6. (LIN000313-14).

29.      A right shoulder joint MRI done on September 2, 2021, showed that Ms. Pifer suffers from severe glenohumeral arthropathy, a chronically torn and worn labrum, cuff tendinosis, AC arthropathy, and a chronically torn biceps long head tendon, etc. (LIN000315).

30.      Ms. Pifer underwent MRIs of her knees on October 26, 2021. (LIN000316-17 and LIN000318-19). The reports showed that Ms. Pifer suffers from degeneration of her knees due to osteoarthritis.

11

### 3. Physical Therapy Evaluation

31. Ms. Pifer was evaluated by a physical therapist, Minh Phuong Le, on August 19, 2021. (LIN000229-31). Ms. Pifer reported that she was experiencing weakness in her right arm, numbness and tingling in her entire arms and hands, and was unable to sit and stand for extended periods. (LIN000229). Ms. Le found moderate to severe loss of range of motion and strength in Ms. Pifer's cervical spine, pain with resisted neck motions, decreased sensation in her right upper extremity, hypermobility and pain from C1 to C7, tenderness bilaterally of the paracervicals and the trapezius, and increased tightness in the upper trapezius and paracervical muscles. (LIN000229-30). Ms. Le assessed that Ms. Pifer had decreased cervical range of motion and upper extremity strength; radicular symptoms; and bilateral shoulder pain, right greater than left. (LIN000230). She added that Ms. Pifer had difficulty performing her activities of daily living and recreational activities. (LIN000230).

### K. Ms. Pifer's Claim was Reviewed by Dr. Hunter Vincent

32. Lincoln hired Dr. Hunter Vincent, a board-certified specialist in rehabilitation and pain medicine, to review Ms. Pifer's claim. In his report dated January 24, 2022, Dr. Vincent acknowledged that Ms. Pifer suffers from Ehlers-Danlos syndrome, generalized osteoarthritis of the right shoulder and bilateral knees, cervical degenerative disc disease, and cervical canal stenosis. (LIN000075-87). He opined that Ms. Pifer has "advanced degenerative joint disease that warrants restrictions" (LIN000081) and that her chronic diseases were "anticipated to aggravate degeneration going forward." (LIN000083). However, Dr. Vincent concluded that Ms. Pifer's

restrictions "can be accommodated in a full-time sedentary work setting." (LIN00081). He added that his "assessment is similar to the FCE results" and stated that he disagreed with Dr. Blank's assessment. (*Id.* and LIN000086).

33. Dr. Vincent was not provided all the evidence submitted by Ms. Pifer. Her appeal submission included a daily symptoms journal that contained 122 pages of daily entries made from June 7, 2021, through October 22, 2021. The journal entries note Ms. Pifer's limited activities and struggle with pain and fatigue. Dr. Vincent did not mention the symptoms journal in his report. Lincoln did not provide it to him. Lincoln Claim Note 214 (LIN000004) includes a message from the vendor Lincoln hired to provide the file review that "the medical records" had been received, but the message does not mention Ms. Pifer's journal. Dr. Vincent's report states he was asked to review "the medical records" and then lists the records he reviewed, but makes no mention of the symptoms journal. (LIN000075).

## L.    Lincoln Obtained a Vocational Evaluation

34. Following receipt of Dr. Vincent's report, a Lincoln vocational specialist, Nicole Hall, determined that there were occupations Ms. Pifer could perform within the restrictions and limitations recommended by Dr. Vincent. (LIN00088-93).

## M.    Lincoln Denied Ms. Pifer's Appeal

35. Lincoln informed Ms. Pifer by a letter dated February 17, 2022, that her appeal had been denied. (LIN000053-64). Lincoln's letter states that Ms. Pifer's appeal was denied after Lincoln received the reports from Dr. Vincent and Ms. Hall.

13

(LIN000061-62). Lincoln advised Ms. Pifer had she had exhausted her administrative right to review and had the right to bring a civil action under ERISA. (LIN000063).

## II.      Conclusions of Law

1.      The Court has jurisdiction over this controversy under 29 U.S.C. § 1132(e)(1) of the Employee Retirement Income Security Act of 1974.

2.      Because the Policy confers discretionary authority on Lincoln to construe policy terms and make benefit determinations, the standard of review by this Court is abuse of discretion. *Helton v. AT & T Inc.*, 709 F.3d 343, 351 (4th Cir. 2013).

3.      Lincoln's decision to uphold the termination of Ms. Pifer's long-term disability benefits is not supported by substantial evidence and constitutes an abuse of discretion.

