United States District Court
Middle District of North Carolina
Case No. 1:22-cv-00186

| | |
|---|---|
| Rebecca Pifer, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| Lincoln Life Assurance Company of | ) |
| Boston, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**Plaintiff's Memorandum in Support of Her Motion
for an Award of Attorney's Fees and Costs**

Plaintiff Rebecca Pifer submits the following memorandum in support of her

motion for attorney's fees and costs.

## I.        Status of the Case

On August 14, 2023, the Court issued an opinion and order in which it granted in

part Ms. Pifer's motion for summary judgment, vacated Lincoln's decision to deny Ms.

Pifer's long-term disability benefits, denied Lincoln's motion for summary judgment, and

remanded Ms. Pifer's claim for long-term disability benefits to Lincoln for further review

and proceedings consistent with the Court's decision. (D 46).  The court entered

judgment consistent with its order the same day. (D 47).

## II.        Certification Pursuant to Local Rule 54.2

Local Rule 54.2 states that the Court will not consider a motion to award statutory

attorney's fees until moving counsel shall first advise the Court in writing that after

consultation the parties are unable to reach an agreement regarding the fee award. The statement of consultation must set forth the date of the consultation, the names of the participating attorneys, and the specific results achieved.

The undersigned certifies that he has consulted with Lincoln's counsel concerning Ms. Pifer's claim for an attorney's fee award and the parties have been unable to reach an agreement concerning the claim. The dates of the contacts, the names of participating attorneys, and the results of those communications are summarized below:

1. Communication: August 15, 2023, e-mail from Andrew Whiteman to Kyle Dillard cc: Vanessa Garrido. Content: Please let me know when you would like to discuss the plaintiff's claim for costs and attorney's fees. Result: No response.

2. Communication: September 5, 2023, e-mail from Andrew Whiteman to Kyle Dillard cc: Vanessa Garrido. Content: Please provide Lincoln's responses to four questions concerning Ms. Pifer's claim – the reasonableness of $450 per hour, the reasonableness of time expended, whether Lincoln disputes that Ms. Pifer achieved "some degree of success on the merits," and whether Lincoln disputes that Ms. Pifer is entitled to an attorney fee award. Result: No response.

3. Communication: September 11, 2023, voice message by Andrew Whiteman to Kyle Dillard. Content: Let me know if we can resolve any aspect of Ms. Pifer's claim. Result: E-mail from Kyle Dillard.

4. Communication: September 11, 2023, e-mail from Kyle Dillard to Andrew Whiteman. Content: Mr. Dillard said he would contact Mr. Whiteman within a week on the fee petition. Result: No follow-up by Mr. Dillard.

5. Communication: September 25, 2023, e-mail from Andrew Whiteman to Kyle Dillard. Content: Please let me know by tomorrow Lincoln's position on the questions sent on September 5, 2023, and Ms. Pifer's claim for $412 in costs. Result: Mr. Dillard responded the same day that he was not in a position to stipulate to anything.

III.     Evidentiary Material Submitted with this Memorandum

Ms. Pifer is submitting with this memorandum the following evidentiary materials: Declaration of Rebecca Pifer, Declaration of Andrew Whiteman, Declaration of Norris A. Adams, II, and Declaration of Bryan L. Tyson.

IV.     Attorney's Fees

A.     The Court should Award Ms. Pifer Attorney's Fees and Costs

29 U.S.C. § 1132(g)(1) provides that a court in its discretion may allow reasonable attorney's fees and costs to either party.

There are three Fourth Circuit cases and one Supreme Court case that should be considered in connection with an application for attorney fees and costs in an ERISA case: *Reinking v. Philadelphia American Life Ins. Co.*, 910 F.2d 1210 (4th Cir. 1990); *Quesinberry v. Life Ins. Co. of North America,* 987 F.2d 1017 (4th Cir. 1993) (*en banc*); *Hardt v. Reliance Standard Life Insurance Co.,* 560 U.S. 242 (2010); and *Williams v. Metropolitan Life Insurance Co.,* 609 F.3d 622 (4th Cir. 2010).