4.      Although Ms. Davidow, the physical therapist who conducted the FCE of Ms. Pifer, opined that Ms. Pifer was able to work a "sedentary" occupation, Ms. Davidow's test results and clinical observations strongly support Ms. Pifer's claim that her illnesses prevent her from working. Lincoln's claim determination must be overturned because the FCE does not support Lincoln's claim decision. *See, e.g., Stup v. Unum Life Insurance Company of America*, 390 F.3d 301, 309-10 (4th Cir. 2004) (an FCE report that contained ambiguous test results and lasted only two and a half hours did not provide "substantial evidence" to support the plan's conclusion that the claimant could perform sedentary work).

5.      Ms. Pifer submitted a 122-page symptoms journal as part of her appeal. However, the symptoms journal was not provided to Lincoln's reviewing physician, Dr.

14

Vincent, and there is no evidence that Lincoln personnel reviewed it. Lincoln's failure to consider Ms. Pifer's symptoms journal as part of its appeal review process violates the requirement of 29 C.F.R. § 2560.503-1(h)(2)(iv) (2020) that a plan administrator must consider "all comments, documents, records, and other information submitted by the claimant relating to the claim" and constitutes an abuse of discretion. *See Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 834 (2003)

6. By relying on Dr. Vincent's report, Lincoln violated the ERISA claim regulations, which require that a benefit denial notification include a discussion of the basis for disagreeing with or not following the views of the claimant's healthcare professionals. 29 C.F.R. § 2560.503-1(j)(6)(i) (2016).

7. Lincoln approved Ms. Pifer for benefits under the "any occupation" definition of disability in December 2012, after receiving a report from a consulting physician who opined Ms. Pifer had permanent restrictions and limitations that prevented her from working. Thereafter, Lincoln made annual determinations through 2020 that Ms. Pifer was entitled to continued benefits. In 2021, Lincoln upheld its decision to terminate Ms. Pifer's benefits despite medical evidence that Ms. Pifer's condition had not improved. Lincoln's multiple determinations over eight years that Ms. Pifer was entitled to continued benefits "is a circumstance that must weigh against the propriety of [Lincoln's] decision to discontinue those payments." *McOsker v. Paul Revere Life Ins. Co.*, 279 F.3d 586, 589 (8th Cir. 2002).

### III.    Conclusion and Relief Sought

Ms. Pifer is entitled to judgment on her claim for benefits. She requests the following relief: (1) a judgment that Lincoln is obligated under the terms of the Policy to

15

pay her long-term disability benefits for the period from May 18, 2021, to the date of judgment, with prejudgment interest; (2) a judgment that Lincoln is obligated to pay her monthly disability income benefits after the date of judgment for as long as she remains eligible for such benefits under the terms of the Policy; (3) and an award of attorney's fees and costs against Lincoln pursuant to 29 U.S.C. § 1132(g)(1).

Ms. Pifer will present arguments in favor of her claims for attorney's fees and costs and prejudgment interest if the Court grants judgment in her favor on her claim for benefits.


June 16, 2023
Date

/s/ Andrew Whiteman
Andrew Whiteman
N.C. State Bar Number 9523
Whiteman Law Firm
5400 Glenwood Ave., Suite 225
Raleigh, North Carolina 27612
Tel: (919) 571-8300
Fax: (919) 571-1004
aow@whiteman-law.com

*Attorney for plaintiff*

16

Certificate of Service

The undersigned hereby certifies that a copy of the foregoing was fi led electronically with the United States District Court for the Middle District of North Carolina, with notice of case activity to be generated and sent electronically to the following attorneys of record registered to receive such service:

W. Kyle Dillard
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
300 North Main Street, Suite 500
Greenville, SC 29601
kyle.dillard@ogletree.com

Vanessa N. Garrido
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
8529 Six Forks Road
Forum IV, Suite 600
Raleigh, NC 27615
vanessa.garrido@ogletree.com

*Attorneys for Defendant*

| | |
|---|---|
| June 16, 2023 | /s/ Andrew Whiteman |
| Date | Andrew Whiteman |
| | N.C. State Bar number 9523 |
| | Whiteman Law Firm |
| | Attorney for Plaintiff |
| | 5400 Glenwood Avenue, Suite 225 |
| | Raleigh, North Carolina 27612 |
| | (919) 571-8300 (Telephone) |
| | (919) 571-1004 (Facsimile) |
| | aow@whiteman-law.com |

17