*Quesinberry* followed and clarified *Reinking*, and a discussion of the relevant law should therefore start with the language from *Reinking*. *Reinking* identified a five-factor test, discussed below, then continued:

> In exercising its discretion under the statute, the court may use the five factors as a guide, but it must also bear in mind the remedial purposes of ERISA to protect employee rights and to secure effective access to federal courts. We agree with the Ninth Circuit that, in order to effectuate the remedial purposes of ERISA, a prevailing individual beneficiary " 'should ordinarily recover attorney's fees unless special circumstances would render such an award unjust.' "

3

910 F.2d at 1219 (*quoting Smith v. CMTA-IAM Pension Trust,* 746 F.2d 587, 589

(9th Cir. 1984)). After discussion of each of the five factors, the Fourth Circuit

concluded:

> The award of attorney's fees substantially alleviates the burden otherwise
> placed upon the Reinkings in protecting their rights in federal court. Nothing
> in this case indicates that the award works a substantial injustice on the
> defendant. We therefore hold that the district court did not abuse its
> discretion in awarding fees.

*Id.*

*Quesinberry* clarified that *Reinking* did not call for "a mandatory presumption in

favor of granting" attorney's fees in ERISA cases. Rather:

> In our view, *Reinking* simply affirmed that the district court should also
> consider the remedial purposes of ERISA in making its determination
> regarding attorneys' fees. The language of ERISA regarding the standard
> for awarding attorneys' fees could not be more straight-forward. Congress
> explicitly reserved the decision whether to award attorneys' fees to the
> discretion of the district court. 29 U.S.C. § 1132(g) . . . . To the extent that
> *Reinking* supports a mandatory presumption in favor of granting attorneys'
> fees, it is overruled.

987 F.2d at 1029-30. Thus, under *Reinking* and *Quesinberry*, the issue of a fee award

under ERISA is committed to the district court's discretion, five factors should be

addressed (though there is no language stating that other factors may not be considered),

and the district court's discretion should be exercised with appropriate recognition of the

remedial purposes of ERISA to protect employee rights and to secure effective access to

federal courts.

In *Hardt,* the Supreme Court held that a plaintiff is entitled to move for an

attorney's fee award if they achieved "some success on the merits." Ms. Hardt persuaded

the district court to find that "the plan administrator has failed to comply with the ERISA

4

guidelines" and that "Ms. Hardt did not get the kind of review to which she was entitled under applicable law." 560 U.S. at 256. However, the district court stated that although it was "inclined to rule in Ms. Hardt's favor" on its benefits claim, it declined to do so and instead remanded the claim to Reliance to give it "the chance to address the deficiencies in its" statutorily mandated "full and fair review" of the claim." *Id.* The Supreme Court held that because Ms. Hardt had achieved "some success on the merits," the district court properly exercised its discretion to award her attorney's fees. *Id.*

In *Williams,* the Fourth Circuit held that *Hardt* did not foreclose courts from relying on a *Quesinberry*-type analysis to guide the exercise of discretion once a claimant is found to be eligible for an award of attorney's fees under 29 U.S.C. § 1132(g)(1). The Court, citing *Quesinberry,* held that the District Court "was entitled to consider the remedial purposes of ERISA to protect employee rights and secure effective access to federal courts." 609 F.3d at 636.

> The five factors set out in *Reinking*, *Quesinberry,* and *Williams* are:
>
> (1) degree of opposing parties' culpability or bad faith; (2) ability of opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of a plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions.

*Williams,* 609 F.3d at 635, *citing Quesinberry,* 987 F.2d at 1029. The "five-factor approach is not a 'rigid test,' but instead provides 'general guidelines." *Id.*

1.      Ms. Pifer Achieved "Some Success on the Merits"

In *Hardt, supra,* the Supreme Court held that the plaintiff had achieved far more than "trivial success on the merits" or a "purely procedural victory" even though the District Court remanded the claim to the administrator. Such is the case here. This Court granted Ms. Pifer's summary judgment motion in part, vacated Lincoln's decision to terminate Ms. Pifer's claim for continued long-term disability benefits, and denied Lincoln's motion for summary judgment. Her victory constitutes "some success on the merits" notwithstanding the Court's decision to remand the claim to Lincoln rather than award benefits outright. Ms. Pifer is therefore entitled to apply for an award of fees and costs. *See also Scott v. PNC Bank Corp. & Affiliates Long Term Disability Plan*, No. WDQ-09-3239, 2011 WL 2601569 (D. Md. June 28, 2011):

> This Court concludes that a remand to a plan administrator that does not guide the administrator toward awarding long-term disability benefits to the plaintiff, or in any other way earmark the plaintiff's claim for monetary success, nonetheless is sufficient success on the merits for the plaintiff to be eligible for attorney's fees.

2011 WL 2601569, at *7, *citing W. Va. Highlands Conservancy v. Kempthorne,* 569 F.3d 147, 152 (4th Cir. 2009).

2.      Analysis of the Five Factors Supports an Award of Attorney's Fees and Costs

a.      Lincoln's Culpability or Bad Faith

"Culpability" and "bad faith" require "more than mere negligence or error." *Carolina Care Plan Inc. v. McKenzie,* 467 F.3d 383, 390 (4th Cir. 2006), *citing Wheeler v. Dynamic Engineering, Inc.,* 62 F.3d 634, 641 (4th Cir. 1995).

6

In *Williams, supra,* the Fourth Circuit upheld the District Court's finding that Metropolitan's "culpability" constituted "more than mere negligence" even though not amounting to "bad faith." In *Williams,* MetLife terminated Ms. Williams' benefits based on a single piece of evidence after having approved benefits three times previously, failed to consider all the evidence concerning disability, and improperly relied on the flawed reports of its reviewing physician. 609 F.3d at 635-36. Likewise, in *DuPerry,* the Court affirmed the District Court's finding that the administrator's conduct demonstrated "some degree of culpability in its dismissal of [DuPerry's] subjective complaints without meaningful inquiry." 632 F.3d at 877. And in *Mitchell v. Fortis Benefits Insurance Co,* 163 Fed.Appx. 183 (4th Cir. 2005), the Fourth Circuit stated that Fortis' actions "suggested bad faith" and the evidence Fortis relied on was neither substantial nor supportive of its decision to terminate benefits. 163 Fed.Appx. at 194.

In this case, the factor of culpability or bad faith strongly favors an award of attorney's fees. Lincoln and its consultants failed to review Ms. Pifer's symptoms journal, her 2019 physical therapy records, and reports of her 2019 and 2020 appointments with Dr. Kallianos and Dr. Belhorn. Lincoln failed to reconcile conflicts between the 2021 reports of Dr. Vincent and Ms. Davidow and an earlier one prepared by Dr. Blank in 2012. Dr. Vincent failed to analyze the effect of Ms. Pifer's osteoarthritis of her hands and feet. The Court found that Lincoln "picked and chose" evidence that supported its decision while ignoring other relevant evidence in the record. (Opinion, pp. 43-51). The Court rejected Lincoln's assertion that Ms. Pifer's recent medical records showed improvement in her condition. (Opinion, p. 51). Defendant's conduct suggested it "shut

7

[its] eyes to the most evident and accessible sources of information" supporting Plaintiff's claim." (Opinion, p. 53).

Lincoln's decision to deny benefits was "more than mere negligence or error." Therefore, the factor of culpability or bad faith favors an award of attorney's fees.

> b.      The Ability of the Opposing Party to Pay

This factor overwhelmingly favors Ms. Pifer. Lincoln is enormously wealthy. On October 21, 2021, Lincoln merged with The Lincoln National Life Insurance Company ("Lincoln National Life").[1] After the merger, Lincoln National Life is the surviving company and is responsible for all of Lincoln's legal and policy obligations. *Id.* According to Lincoln National Life's balance sheet for the year ended December 31, 2022,[2] the company had total assets of $338 billion and total stockholders' equity of $7.8 billion.[3]

In contrast, after Lincoln terminated Ms. Pifer's benefits on May 18, 2021, Ms. Pifer had to supplement her income by taking taxable withdrawals from her IRA account and borrowing on her credit cards. *See* Pifer declaration, ¶ 4. Her net worth is approximately $373,000. *See* Pifer declaration, ¶ 5.

Lincoln's overwhelming financial advantage favors an award of attorney's fees and costs.

---

[1] *See* press release dated October 21, 2021, available at chrome-extension:// efaidnbmnnnibpcajpcglclefindmkaj/https://benefits.synopsys.com/document/301.

[2] *See* Lincoln National Life's Form 10-K for the year ended December 31, 2022, available at https://www.sec.gov/ix?doc=/Archives/edgar/data/00000726865/000072686523000180/c865-20221231x10k.htm.

[3] *Id.,* at p. 68.

8

c.    <u>Deterrence</u>

The third factor is whether an award of attorney's fees would deter the opposing party and other persons acting under similar circumstances. Granting attorney's fees in a case such as this would deter Lincoln from making unsupported decisions. *Williams v. Metropolitan Life Insurance Company,* Case No. 5:07-CV-74-D (E.D.N.C. April 28, 2009), *aff'd* 609 F.3d 522 (4th Cir. 2010); *Denzler v. Questech, Inc.,* 80 F.3d 97, 104 (4th Cir. 1996); *Mitchell v. Fortis Benefits Ins. Co.,* 163 Fed. Appx. 183, 194 (4th Cir. 2005) ("granting of attorney's fees would likely deter Fortis from making future hasty and unsupported decisions.").

Insurers must understand that there is some possibility that if a claim is improperly denied they will end up having to pay the claimant's legal fees. So long as there is no risk that insurers will have to pay out more than would be required if they granted benefits, there will be no risk to a decision denying benefits.

The deterrence factor favors Ms. Pifer.

d.    <u>Benefit to All Participants</u>

Ms. Pifer's motive in pursuing this case was to secure an award of benefits for herself so that she would have the disability income that her employer promised would be available to her in the event of a medical catastrophe. Admittedly, she sought to benefit only herself.

e.    <u>The Relative Merits of the Parties' Positions</u>

The relative merits of the parties' positions favor an award of attorney's fees and costs. See comments in section A.2.a. above. Even if the Court finds that Lincoln did not

9

act with culpability or in bad faith, the Court should find that the relative merits of the parties' positions favor an award of attorney's fees.

3. The Remedial Purposes of ERISA Support an Award of Attorney's Fees

In deciding whether to award attorney's fees, the Court should consider that one of the remedial purposes of ERISA's fee-shifting provision is to secure effective access to federal courts. *Williams, supra; Reinking, supra.* Court is an expensive place to resolve disputes, particularly in disability benefit cases where the benefit being sought is often relatively low and of limited duration. Unless ERISA plaintiffs who seek disability awards of modest amounts can recover attorney's fees, the courthouse door will likely be closed to most of them. Insurance companies face little economic risk of oversight or scrutiny in denying benefits because very few claimants have the economic ability to finance a legal challenge and very few will be able to obtain experienced counsel who will be willing to pursue the matter. *See McIntyre v. Aetna Life Ins. Co.*, 581 F.Supp.2d 749 (W.D. Va. 2008):

> Additionally, the matter is relatively modest in terms of dollars, and if fees were not awarded in cases such as these, they typically would not be brought. This would be a danger to all participants, to the public, and to the remedial purposes of ERISA itself.

581 F.Supp.2d at 762.

This case illustrates the point perfectly. If Ms. Pifer were awarded benefits today, the total amount of back benefits she would receive would be $33,154.86. If Ms. Pifer continued to qualify for benefits to age 67, the maximum benefit age, she would receive an additional $53,758.23 in benefits. Ms. Pifer is unemployed due to her medical

10

condition and financially compromised due to Lincoln's wrongful termination of her benefits. She could not afford to hire and pay skilled counsel other than on a contingency fee basis. Without the prospect of the recovery of attorney's fees, it is doubtful that an attorney would be willing to pursue Ms. Pifer's case.

Consideration of the remedial purposes of ERISA favors an award of attorney's fees.

B.      The Court may Determine the Amount of Recoverable Fees and Costs

The amount of any fee to be awarded must be determined based on the facts of the case. *Hensley v. Eckerhart,* 461 U.S. 424, 429 (1983). The Court should be guided by the twelve factors adopted in this Circuit in *Barber v. Kimbrell's Inc.,* 577 F.2d 216, 226-28 (4th Cir. 1978). Those factors are:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorney's fees awards in similar cases.

577 F.2d at 226 & n.28 (4th Cir. 1978) (adopting factors from *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)). Each of the *Kimbrell's* factors will be discussed below.

11

1.      The Time and Labor Expended

Although Ms. Pifer's attorney is handling this case on a contingency fee basis, the appropriate method for determining the amount of attorney's fees is to arrive at a "lodestar" figure, i.e., by multiplying the reasonable number of hours worked by an appropriate hourly rate. *See, e.g., Cox v. Reliance Standard Life Insurance Co.,* 179 F.Supp.2d 630, 634 (E.D. Va. 2001).

The declaration of plaintiff's counsel indicates that the recorded time includes 182.07 hours by Mr. Whiteman. Whiteman Declaration, ¶ 9 and Ex. 1. Plaintiff is only requesting attorney's fees for the time spent by her counsel in connection with the actual litigation. *Rego v. Westavco Corp,* 319 F.3d 140, 150 (4th Cir. 2003). Therefore, Ms. Pifer is not able to claim reimbursement for the time expended by her attorney in prosecuting her appeal in 2021 and 2022.

2.      The Novelty and Difficulty of the Question Raised

The law governing ERISA disability cases requires specialized legal expertise and experience. What made this case "difficult" is the volume of the claim file, totaling 1301 pages. Ms. Pifer's three summary judgment briefs contain 225 citations to this record. As the Court knows well from its own painstaking and thorough review of the file, ERISA cases "require careful research and development of factual issues." *Marks Construction. Co., Inc. v. Huntington National Bank*, No. 1:05CV73, 2010 WL 3418329, at *9 (N.D. W. Va. Aug. 27, 2010).

12

### 3. The Skill Required to Properly Perform the Legal Services Rendered

ERISA litigation requires knowledge of federal statutes, ERISA regulations, and case law. "ERISA is a complex area of federal law, requiring particular skill and experience to properly perform the legal services rendered in such cases." *Vincent v. Lucent Technologies, Inc.*, No. 3:07-CV-00240, 2011 WL 5075650, at *5 (W.D.N.C. Oct. 25, 2011). Ms. Pifer's counsel possesses such skill and expertise.

### 4. The Attorney's Opportunity Costs in Pressing the Litigation

Opportunity costs is a significant factor. To the extent counsel was required to devote time to plaintiff's case, he was not available for other employment. The time spent working on Ms. Pifer's administrative appeal is not compensable.

### 5. The Customary Fee for Like Work

Mr. Whiteman's requested rate of $450 per hour is typical of what other law firms charge for work performed by attorneys with comparable experience. *See* Whiteman declaration, ¶ 5; Adams declaration, ¶ 22; and Tyson declaration, ¶ 14.

### 6. The Attorney's Expectation at the Outset of the Litigation

Plaintiff's counsel agreed to take Ms. Pifer's case on a contingency fee. The method for determining the contingency fee is described in the Declaration of Andrew Whiteman at paragraph 7.

### 7. Time Limitations

The deadlines in this case did not pose any undue burden on counsel.

8.      The Amount in Controversy and the Results Obtained

Ms. Pifer's claim is for disability income benefits, attorney's fees, and costs. The Court vacated Lincoln's decision to terminate Ms. Pifer's long-term disability benefits and remanded the case to Lincoln to reconsider her claim. The claim remains undetermined at this time.

9.      The Experience, Reputation, and Ability of the Attorneys

Mr. Whiteman's declaration describes his qualifications and background. *See* Whiteman declaration, ¶¶ 2-3.

10.     The Undesirability of the Case within the Legal Profession

There is nothing undesirable about the case or in representing Ms. Pifer, although as noted above the case does not involve a great deal of money and the number of lawyers willing to take ERISA disability cases in North Carolina is not large. *See* Whiteman Declaration, ¶ 11; Adams declaration, ¶ 18; and Tyson declaration, ¶ 10.

11.     The Nature and Length of the Professional Relationship Between Attorney and Client

Ms. Pifer had no prior relationship with her attorney. Mr. Whiteman will assist Ms. Pifer with her remanded claim for additional disability benefits as needed.

12.     Attorney's Fees Awarded in Similar Cases

There are very few recent reported North Carolina decisions that discuss the appropriate rate of attorney compensation in individual ERISA benefit claims. In *Thomas v. Saber Healthcare Group., LLC*, No. 3:18CV344-GCM, 2021 WL 467206 (W.D.N.C.

14

Feb. 9, 2021), the plaintiff's counsel charged a rate of $250 per hour for all work performed, and the court approved that rate. 2021 WL 467206, at *2. In *Kinsinger v. SmartCore, LLC*, 2020 WL 2926476 (W.D.N.C. June 3, 2020), the court approved rates of between $250.00 to $300.00 for associates and $400.00 for partners. 2021 WL 467206, at *2. *See also Ramirez v. Liberty Life Assurance Co. of Boston*, No. 3:18-CV-00012-RJC, 2019 WL 4199808, at *5 (W.D.N.C. Sept. 4, 2019) ($400 per hour for partners approved); *and Wiwel v. IBM Med. & Dental Benefit Plans for Regular Full-Time & Part-Time Employees*, No. 5:15-CV-504-FL, 2017 WL 2963444, at *1 (E.D.N.C. July 11, 2017) ($400 per hour approved).

In this case, Ms. Pifer's counsel is more experienced than any of the attorneys in the foregoing cases. Her supporting affidavits support her request for attorney fee compensation of $450 per hour.

## V.    Costs

Under Rule 54(d)(1) of the Federal Rules of Civil Procedure, costs "should be allowed to the prevailing party" unless a federal statute provides otherwise. Rule 54 gives rise to a presumption in favor of an award of costs to the prevailing party. *Teague v. Bakker,* 35 F.3d 978, 996 (4th Cir.1994). ERISA expressly permits a district court to award costs in the court's discretion, 29 U.S.C. § 1132(g)(1), but the statute does not alter the general rule in favor of awarding costs to prevailing parties. *Williams v. Metro. Life Ins. Co.*, 609 F.3d 622, 636 (4th Cir. 2010). Thus, Ms. Pifer is entitled to a presumption in favor of costs.

15

Filing and service fees are recoverable costs. 28 U.S.C. § 1920. *O'Bryhim v. Reliance Standard Life Ins. Co.,* 997 F.Supp. 728, 738 (E.D.Va. 1998); *aff'd,* Case No. 98-1472, 1999 WL 617891 (4th Cir. August 16, 1999). Ms. Pifer claims costs of $412 for the filing and service fees. *See* Whiteman declaration, ¶ 10 and Exhibit 2.

VI.    <u>Relief Sought</u>

Ms. Pifer's motion for attorney's fees and costs should be allowed. She is requesting $81,900 in attorney's fees and $412 in costs.

<u>September 26, 2023</u>
Date

/s/ Andrew Whiteman
Andrew Whiteman
N.C. State Bar number 9523
Whiteman Law Firm
1117 Carlow Court
Raleigh, North Carolina 27615
(919) 571-8300 (Telephone)
(919) 571-1004 (Facsimile)
aow@whiteman-law.com

16

<u>Certificate of Service</u>

The undersigned hereby certifies that a copy of the foregoing was filed

electronically with the United States District Court for the Middle District of North

Carolina, with notice of case activity to be generated and sent electronically to the

following attorneys of record registered to receive such service:

W. Kyle Dillard
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
300 North Main Street, Suite 500
Greenville, SC 29601
kyle.dillard@ogletree.com

Vanessa N. Garrido
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
8529 Six Forks Road
Forum IV, Suite 600
Raleigh, NC 27615
vanessa.garrido@ogletree.com

*Attorneys for Defendant*


September 26, 2023                                    /s/ Andrew Whiteman
Date                                                          Andrew Whiteman
                                                                 N.C. State Bar number 9523
                                                                 Whiteman Law Firm
                                                                 1117 Carlow Court
                                                                 Raleigh, North Carolina 27615
                                                                 (919) 571-8300 (Telephone)
                                                                 (919) 571-1004 (Facsimile)
                                                                 aow@whiteman-law.com

17

## Certificate of Word Count

Pursuant to LR 7.3 of the Rules of Practice and Procedure, the undersigned certifies that the body of the brief, headings, and footnotes in the foregoing brief, but excluding the caption, signature lines, and the certificate of service, and this certificate of word count, contains 3,899 words. In making this certification, the undersigned relies on the word count feature of Microsoft Word.

September 26, 2023
Date

/s/ Andrew Whiteman
Andrew Whiteman
N.C. State Bar number 9523
Whiteman Law Firm
1117 Carlow Court
Raleigh, North Carolina 27615
(919) 571-8300 (Telephone)
(919) 571-1004 (Facsimile)
aow@whiteman-law.com

18